**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| In Re: ) | |
| ) | |
| James Anthony Cosmano, ) | NO. 24-09140 |
| Debtor ) | |
| ) | Chapter 13 |
| ) | Honorable Judge Timothy A. Barnes |

**DEBTOR JAMES COSMANO'S MEMORANDUM OF LAW IN OPPOSITION TO THE
UNITED STATES' MOTION TO BAR FIFTH AMENDMENT ASSERTION**

## I.   INTRODUCTION

The United States seeks adverse inferences from Mr. Cosmano's invocation of the Fifth

Amendment. The request should be denied because the Government created the circumstances

compelling the privilege. In May 2022, it disclosed that Mr. Cosmano had been referred for

criminal investigation. Nearly three years later, it has neither filed charges nor advised that the

investigation has been closed or abandoned. The threat of prosecution therefore remains

unresolved. Faced with that referral, Mr. Cosmano has no realistic choice but to invoke the Fifth

Amendment because testimony about the transactions underlying the Government's

nondischargeability claim could be used in a future criminal prosecution.

The Government now seeks to exploit that predicament by inferring liability from

constitutionally protected silence while preserving the possibility of prosecution. Fundamental

fairness does not permit that result. The Seventh Circuit recognizes that the Fifth Amendment

privilege "cannot be treated as an admission of guilt standing alone." *LaSalle Bank Lake View v.

Seguban*, 54 F.3d 387, 390 (7th Cir. 1995). Adverse inferences may be permissible in some civil

cases, but they are not automatic and remain discretionary. Here, the Government controls

whether to seek an indictment, close the investigation, or continue it indefinitely. By leaving the

criminal referral unresolved while pursuing civil relief based on the same conduct, it has prevented Mr. Cosmano from presenting his version of the facts without risking self-incrimination.

The prejudice is substantial. Mr. Cosmano cannot testify about the allegations, explain the challenged transactions, or rebut factual assertions without potential criminal exposure. The Government then seeks to convert that compelled silence into evidence under 11 U.S.C. § 523(a)(1)(C). The privilege exists to prevent compelled testimony that may later be used criminally. The Government should not be allowed to preserve an unresolved criminal referral indefinitely while asking this Court to treat the exercise of that right as evidence of civil liability. The Court should decline any adverse inference and require the Government to prove § 523(a)(1)(C) through competent, independent evidence.

II.    STATEMENT OF FACTS

A.    **The Tax Liabilities and Initial Proceedings**

Mr. Cosmano filed federal income tax returns for tax years 2007 through 2010, self-reporting tax liabilities of $1,001.00, $0.00, $0.00, and $3,614.00, respectively. The IRS subsequently examined those returns and assessed substantial additional tax and penalties. Mr. Cosmano disputes the correctness of those assessments. On May 8, 2019, Mr. Cosmano filed a Chapter 7 bankruptcy petition. A discharge was entered on August 13, 2020.

The parties subsequently engaged in substantial litigation in a prior adversary proceeding (Case No. 21-00059), which Judge Goldgar dismissed on December 12, 2022, for lack of subject-matter jurisdiction because the IRS was not imminently attempting to collect the disputed tax debts. Judge Goldgar found that the taxes asserted in the United States' proof of claim had been discharged and stated that "should the United States try to collect on the tax debt or

2

threatens to do imminently, Cosmano can argue that the tax debt is discharged and can claim a violation of the discharge injunction."

B.     **The United States' Criminal Referral and Mr. Cosmano's Fifth Amendment Assertion**

During a contempt hearing before Judge Shah in the United States District Court for the Northern District of Illinois on May 5, 2022, counsel for the United States made the following disclosure at the outset of proceedings: "Your Honor, before we get to any questions—and I apologize—I have been instructed to disclose, at the beginning of this hearing, the Tax Division has made a referral to the local U.S. Attorney's Office to determine whether a crime has been committed by Mr. Cosmano." This referral was made in connection with alleged post-petition conduct involving the Waterside Drive Property and alleged violations of court orders. The government provided no details regarding the scope, subject matter, or status of the criminal investigation. In response to this disclosure, Mr. Cosmano's counsel stated:

"I had some concern about coming into this hearing, about what I have just heard from the Tax Division, and in light of that, as I think the Court can appreciate, Mr. Cosmano will respectfully have to invoke his Fifth Amendment rights today."

Judge Shah accepted Mr. Cosmano's invocation of the Fifth Amendment and did not compel him to testify.

C.   **Mr. Cosmano's Prior Cooperation and Subsequent Fifth Amendment Invocations**

Before the criminal referral was disclosed, Mr. Cosmano cooperated with discovery in the prior adversary proceeding. He responded to the United States' First Set of Interrogatories providing substantive answers to 21 interrogatories. He responded to the United States' First Set of Requests for Production stating that he did not have responsive documents for the relevant time period but providing explanations. After the criminal referral was announced, Mr. Cosmano invoked the Fifth Amendment during his deposition on July 6, 2022. He invoked the privilege in

3

response to questions ranging from his current residence to his knowledge of specific

transactions involving the Waterside Drive Property. He also invoked the Fifth Amendment in

responding to the United States' First Set of Requests for Admission.

D.  **The Ongoing Criminal Investigation**

Nearly three years have passed since the United States disclosed the criminal referral. It

has not informed Mr. Cosmano or this Court that the investigation has been completed, closed, or

declined. No charges, indictment, public statement, or representation that the threat has abated

has been made. The Government's continued reliance on adverse inference doctrine confirms that

it still treats Mr. Cosmano's silence as relevant. The specter of criminal liability remains active

and unresolved.

E.  **The Present Adversary Proceeding**

Mr. Cosmano filed the present Chapter 13 bankruptcy case (Case No. 24-09140) on

June 21, 2024. The United States filed a proof of claim, and Mr. Cosmano objected to the claim's

dischargeability. The parties conducted a Rule 26(f) conference on July 21, 2025, at which

counsel for Mr. Cosmano disclosed:

"Mr. Cosmano will no longer be asserting the 5th Amendment. In the prior Adversary
Proceeding, the Debtor asserted the Fifth Amendment to the United States Constitution and
refused to answer questions posed to him at a deposition noticed by the United States, and
declined to respond to certain written discovery requests. The Debtor is now withdrawing the
assertion of the Fifth Amendment privilege against compelled testimony."

The parties agreed that "certain written discovery propounded by the United States during the
prior Adversary Proceeding will need to be updated by the debtor in an additional set of
responses which the debtor has agreed to provide within 45 days of this submission," and that
"the United States has indicated that based on this change in privilege assertion, the government
will retake the Debtor's deposition."

After this discussion in court, the Debtor changed his mind and intends to continue to assert the

Fifth Amendment. Despite the above, the United States has now moved to bar any assertion of

the Fifth Amendment and seeks to draw adverse inferences from Mr. Cosmano's prior

4

invocations of the privilege—invocations made under the looming threat of a criminal

investigation that the government itself initiated and has never formally concluded.

 III.    LEGAL STANDARD

The Fifth Amendment to the United States Constitution provides that no person "shall be

compelled in any criminal case to be a witness against himself." The privilege against self-

incrimination protects an individual from "answer[ing] official questions put to him in any …

proceeding, civil or criminal, formal or informal, where the answers might incriminate him in

future criminal proceedings." *Chi. Title Ins. Co. v. Sinikovic*, 125 F. Supp. 3d 769 (N.D. Ill.

2015) citing *Lefkowitz v. Turley*, 414 U.S. 70, 76, 94 S. Ct. 316, 38 L. Ed. 2d 274 (1973). The

privilege may be invoked in civil proceedings when a party faces a realistic threat of criminal

prosecution. While a court may draw an adverse inference from a party's invocation of the Fifth

Amendment in a civil case, such an inference is permissive, not required. *Daniels v. Pipefitters'

Ass'n Local Union No. 597*, 983 F.2d 800 (7th Cir. 1993), citing *Baxter v. Palmigiano,* 425 U.S.

308, 317-18, 47 L. Ed. 2d 810, 96 S. Ct. 1551 (1976) and *Evans v. City of Chi.*, 513 F.3d 735,

740-41 (7th Cir. 2008). The Supreme Court held in *Baxter v. Palmigiano* that "the Fifth

Amendment does not forbid adverse inferences against parties to civil actions when they refuse

to testify in response to probative evidence offered against them." *LaSalle Bank Lake View v.

Seguban*, 54 F.3d 387, 390 (7th Cir. 1995). However, "silence is a relevant factor to be

considered in light of the proffered evidence, but the direct inference of guilt from silence is

forbidden." *Id.* and *Kontos v. Kontos*, 968 F. Supp. 400, 409 (S.D. Ind. 1997).

An adverse inference alone is not sufficient to make a finding as a matter of law. *SEC v.

Koester*, 13 F. Supp. 3d 928, 931 (S.D. Ind. 2014). See also *Thompson v. City of Chi.*, 722 F.3d

963, 976 (7th Cir. 2013). A moving party must introduce actual evidence that the elements of its

case exist and cannot rest solely on the negative inference associated with the assertion of the Fifth Amendment privilege. *Chi. Title Ins. Co. v. Sinikovic*, 125 F. Supp. 3d 769, 776 (N.D. Ill. 2015). "Before an adverse inference may be drawn from a party's refusal to testify in a civil case, there must be independent corroborative evidence to support the negative inference beyond the invocation of the privilege." *Kontos v. Kontos*, 968 F. Supp. 400, 408 (S.D. Ind. 1997). Moreover, when a defendant in a civil case invokes the Fifth Amendment, "juries are permitted, but not required, to draw a negative inference against the defendant." *Ruiz-Cortez v. City of Chi.*, 931 F.3d 592, 603 (7th Cir. 2019).

IV.    ARGUMENT

A.    **The United States' Bad Faith in Announcing and Maintaining an Unresolved Criminal Investigation Precludes Drawing an Adverse Inference**

The Government's motion rests on a flawed premise: that Mr. Cosmano's Fifth Amendment assertion should be treated as evidence of guilt rather than a constitutional right forced by the Government's conduct. The United States announced nearly three years ago that it had referred him for criminal investigation. Since then, no charges or indictment have issued, and the Government has not stated that the investigation is complete or abandoned. Mr. Cosmano therefore cannot safely waive the privilege, yet the Government seeks to penalize him for invoking it in this civil proceeding.

The Seventh Circuit has recognized that the Fifth Amendment privilege "cannot be treated as an admission of guilt standing alone." *LaSalle Bank Lake View v. Seguban*, 54 F.3d 387, 390 (7th Cir. 1995). Here, the government seeks to do precisely that. The United States has presented no independent evidence that Mr. Cosmano willfully attempted to evade or defeat his tax liabilities for the years 2007 through 2010. Instead, the government relies almost entirely on the adverse inference it seeks to draw from Mr. Cosmano's invocation of the privilege, a

6

privilege that exists only because of the government's own unresolved criminal referral. Courts have held that the government may be estopped from invoking adverse inferences when it has acted in bad faith or created the circumstances that necessitate the assertion of the privilege. The doctrine of laches may apply when a party's lack of diligence in pursuing a claim causes harm to a defendant. "The laches defense stems from the principle that 'equity aids the vigilant and not those who slumber on their rights.'"

Here, the United States has delayed nearly three years since disclosing the criminal referral in May 2022. The prior adversary proceeding was dismissed in December 2022, and the United States waited ten months after the present Chapter 13 filing to raise nondischargeability. Throughout, it has provided no update on the criminal investigation, leaving Mr. Cosmano in legal limbo. He must choose between asserting the Fifth Amendment and defending this civil case, and the Government now seeks to use his silence as a sword. The Court should hold that this conduct precludes any adverse inference; otherwise, the Government would be rewarded for creating the circumstances that required invoking the privilege.

B.   **The Government Lacks Independent Corroborative Evidence to Support an Adverse Inference Under § 523(a)(1)(C)**

Even if this Court considers an adverse inference, the government has failed to present the independent corroborative evidence required to support such an inference. As courts have repeatedly held, "silence is a relevant factor to be considered in light of the proffered evidence, but the direct inference of guilt from silence is forbidden." *LaSalle Bank Lake View v. Seguban*, 54 F.3d 387. 390 (7th Cir. 1995) and *Kontos v. Kontos*, 968 F. Supp. 400, 409 (S.D. Ind. 1997). The government must prove by a preponderance of the evidence that Mr. Cosmano "willfully attempted in any manner to evade or defeat" his federal income tax liabilities for tax years 2007 through 2010. *11 USCS § 523*. This requires proof of both a conduct requirement and a mental

7

state requirement.

### 1.   **The Conduct Requirement**

The conduct requirement under § 523(a)(1)(C) demands more than mere nonpayment of taxes. The government must prove that Mr. Cosmano engaged in affirmative acts to evade or defeat his tax liabilities. Courts have identified various indicia of such conduct, including: (1) understatement of income; (2) extensive dealings in cash; (3) inadequate record keeping; (4) intrafamily transfers for insufficient consideration; (5) failure to acquire significant assets relative to earnings; and (6) an extravagant lifestyle. *Geiger v. IRS (In re Geiger)*, 408 B.R. 788, 791 (C.D. Ill. 2009). Again, the government has presented no evidence that Mr. Cosmano engaged in any such conduct during the relevant period (2007–2010). Mr. Cosmano filed federal income tax returns for each of the years at issue. This fact alone distinguishes this case from *In re Blakeman*, 244 B.R. 100 (Bankr.N.D.OH.1999), where the debtor failed to file income tax returns for the years at issue. In *Blakeman*, the court considered the debtor's invocation of the Fifth Amendment "against that evidentiary backdrop" of failure to file returns.

By contrast, Mr. Cosmano's filing of returns is evidence inconsistent with concealment or willful evasion. As the guidance materials explain, "Filing returns is often treated as evidence inconsistent with concealment, even if it is not dispositive." Mr. Cosmano timely filed returns, disclosed income, and did not use nominees or sham entities. The government's allegations of post-petition conduct—relating to the Waterside Drive Property, alleged false appraisals, and alleged violations of court orders—are irrelevant to the § 523(a)(1)(C) inquiry. Dischargeability under § 523(a)(1)(C) is determined as of the date of the filing of the bankruptcy petition. The government cannot rely on conduct that occurred years after the tax years at issue to prove willful evasion during those years.

2.     **The Mental State Requirement**

The mental state requirement under § 523(a)(1)(C) requires proof that Mr. Cosmano acted with a "voluntary, conscious, and intentional" attempt to avoid tax liability. "The willfulness requirement protects debtors who make inadvertent mistakes, reserving nondischargeability for those whose efforts to evade tax liability are knowing and deliberate." The government has presented no evidence of Mr. Cosmano's mental state during the relevant period. The government cannot prove intent through Mr. Cosmano's silence; it must prove intent through affirmative evidence. Courts have held that "intent to evade taxes is generally provable by circumstantial evidence and reasonable inferences drawn from the existence of certain fact patterns, otherwise called badges of fraud." Here, the government has identified no badges of fraud. Mr. Cosmano did not engage in significant understatements of income, did not fail to file tax returns, did not repeatedly file returns late, and did not engage in implausible or inconsistent behavior with tax authorities. The government's reliance on post-petition conduct is misplaced and cannot establish the requisite mental state for the years 2007 through 2010.

C.     **The United States' Cases—*In re Blakeman* and *United States v. Acker*—Are Materially Distinguishable and Do Not Support Summary Judgment Here**

The United States' reliance upon *In re Blakeman,* 244 B.R. 100 (Bankr.N.D.OH.1999) and *United States v. Acker,* 2010 WL 3813243 (Bankr.E.D.TX.2010) is misplaced because both cases involved substantial independent evidence of tax noncompliance that is absent here.

1.     ***In re Blakeman* Is Distinguishable**

In *Blakeman v. United States (In re Blakeman)*, 244 B.R. 100, the debtor failed to file income tax returns for the years at issue. The court considered the Fifth Amendment invocation against that evidentiary backdrop. Here, Mr. Cosmano filed the required returns for 2007 through 2010, and the Government identifies no comparable failure to file. The principal indicia of tax

9

evasion present in *Blakeman* are absent, any adverse inference cannot bridge the evidentiary gap.

### 2. *United States v. Acker* **Is Equally Distinguishable**

Likewise, in *United States v. Acker (In re Acker)*, 2010 WL 3813243 (Bankr.E.D.TX.2010), the debtor filed returns years late, showing a prolonged pattern of noncompliance. The court considered the Fifth Amendment invocation only alongside substantial independent evidence relevant to the conduct and willfulness elements of § 523(a)(1)(C). Here, Mr. Cosmano filed the required returns for the years at issue, and the chronic late-filing pattern in *Acker* is absent. *Acker* therefore does not support relying on a Fifth Amendment invocation without comparable evidence of filing noncompliance or other affirmative evasion.

### 3. **Neither Case Supports Summary Judgment Based on an Adverse Inference**

Both *Blakeman* and *Acker* involved substantial independent evidence of tax noncompliance apart from the Fifth Amendment invocation: failure to file in *Blakeman* and repeated years-late filings in *Acker*. Neither case holds that a debtor who timely files required returns may be found to violate § 523(a)(1)(C) principally from an adverse inference. Here, that factual foundation is missing. Mr. Cosmano filed the required returns, and the Government identifies neither a comparable failure to file nor repeated late filings. Those decisions are therefore distinguishable and provide little support here.

Although adverse inferences may be drawn in appropriate civil cases, they do not relieve the Government of proving each element of § 523(a)(1)(C) with competent evidence. In *Blakeman* and *Acker*, the inference supplemented substantial evidence of noncompliance. It cannot substitute for proof of evasive affirmative conduct where Mr. Cosmano filed the required returns and the Government lacks comparable evidence. Those cases do not support summary

judgment or treating the Fifth Amendment invocation as dispositive of conduct or willfulness.

D. **The Government's Post-Discharge Foreclosure Evidence does not establish a Willful Attempt to evade or defeat the 2007–2010 Tax Liabilities**

The Government's prior Motion for Summary Judgment relies almost exclusively upon events that occurred after Mr. Cosmano received his Chapter 7 discharge in 2020. Specifically, the Government relies upon allegations concerning the Waterside Drive Property, alleged damage to the condominium, alleged false appraisal, alleged violations of court orders, and alleged contemptuous conduct during the foreclosure proceedings. Those allegations, even if accepted as true for purposes of summary judgment, do not establish the elements required under 11 U.S.C. § 523(a)(1)(C).

The issue before this Court is whether Mr. Cosmano willfully attempted to evade or defeat his federal income tax liabilities for tax years 2007 through 2010. The Government bears the burden of proving that Mr. Cosmano engaged in affirmative conduct directed toward evading the tax itself. The Government has produced no evidence that, before the Chapter 7 discharge, Mr. Cosmano filed a fraudulent tax return, concealed taxable income, concealed assets from the Internal Revenue Service, transferred property to avoid collection, or otherwise engaged in conduct constituting a willful attempt to evade or defeat the tax liabilities at issue. Instead, the Government attempts to substitute allegations arising from a later foreclosure proceeding for proof of tax evasion.

After the Chapter 7 discharge was entered in 2020, the Government did not pursue collection of the tax debt as a personal obligation. Rather, it exercised its surviving in rem rights by foreclosing upon the Waterside Drive Property, which was subject to a federal tax lien. The foreclosure litigation concerned the Government's rights in specific collateral, not the dischargeability of Mr. Cosmano's personal tax liability. The Government knew of the property,

11

asserted its lien, commenced foreclosure proceedings, obtained judgment, and ultimately sold the property. Those undisputed facts demonstrate that the property was never concealed, transferred beyond the Government's reach, or otherwise placed beyond its ability to enforce its lien. At most, the Government's allegations concern the condition or value of collateral during the foreclosure process. Such allegations do not establish that Mr. Cosmano willfully attempted to evade or defeat the underlying tax liabilities.

The Government's reliance upon *In re Harold*, 611 B.R. 835 (Bankr. E.D. Mich. 2020), is misplaced. In *Harold*, the court found evidence of affirmative fraudulent conduct directed at defeating the Government's collection rights. Here, by contrast, the Government has identified no comparable conduct. It successfully enforced its lien through judicial foreclosure, obtained the relief it sought, and completed the sale of the property. The Government's dissatisfaction with the value ultimately realized from the collateral does not convert a foreclosure dispute into evidence of tax evasion. Moreover, when the foreclosure proceedings occurred, Mr. Cosmano had already received a Chapter 7 discharge. The Government had notice of that bankruptcy, did not obtain a determination that the tax debt was excepted from discharge, and thereafter proceeded by enforcing its lien rights against the property. Under those circumstances, Mr. Cosmano reasonably understood that the Government was pursuing only its in-rem remedies against the collateral. His defense of the foreclosure action cannot, without more, establish that he possessed the specific intent to evade or defeat tax liabilities that he reasonably believed had been discharged as personal obligations.

Finally, the Government cannot establish the requisite intent through speculation. Mr. Cosmano has invoked his Fifth Amendment privilege because the Government continues to maintain an unresolved criminal referral arising from the same underlying conduct. The

Government has offered no independent evidence establishing Mr. Cosmano's state of mind or demonstrating that his actions during the foreclosure proceedings were undertaken for the purpose of evading or defeating his tax liabilities. Accordingly, the Government's post-discharge foreclosure evidence, even when viewed in the light most favorable to the Government, does not establish the elements of 11 U.S.C. § 523(a)(1)(C). Because the Government has failed to produce evidence of any pre-discharge fraudulent tax filing or affirmative act of tax evasion, its Motion for Summary Judgment should be denied. Conversely, because there is no genuine issue of material fact on the essential elements of its nondischargeability claim, summary judgment should be entered in favor of Mr. Cosmano.

E. *Harris v. City of Chicago* **is Materially Distinguishable from the Present Case**

The United States relies on *Harris v. City of Chicago*, 266 F.3d 750 (7th Cir. 2001), but that case is materially distinguishable. In *Harris*, the defendant invoked the Fifth Amendment during discovery, refused interrogatories, document requests, and deposition questions, then waived the privilege immediately before trial and testified extensively. The Seventh Circuit held that excluding evidence of the prior silence was an abuse of discretion because the defendant used the privilege as a discovery shield while planning to testify on the same topics. The prejudice arose because the plaintiff had no opportunity to test that testimony through discovery.

This case is different. Mr. Cosmano has not waived the privilege and attempted to testify at trial while blocking discovery. The United States announced at the May 5, 2022 contempt hearing that "the Tax Division has made a referral to the local U.S. Attorney's Office to determine whether a crime has been committed by Mr. Cosmano." That disclosure forced him to invoke the privilege or risk self-incrimination where prosecution was openly contemplated. He has maintained that invocation and has not engaged in the "have it both ways" manipulation

13

condemned in *Harris*.

The posture also differs. In *Harris*, the privilege was withdrawn just before trial, leaving insufficient opportunity for discovery. *Niebur v. Town of Cicero*, 212 F. Supp. 2d 790, 806 (N.D. Ill. 2002) citing *Harris*. Here, any continued invocation results from the Government's unresolved criminal referral, not tactical gamesmanship. The Agreed Order contemplated updated responses if the privilege were withdrawn, but the criminal threat remained unresolved.

Finally, *Harris* was a civil rights case where the defendant's silence was the only discovery barrier. This bankruptcy discharge dispute involves a criminal referral announced by the Government itself. The Government cannot create the conditions requiring silence and then invoke *Harris* to exclude a defense. Under *Baxter v. Palmigiano*, adverse inferences are permissive and must be evaluated in light of all evidence. Where the Government precipitated the privilege assertion, the *Harris* framework does not apply. For these reasons, *Harris* does not support the United States' motion to bar testimony or establish blanket adverse inferences in this case.

V.    CONCLUSION

The United States' motion to bar Mr. Cosmano's Fifth Amendment assertion should be denied. The Government seeks to penalize him for exercising a constitutional right made necessary by the criminal referral it announced nearly three years ago and has not resolved. Before that disclosure, Mr. Cosmano answered written discovery and cooperated in good faith. Once the Government stated during the May 5, 2022 contempt hearing that it had "made a referral to the local U.S. Attorney's Office to determine whether a crime has been committed by Mr. Cosmano," counsel appropriately advised him to invoke the privilege.

The Government has left Mr. Cosmano in legal limbo, forcing a choice between self-

14

incrimination and civil liability, and now seeks to use protected silence against him. The Court

should hold that the Government's conduct precludes any adverse inference. The Government

also lacks independent corroborative evidence to prove that Mr. Cosmano willfully attempted to

evade or defeat the 2007 to 2010 tax liabilities. He filed the returns, distinguishing this case from

*In re Blakeman* and *United States v. Acker*, where the debtors failed to file or filed years late.

For all these reasons, the Court should deny the United States' motion to bar Fifth

Amendment assertion and decline to draw any adverse inference from Mr. Cosmano's prior

invocations of the privilege.

## VI.   PRAYER FOR RELIEF

WHEREFORE, Debtor James Cosmano respectfully requests that this Court:

1. Deny the United States' motion to bar Fifth Amendment assertion;
2. Decline to draw any adverse inference from Mr. Cosmano's prior invocations of the Fifth Amendment privilege;
3. Hold that the United States' bad faith in announcing and maintaining an unresolved criminal investigation for nearly three years precludes the drawing of any adverse inference from Mr. Cosmano's constitutionally protected silence;
4. Hold that the United States has failed to present independent corroborative evidence sufficient to support an adverse inference under 11 U.S.C. § 523(a)(1)(C);
5. Grant such other and further relief as the Court deems just and proper.

Dated: July 23, 2026

Respectfully Submitted,
By: /s/ Paul M. Bach
BACH LAW OFFICES, INC.
P.O. BOX 1285
NORTHBROOK, IL 60062
PHONE:  (847) 564 0808
paul@bachoffices.com