IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF DIVISION
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES COSMANO, Plaintiff, vs. UNITED STATES OF AMERICA, Defendant. | ) | No. 21 A 00059 Chicago, Illinois December 12, 2022 10:00 a.m. |
| JAMES COSMANO, Debtor. | ) | No. 19 B 13287 |

TRANSCRIPT OF PROCEEDINGS VIA ZOOM BEFORE THE HONORABLE A. BENJAMIN GOLDGAR

APPEARANCES:

For the Debtor: Mr. Paul Bach;

For the United States: Mr. Jeffrey Nunez;
Mr. Noah Glover-Ettrich;

THE CLERK: Calling line numbers 33, 34, 35 and 36, James Cosmano; Cosmano v. United States of America.

MR. BACH: Good morning, Your Honor. Paul Bach on behalf of James Cosmano.

MR. GLOVER-ETTRICH: Good morning, Your Honor. Noel Glover-Ettrich on behalf of the United States. And I'm joined by colleague Jeffrey Nunez.

MR. NUNEZ: Good morning, Your Honor.

THE COURT: Good morning.

Since no one is in the courtroom but Michelle and me, I'm going to remove my mask. I have a ruling to read into the record.

This adversary proceeding is before me because last month I expressed concerns that the matter wasn't justiciable. I asked the parties for simultaneous briefs on subject matter jurisdiction, and they've provided them. Although both sides contend jurisdiction is secure, I'm unconvinced. For reasons I'll describe, this adversary proceeding will be dismissed for lack of jurisdiction.

The background facts come from several sources: the parties' memoranda and exhibits, the docket in the bankruptcy case and adversary

proceeding, papers filed in the case and proceeding, the district court's docket in two related actions, and papers filed in those actions. No facts are in dispute.

James Cosmano is a Chicago lawyer with tax problems. The Internal Revenue Service audited Cosmano's income tax returns for the years 2007-10, determined that he'd underpaid his taxes for the years 2007, 2009, and 2010, and assessed total taxes due of $2,951,173. With interest, Cosmano's tax liability came to roughly $6.5 million as of May 2019.

In 2011, the IRS began efforts to collect the unpaid taxes. In 2015, the IRS recorded tax liens in Cook County. In 2017, the United States brought an action in the district court to reduce to judgment the IRS assessments against Cosmano. Cosmano didn't contest the action, and in January 2018, the district court entered judgment for the United States. In September 2018 the United States recorded its judgment in Cook County.

Recording the tax liens and judgment made sense because Cosmano owns a condominium on East Waterside Drive in Chicago. The tax liens and the judgment lien attached to the Waterside property.

A little over a year after the district court's judgment, Cosmano filed a chapter 7 bankruptcy case. Cosmano listed the IRS as a creditor, and the IRS filed a proof of claim and later an amended proof of claim. A month post-petition, Cosmano moved to avoid the United States's judgment lien. The United States countered with a motion to lift the automatic stay to enforce its tax liens against the Waterside property. Cosmano later withdrew his lien avoidance motion, but I granted the motion to lift the stay.

Because no party in interest had objected, in August 2019 Cosmano received a discharge in his bankruptcy case. In September 2020, the chapter 7 trustee filed a report of no distribution, and the case was closed.

Two months after that, Wilmington Savings Fund Society sued in the district court to foreclose its mortgage on the Waterside property, naming the United States as a defendant. The United States answered and counterclaimed. The counterclaim sought a determination that the federal tax liens were valid and entry of an order enforcing the liens against the property. Wilmington and the United States each moved for summary judgment, and in

January 2022 the district court granted both motions, entered judgment, and appointed a receiver to sell the property.

Meanwhile, in March 2021 Cosmano's counsel had withdrawn, and Cosmano had moved pro se to reopen his bankruptcy case, reinstate the stay, and avoid the judicial and tax liens. He also sought a declaration that his federal tax debt had been discharged. I reopened the case but denied the motion to reinstate the stay (since the entry of discharge meant there was no stay to reinstate), denied the motion to declare the tax debt dischargeable (since that relief has to be sought in an adversary proceeding), and denied the motions to avoid the liens.

The next month, equipped with new counsel, Cosmano filed an adversary proceeding against the United States seeking a determination that his federal tax debt was discharged. In his complaint, Cosmano alleged that the United States had "made accusations in this Court and other forums" that the debt was excepted from discharge under section 523(a)(1)(C) of the Code, but those accusations were "without support or a factual basis." In fact, Cosmano continued, the United

States "has not [proved] and cannot prove that Cosmano's federal tax debts were excepted from discharge," because his tax liabilities weren't debts as to which Cosmano had "made a fraudulent return or willfully attempted in any matter to evade or defeat such tax liability."

Rather than move to dismiss under Rule 12(b)(1), as it might have done, the United States answered the complaint. As to each allegation I just quoted, the United States said that it "lack[ed] knowledge or information sufficient to admit or deny" the allegation. Although that is, of course, a permissible way to answer a complaint and technically operates as a denial, see Fed. R. Civ. P. 8(b)(5) (made applicable by Fed. R. Bankr. P. 7008), the United States responded to Cosmano essentially by shrugging its shoulders.

The parties have since cross-moved for summary judgment. Those motions are pending and not quite fully briefed.

I first noticed the answer this past fall while preparing to rule on a motion from the United States to compel discovery responses. After ruling on the motion, I noted the agnostic response to the complaint and expressed "serious doubts" about

whether I had a case or controversy under Article III. I added that even if the United States had in fact made "accusations" about Cosmano's tax liability, accusations alone wouldn't be enough to produce a justiciable controversy. If the United States is "not trying to collect the debt and not threatening to collect the debt," I said, "then I don't have jurisdiction over this. I will have jurisdiction when the government tries to do something." As an example of a case presenting a similar problem, I cited Erikson v. U.S. Dep't of Treasury (In re Erikson), Nos. 12-59165, 12-5546, 2013 WL 2035875 (Bankr. E.D. Mich. May 10, 2013).

Because I have to raise and consider subject matter jurisdiction even when the parties don't, Gonzalez v. Thaler, 565 U.S. 134, 141 (2012), I stayed proceedings on the summary judgment motions and asked for briefing on the jurisdictional question. The parties have obliged.

In his memorandum, Cosmano maintains that the adversary proceeding presents a justiciable controversy and cites nineteen examples of actions the United States has taken showing as much. For its part, the United States concedes the action "was not ripe when Mr. Cosmano initially filed it" but says it

has since become ripe because the United States has now "staked out a firm position" that Cosmano's tax liability is nondischargeable. That said, the United States asserts there is an important jurisdictional question here under the Declaratory Judgment Act's tax exclusion clause. The United States would have me abstain rather than address the question.

Rather than abstain, I conclude that I must dismiss the adversary proceeding for lack of subject matter jurisdiction. Cosmano and the United States disagree about a legal question – whether Cosmano's tax debt is nondischargeable – but that's all. Without some action from the United States to collect the debt or some threat to do so imminently, the question is purely hypothetical. Whether viewed as a problem of standing or of ripeness, jurisdiction is lacking.

Federal jurisdiction is limited. Under Article III of the Constitution, federal courts have the power to decide only "actual cases or controversies." Clapper v. Amnesty Int'l USA, 568 U.S. 398, 408 (2013) (internal quotation omitted). As the Seventh Circuit explained recently, Article III "prevents federal courts from answering legal questions, however important, before those questions

have ripened into actual controversies between someone who has experienced (or imminently faces) an injury and another whose action or inaction caused (or risks causing) that injury." Sweeney v. Raoul, 990 F.3d 555, 559 (7th Cir. 2021).

Several different justiciability doctrines give effect to this limitation. 13 Charles Alan Wright, Arthur R. Miller, Edward H. Cooper & Richard D. Freer, Federal Practice & Procedure § 3529 at 612 (3d ed. 2008). One such doctrine is the requirement that a plaintiff have standing. Id. Another is the requirement that the controversy be ripe. Id. These two doctrines are "closely related." Rock Energy Coop. v. Village of Rockton, 614 F.3d 745, 748 (7th Cir. 2010).

First, standing. To have standing, "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." TransUnion LLC v. Ramirez, 141 S. Ct. 2190, 2203 (2021); see also Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016). The question here involves the first element – that the plaintiff show an actual or imminent injury. If

the plaintiff has suffered no actual injury, the injury must at least be imminent. That means the injury must be "certainly impending." Clapper, 568 U.S. at 409. "Allegations of possible future injury are not sufficient." Id. (internal quotation omitted).

Cosmano hasn't shown either an actual injury or an imminent one. He offers no evidence either that the United States is trying to collect the unpaid taxes from him personally despite his discharge, or that there is "certainly impending" collection activity. It's been four years since the United States had its tax assessments reduced to judgment in the district court. During that time, as far as the record shows, the United States has done nothing to collect the unpaid taxes from Cosmano personally, nor has it threatened to do so, imminently or at all. The parties disagree about what the United States could do, true enough. But that's not enough. To date, the United States hasn't done what it says it could do or even said that it would. Until then, the disagreement is merely academic, a disagreement about rights the United States hasn't exercised. The parties' disagreement about the government's unexercised rights does

Cosmano no injury. See Erikson, 2013 WL 2035875, at *3.

Both Cosmano and the United States distinguish Erikson, Cosmano in particular pointing out that in Erikson the United States said it had "no present intent" to sue the debtors, id. at *1, and the United States has said nothing like that here. The parties are right that Erikson's facts differ slightly. But although the United States hasn't affirmatively disclaimed an intent to collect from Cosmano, it also hasn't said it does intend to. It has said nothing. The principle in Erikson – that chapter 7 debtors lack standing to bring, and a bankruptcy court lacks jurisdiction to hear, "potential nondischargeability actions under § 523(a)(1)(C) that could one day be brought," id. at *3 – applies here even though Erikson is not identical.

Cosmano, though, insists this case isn't remotely like Erikson. He cites nineteen examples of actions he says the United States has already taken to collect from him personally.

The examples are unconvincing. Two of them (Nos. 3 and 17) fail to describe actions by anyone, let alone the United States. Three (Nos. 1,

11, and 16) describe actions by entities other than the United States, including Cosmano himself. Four (Nos. 2, 5, 6, and 8) describe actions the United States took not only pre-discharge but prepetition. Many of Cosmano's examples (Nos. 5, 10, and 14-16) arise out of the United States's efforts to file and foreclose on its liens. By definition, those aren't efforts to collect from Cosmano personally despite his discharge.

Some of Cosmano's examples require more discussion.

In example No. 4, Cosmano notes that the IRS's internal account transcripts show interest accruing despite the discharge. To Cosmano, that proves the United States is asserting that his tax debt is nondischargeable. Perhaps so. But simply asserting nondischargeability is one thing; collecting or threatening to collect a debt because it's nondischargeable is another.

In example No. 7, Cosmano claims that the account transcripts have entries for 2019 and 2020 showing continuing efforts to collect from him personally. These entries say: "Removed appointed representative," "Bankruptcy or other legal action filed," "Passport certified seriously delinquent tax

debt reversal," "Appointed representative," "Lien placed on assets due to balance owed," and "Fees and other expenses for collection." Except for the references to "appointed representative," a representative empowered to act on Cosmano's behalf in dealing with the IRS, the meaning of these entries is opaque. Cosmano offers no explanation.

Example No. 9 cites the IRS proofs of claim filed in Cosmano's chapter 7 case. Filing a proof of claim is a creditor's attempt to be paid from the bankruptcy estate. A proof of claim is neither a creditor's attempt to collect from a debtor personally nor a statement that its claim is nondischargeable.

Examples Nos. 12 and 13 assert that the response of the United States to Cosmano's pro se motions to avoid liens, reinstate the stay, and declare the tax debt discharged "overtly challenged [him]" to file this adversary proceeding. True, the response (entitled "notice of objection") did state that Cosmano's tax debts were excepted from discharge, and perhaps Cosmano took that statement as a challenge. But the response nowhere said that the United States was trying to collect from Cosmano personally or intended to do so imminently.

Example No. 15 says that in the foreclosure action the counterclaim sought to enforce not only the United States's secured claim but also its unsecured claim for more than $6 million. It didn't. The counterclaim's request for relief simply sought an order enforcing the tax liens "securing the liabilities described above . . . against the property." The counterclaim asserted no claim against Cosmano personally for any deficiency.

Example No. 18 asserts that the United States is continuing to attempt to collect the tax debt in violation of the discharge. But Cosmano cites as support only the discharge itself. Cosmano's discharge says nothing about the actions or intentions of the United States or anyone else.

Example No. 19 notes that the United States has moved for summary judgment in the adversary proceeding and asserted that the tax debt is nondischargeable. Again, the parties unquestionably disagree over whether the debt was discharged. But that disagreement alone doesn't injure Cosmano or threaten to injure him.

Cosmano next claims two other injuries. He says that unless the court decides the dischargeability question, he won't know whether he

is subject to the debt, and "there is hardship in not knowing." He also says that given the size of the tax debt, he may not be eligible for a future chapter 13 case.

Cosmano cites no authority for these points, and both mistake the nature of a chapter 7 discharge. With limited exceptions not relevant here, a potentially nondischargeable debt is discharged until a court determines otherwise. In re Prate, 634 B.R. 72, 78 (Bankr. N.D. Ill. 2021). So Cosmano's tax debt is currently discharged. Because it is, the debt doesn't count against the unsecured debt limit in section 109(e) and wouldn't prevent him from filing a chapter 13 case. See In re Washington, 602 B.R. 710, 715 (B.A.P. 9th Cir. 2019). As for the hardship of "not knowing," that's common to all chapter 7 debtors. Rule 4007 makes plain that a nondischargeability complaint (other than one under section 523(c)) "may be filed at any time." Fed. R. Bankr. P. 4007(b). Without a showing that an injury is at the very least "certainly impending," there is no injury sufficient to confer standing. Clapper, 568 U.S. at 409; see, e.g., Prosser v. Becerra, 2 F.4th 708, 714 (7th Cir. 2021) (brain cancer patient's mere concern that she might one day have to

pay for treatment failed to create standing).

The party invoking federal jurisdiction bears the burden of showing its existence. Appert v. Morgan Stanley Dean Witter, Inc., 673 F.3d 609, 617 (7th Cir. 2012). That means the plaintiff in a civil action has the burden of showing standing to sue. TransUnion, 141 S. Ct. at 2207. As the plaintiff here, Cosmano had and still has that burden, and he hasn't met it. At most, he has shown a dispute with the United States about nondischargeability. He hasn't shown any practical effects from that dispute because he hasn't shown either that the United States has acted on its position by trying to collect Cosmano's tax debt or that the United States will do so imminently. Without some actual or imminent injury, Cosmano lacks standing to ask this court to determine the tax debt's dischargeability.

For much the same reasons, Cosmano's action isn't ripe. Ripeness is a justiciability doctrine "invoked to determine whether a dispute has yet matured to a point that warrants decision." 13B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, supra, § 3532 at 365 (3d ed. 2008). Ripeness concerns arise "when a case involves uncertain or

contingent events that may not occur as anticipated, or not occur at all." Wisconsin Right to Life Political Action Comm. v. Barland, 664 F.3d 139, 148 (7th Cir. 2011). Whether a claim is ripe for adjudication "depends on the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." Id. (internal quotation omitted). Either criterion may suggest that a matter isn't ripe. See, e.g., Milwaukee Police Ass'n v. Board of Police & Fire Comm'rs, 708 F.3d 921, 933 (7th Cir. 2013) (finding dispute unripe when dismissal posed no hardship).

Because the United States hasn't sought to collect the tax debt from Cosmano personally or even threatened to, the issue of nondischargeability isn't fit for decision because it has yet to arise and may not arise at all. True, the United States has asserted in this adversary proceeding that the debt is nondischargeable. But the United States appears to have done so only because Cosmano forced its hand by filing a complaint that demanded to have the court decide the issue. The United States hadn't yet concluded that the debt was nondischargeable - hence the equivocal answer to Cosmano's complaint. But even after deciding during

discovery that the debt was nondischargeable, the United States didn't try to collect the debt or say it would. It still hasn't. Cosmano's dispute with the United States isn't fit for decision and won't be until the United States puts the nondischargeability issue in play. Cf. Mlincek v. United States (In re Mlincek), 350 B.R. 764, 769 (Bankr. N.D. Ohio 2006) (dismissing section 523(a)(1) adversary proceeding as unripe partly because there was no pending or threatened collection activity).

Withholding consideration of the issue until the United States moves against Cosmano, or threatens to, poses no hardship to him. Right now, the tax debt is discharged, Prate, 634 B.R. at 78, and Cosmano can treat it as such. Should circumstances change one day, should the United States try to collect or threaten to imminently, Cosmano can argue that the debt is discharged and can claim a violation of the discharge injunction. At that point, Cosmano will have standing, and the dispute will be ripe. See, e.g., Prosser, 2 F.4th at 714; Milwaukee Police Ass'n, 708 F.3d at 933.

Not only will Cosmano suffer no hardship from the dismissal of this adversary proceeding, a dismissal might leave him better off,

given the adversary proceeding's unusual procedural posture with Cosmano as the plaintiff. Although the United States is the defendant, it would have the burden of proof at trial on the question of nondischargeability under section 523(a)(1)(C). See In re Birkenstock, 87 F.3d 947, 951 (7th Cir. 1996). Because Cosmano is the plaintiff, though, he would still have the burden of going forward at trial. See Lewis v. United States, 151 B.R. 140, 142 (Bankr. W.D. Tenn. 1992). That means Cosmano would have to "make a prima facie showing of dischargeability" before the burden of proof would fall to the United States. Id.

And therein lies the problem for Cosmano. After the United States announced in the Wilmington Savings foreclosure action that it had made a criminal referral to the U.S. Attorney, Cosmano refused to respond to discovery in this adversary proceeding and asserted his Fifth Amendment privilege. But because he would have the burden of going forward at trial, he would have to testify about his tax liabilities. In doing so, he might well waive the privilege. As the adversary proceeding is postured, in other words, Cosmano would be forced at trial to choose between refusing to

testify and losing on the merits or testifying and waiving his Fifth Amendment rights. Better for Cosmano to have the adversary proceeding dismissed for lack of jurisdiction and preserve his ability to litigate dischargeability (should it ever come to that) in a more favorable procedure framework.

When federal jurisdiction is questioned, the proponent of jurisdiction bears the burden of showing it. Ware v. Best Buy Stores, L.P., 6 F.4th 726, 731 (7th Cir. 2021). Jurisdiction's absence is presumed, Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994), and in doubtful cases, doubts are resolved against jurisdiction, see Avante Int'l Tech., Inc. v. Hart Intercivic, Inc., No. 08-832-GPM, 2009 WL 2431993, at *4 (S.D. Ill. July 31, 2009); United States ex rel. Coleman v. Indiana, No. IP96-0714-C-T/G, 2000 WL 1357791, at *16 (S.D. Ind. Sept. 19, 2000). Cosmano has not met his burden to show I have jurisdiction to hear and decide this adversary proceeding. Because Cosmano lacks standing and because the dispute isn't ripe, the adversary proceeding fails to present a justiciable controversy and will be dismissed for lack of subject matter jurisdiction.

One last point. Even if I weren't

dismissing the adversary proceeding, I wouldn't be inclined to abstain. The United States argues that the tax exclusion clause in the Declaratory Judgment Act, 28 U.S.C. § 2201, deprives me of jurisdiction to decide nondischargeability under section 523(a)(1). The United States believes I should abstain so the district court can address what it terms "a significant jurisdictional issue of first impression."

But the issue isn't one of first impression. The Seventh Circuit addressed it nearly half a century ago in McKenzie v. United States, 536 F.2d 726, 729 (7th Cir. 1976), and rejected the position the United States advances here. Other courts have done the same. See, e.g., Bostwick v. United States, 521 F.2d 741, 747 (8th Cir. 1975); see also Harker v. GYPC, Inc. (In re GYPC, Inc.), 639 B.R. 739, 745 (Bankr. S.D. Ohio 2022)(collecting cases). The McKenzie decision is binding on this court and, of course, would be binding on the district court, as well.

For these reasons, this adversary proceeding is dismissed without prejudice for lack of subject matter jurisdiction. All pending motions are denied as moot.

THE COURT: Thank you, gentlemen.

MR. GLOVER-ETTRICH: Thank you, Your Honor.

MR. BACH: Thank you, Your Honor.

MR. NUNEZ: Thank you.

(Which were all the proceedings had in the above-entitled cause, December 12, 2022, 10:00 a.m.)

I, AMY B. DOOLIN, CSR, RPR, DO HEREBY CERTIFY THAT THE FOREGOING IS A TRUE AND ACCURATE TRANSCRIPT OF PROCEEDINGS HAD IN THE ABOVE-ENTITLED CAUSE. /S/