IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| In re: | ) | Case No. 24-09140 |
| | ) | Chapter 13 |
| JAMES A. COSMANO, | ) | Judge Timothy A. Barnes |
| | ) | |
| Debtor. | ) | |
| | ) | |

**CREDITOR UNITED STATES' REPLY IN SUPPORT OF ITS MOTION TO ESTABLISH ADVERSE INFERENCES AND TO BAR TESTIMONY IN CONTESTED MATTER INVOLVING TAX CLAIMS**

Creditor United States of America, on behalf of the Internal Revenue Service, hereby replies to Debtor James Cosmano's opposition (Doc. 132) to the United States' motion (Doc. 130) to establish adverse inferences against Debtor James A. Cosmano and to bar Mr. Cosmano from submitting testimony, by affidavit or otherwise, at any trial or hearing in this matter.

As an initial matter, a substantial portion of Mr. Cosmano's brief is not about whether the United States is entitled to adverse inferences, but instead argues that the United States is not entitled to summary judgment.  (Doc. 132 §§ IV(B)(1)-(2), (C), (D)).  The United States' motion for summary judgment, filed at (Doc. 133), was filed after this response and the United States will deal with Mr. Cosmano's arguments regarding the United States' entitlement to summary judgment in its reply brief in support of that motion, to the extent that such arguments are raised in his response brief.

*I.      The United States is entitled to adverse inferences as a legal matter.*

Mr. Cosmano's claim that the United States is not entitled to any adverse inferences because it created the conditions under which Mr. Cosmano was required to invoke his Fifth Amendment rights is untenable both legally and factually.  Mr. Cosmano's argument that he should not be subject to an adverse inference for invoking his Fifth Amendment rights rather

1

than responding to the United States' discovery requests raises the same concerns rejected in

*United Auto. Ins. Co. v. Veluchamy*, 747 F. Supp. 2d 1021 (N.D. Ill. 2010) because it--

> expresses the defendant's tendentious view that he ought not to be placed between the Scylla of taking the Fifth Amendment and potentially suffering adverse inferences, and the Charybdis of avoiding those inferences by waiving the Fifth Amendment and possibly having the information available to authorities, who are conducting some investigation of the bank with which the defendant was affiliated. This dilemma, however, is not one forbidden by law. That it is a difficult and perhaps a not particularly palatable choice does not absolve a party in litigation from making it. It is but an instance of the enumerable, difficult choices that life and law require be made.

*Id.* at 1026 (internal citations omitted); *Breuder v. Bd. of Trs. of Cmty. Coll. Dist. No. 502,* No. 15 CV 9323, 2021 WL 1209296, at *11 (N.D. Ill. Mar. 31, 2021), *objections overruled,* No. 15-CV-09323, 2022 WL 279277 (N.D. Ill. Jan. 31, 2022) (citing *Veluchamy*).

Mr. Cosmano's claim that the government put him in this position is baseless.  In order for Mr. Cosmano to have invoked the Fifth Amendment, the testimony or discovery responses he would provide would have to be incriminating.  *See Baltimore City Dep't of Soc. Servs. v. Bouknight,* 493 U.S. 549, 554 (1990) ("The Fifth Amendment's protection applies only when the accused is compelled to make a testimonial communication that is incriminating." (internal quotation marks omitted)).  The United States did not cause Mr. Cosmano to break the law.  In responding to questions in a deposition or written discovery requests, Mr. Cosmano has a reasonable fear that any responses might tend to incriminate him, that is the bed he made for himself.  He must live with the consequences of his actions.  If he does not think he broke the law, then he has no reasonable fear of prosecution and should testify.  The government is within its rights both to investigate conduct they think broke the law, as well as to inform Mr. Cosmano of that investigation so that he can make an informed decision about his Constitutional rights.  To

penalize the government for allowing Mr. Cosmano to protect his Fifth Amendment rights would create perverse incentives, and must be rejected.

What is more, this proceeding was initiated by Mr. Cosmano himself.  After Judge Goldgar dismissed the previous adversary proceeding, the United States did not take any collection action until the filing of this bankruptcy case; indeed, that was one of Mr. Cosmano's bases for his original motion for summary judgment in this contested matter.  (Doc. 72, pp. 11-12.)  Mr. Cosmano voluntarily filed for bankruptcy, listing only two creditors on his schedules: the bank that holds the mortgage on his residence and the United States.  This bankruptcy case was filed for the sole purpose of litigating the issue of dischargeability of the taxes he owes to the United States, which Mr. Cosmano did by objecting to the IRS's proof of claim.  (Doc. 54.)  If Mr. Cosmano was truly concerned about the choice of whether to invoke his Fifth Amendment rights and suffer adverse inferences or waive such rights and respond to discovery, he could have waited to file his bankruptcy case until the resolution of any criminal referral (or, at least, until the United States took some collection action).  Having chosen to preemptively initiate litigation, it is Mr. Cosmano himself, not the United States, which placed himself in this position.[1]

As Mr. Cosmano has not cited a single case explaining why his situation is any different than any other civil litigant who may be under criminal investigation who is subject to adverse inferences after invoking their Fifth Amendment right, he appears to be seeking a *per se* rule that

---

[1] It is also unclear what Mr. Cosmano believes the United States should have done differently. Once the referral was made, the United States was under a duty of candor to inform the District Court and Mr. Cosmano of such referral.  But that is where the undersigned's part in the criminal referral ended; the U.S. Attorney's Office has not been keeping the undersigned apprised of the status of any investigation. Given that Mr. Cosmano was apparently able to confirm the existence of a grand jury investigation—he made reference to such confirmation in his objections to the United States' discovery requests (Doc. 136-11)—his counsel could contact the U.S. Attorney's Office to determine the status of such investigation, though it does not appear that he has elected to do so (which is not grounds to penalize the United States).

adverse inferences cannot be foundered in civil litigation involving the United States against a civil litigant who may be investigated by a different part of the United States government.  There is no legal basis for the Court to adopt such a rule.  Were the Court to adopt such a rule, it would also upend the balance courts have struck in this arena, since it is local, state or federal law enforcement agencies and their investigations that necessarily underlie almost every Fifth Amendment invocation in a civil action.  But the Seventh Circuit has already struck the balance between the interests in play in a civil action, and Mr. Cosmano has to play by those rules just like anyone else.

Mr. Cosmano's argument that the United States is not entitled to adverse inferences because there is no evidence that he failed to timely file his tax returns, as the defendants in *Blakeman* and *Acker* (cited by the United States) had done, is incorrect.  As a plethora of courts has found, willful evasion includes attempts to frustrate collection of tax once assessed.  *See, e.g., U.S. v. Coney*, 689 F.3d 365, 372 (5th Cir. 2012) ("the bulk of federal authority considering the issue has held that § 523(a)(1)(C)'s conduct requirement applies equally to attempts to evade or defeat the collection and payment of a tax"); *Stamper v. U.S. (In re Gardner)*, 360 F.3d 551, 557-58 (6th Cir. 2004) (§ 523(a)(1)(C) applies "where the debtor willfully attempted to evade or defeat payment of the taxes").  Contrary to Mr. Cosmano's assertion, post-petition, and even post-discharge, conduct, are relevant to this inquiry.  *See, e.g., United States v. Timon*, No. 120CV1101MADCFH, 2022 WL 17249463, at *7-8 (N.D.N.Y. Sept. 6, 2022) (finding both conduct and mental elements of § 523(a)(1)(C) met where debtor renegotiated consulting agreement post-petition to convert membership interest into residual interest with higher consulting fees); *U.S. v. Harold (In re Harold)*, 611 B.R. 835, 847-48 (Bankr. E.D. Mich. 2020) (finding relevant post-discharge conduct where the debtor and several related parties sought to

4

undermine the IRS's lien on valuable pre-petition real estate); *U.S. v. Tallis (In re Tallis)*, 634

B.R. 339, 351-52 (Bankr. N.D. Tex. 2021) (debtor's post-discharge violation of court order by

trespassing on property subject to sale order and theft of personal property was "additional

evidence of his actions to willfully impede and evade the payment of his past due 2012 tax

debt.").

Moreover, Mr. Cosmano misreads both cases.  The court in *Acker* specifically entered

adverse inferences based on the Debtor's attempts to evade collection.  *See In re Acker,* No. 09-

41961, 2010 WL 3813243, at *7 (Bankr. E.D. Tex. Sept. 28, 2010) ("Here, the Court concludes

that it is reasonable to infer that Acker provided the IRS with false information about his

personal and business addresses on his tax returns as well as in connection with his offer-in-

compromise in an effort to delay or avoid collection of his tax debts.").  And the court in

*Blakeman* found that the debtor's "repeated refusal to answer questions related to his 1980

through 1983 income requires an inference that he had the means to make payments."  *In re

Blakeman*, 244 B.R. 100, 104 (Bankr. N.D. Ohio 1999).  Again, this is related to the debtor's

payment of the tax, which goes to both the conduct and mental state requirements, and has

nothing to do with the filing of returns.

II.      *The United States is entitled to adverse inferences as a factual matter.*

Mr. Cosmano's argument that the government lacks independent corroborative evidence

to support an adverse inference is absurd.  Mr. Cosmano argues that the United States cannot

meet the conduct or mental state requirements of the test for dischargeability under 26 U.S.C.

§ 523(a)(1)(C), but the United States' motion for summary judgment is not the subject of this

briefing. The United States seeks by this motion to establish that it is entitled to the adverse

inferences against Mr. Cosmano, so the most the United States has to prove at this juncture is that it has independent corroborative evidence to support its requested inferences, and it does.

The United States' motion for summary judgment requested five specific adverse inferences, as follows:

> (1) that Mr. Cosmano constructed (or caused to be constructed) a false wall in the Waterside Drive Property that concealed a portion of the square footage of the property; (2) that he informed Michael Kuehn that the condo unit was 1,135 square feet and one bedroom rather than its true size in order to procure an appraisal at a lower value; (3) that he obtained a second appraisal from Kevin Vaught that listed the condo unit as being 1,135 square feet and one bedroom rather than its true size (which was concealed by the false wall), which Mr. Cosmano did not disclose to Mr. Vaught; (4) that his intent in obtaining and using those inaccurate appraisals in the Chapter 7 contested matters and the District Court lien enforcement action was to avoid collection of his tax liabilities; and (5) that his intent in vandalizing the Waterside Drive Property was to evade collection of his taxes.

(Doc. 133-1, pp. 13-14.)  And, as outlined in support of the United States' motion for summary judgment (and the Statement of Material Facts submitted as part of that), there is independent corroborative evidence for each requested inference.

### A. That Mr. Cosmano Constructed a False Wall

The inference regarding Mr. Cosmano's construction of the false wall is supported by the declaration of real estate agent Ginger Menne (Doc. 136-9 ¶ 11), and the transcript of the May 5, 2022, contempt hearing in which the District Court found that Mr. Cosmano destroyed the false wall (Doc. 136-23 at 43:23-24).  Mr. Cosmano invoked his Fifth Amendment rights rather than answer discovery requests or deposition questions regarding this topic and the United States is entitled to its requested adverse inference.  (Doc. 136-10 at 31:6-32:1) (Doc. 136-11 ¶ 8)

### B. That Mr. Cosmano Obtained False Appraisals

The inferences that both the Kuehn and Vaught Appraisals were false and that Mr. Cosmano's intent was to procure appraisals at lower prices than the true value of the unit is supported by: (1) Ms. Menne's declaration that the condo unit had 2,100 square feet, 3 bedrooms, and 3 bathrooms (Doc. 136-9 ¶ 9-13); (2) the declarations of Michael Keuhn and Mavreen Dunlavy that Mr. Cosmano informed them for purposes of Mr. Kuehn's appraisal—for which Mr. Kuehn did not enter the property—that the property had 1 bedroom, 1.1 bathrooms, and 1,135 square feet, and that Mr. Kuehn's appraisal would have been different had he known the unit's true size (Doc. 136-13 ¶ 6-10 & 136-14); and (3) Mr. Vaught's declaration that Mr. Cosmano had "urged" him to adhere to the Keuhn appraisal and not to include a floorplan in his appraisal, and that his appraisal would have been materially different had he known that the unit had more than one bedroom and was larger than 1,135 square feet, a fact that Mr. Cosmano did not disclose to him (Doc. 133-18 ¶¶ 8-13).  Mr. Cosmano invoked his Fifth Amendment rights rather than answer discovery requests or deposition questions regarding this topic and the United States is entitled to its requested adverse inferences.  (Doc. 136-10 at 26:17-34:18, 46:19-52:10); (Doc. 136-11 ¶¶ 6, 10-12).

*C. Mr. Cosmano's Intent in Using the False Appraisals*

The inference that Mr. Cosmano's intent in obtaining and using the false appraisals was to avoid collection of his tax liabilities is supported by the declarations set forth above regarding the actual size of the condo unit and the fact that the unit's true size was never disclosed to the appraisers, as well as the arguments set forth in the court filings for which the appraisals were used as evidence, all of which use the falsely low valuations of the condo unit to argue that the United States' liens encumbering the property were not secured by any equity and thus should be avoided or that the United States should not be able to take collection action against the condo

unit.  United States' Statement of Material Facts In Contested Matter Involving Objection to IRS's Proof of Claim (Doc. 136) at ¶¶ 23-24, 32-33, 47, 50-51.  Mr. Cosmano invoked his Fifth Amendment rights rather than answer discovery requests or deposition questions regarding this topic and the United States is entitled to its requested adverse inference.  (Doc. 136-10 at 34:10-15, 35:17-21, 36:4-40:7, 52:6-70:17); (Doc. 136-11 ¶ 14)

### D. Mr. Cosmano's Intent in Vandalizing the Condo Unit

The inference that Mr. Cosmano's intent in vandalizing his condo unit (in violation of multiple orders of the District Court) was to prevent the United States from collecting his taxes, are supported by the court filings described above, the Declaration of Jeffrey N. Nunez detailing the discussions between the United States and Mr. Cosmano's counsel and the damage Mr. Cosmano did to the condo unit (Doc. 136-20); the Declaration of Ginger Menne detailing the damage to the condo unit and the effect of the damage on the value of the property (Doc. 136-22); and the Transcript of the District Court's May 5, 2022 Contempt Hearing finding that Mr. Cosmano willfully violated the District Court's Orders (Doc. 136-23.).  Mr. Cosmano invoked his Fifth Amendment rights rather than answer discovery requests or deposition questions regarding this topic, and invoked his Fifth Amendment rights at the District Court's contempt hearing, and the United States is entitled to its requested adverse inference.  (Doc. 136-10 at 72:21-74:15); (Doc. 136-23 at 10:10-16).

This is more than sufficient independent corroborative evidence, none of which Mr. Cosmano has ever contradicted, to support adverse inferences in support of the United States.  Mr. Cosmano's opposition never directly confronts that he was found in contempt for destroying his condo and chose not to appeal that ruling.  Yet, he implies that "the United States was not happy with the value it received" for the condo without ever acknowledging it was his

contemptuous actions that diminished the value of the property. *See* (Doc. 136-22 ¶6); (Doc. 136-23 at 46:3-14). The Court's docket indicates precisely the opposite of what Mr. Cosmano argues – there is a mountain of evidence against him.

Although it goes to the issues that will be before the Court on summary judgment, not the limited issue of whether the United States is entitled to adverse inferences, Mr. Cosmano's argument that his conduct with regard to the condo unit do not rise to the level of tax evasion necessitates a reply.

As set forth above, Mr. Cosmano attempted to put the condo unit beyond the reach of the United States' collection activities by obtaining two false appraisals and employing them in various contested matters and district court cases to argue that the property was overencumbered, leaving no equity against which the United States could maintain or enforce federal tax liens. And, once all of his legal options were exhausted and the property was placed on the market, Mr. Cosmano damaged the property in violation of multiple orders of the District Court.

Given that Mr. Cosmano clearly attempted to put the property beyond the reach of the United States, his argument must be that these were not acts of payment evasion because the property was eventually sold. But 11 U.S.C. § 523(a)(1)(C) only requires that the debtor "willfully attempted" to evade or defeat his taxes, not that he succeeded in doing so. Mr. Cosmano's attempt to reduce this to "dissatisfaction with the value ultimately realized," where he waged a years-long campaign to block the sale of the property and damaged it (contemptuously, if not criminally) once his efforts to do so had failed, is unavailing.

III.    *Mr. Cosmano should not be allowed to submit testimony that varies from his assertion of the Fifth Amendment privilege.*

Finally, Mr. Cosmano's attempt to distinguish this case from *Harris* proves the government's point as to why Mr. Cosmano should not be allowed to submit testimony. Mr.

9

Cosmano agreed affirmatively that he would be "withdrawing the assertion of the Fifth Amendment privilege against compelled testimony" and that withdrawal was incorporated in this Court's scheduling order. (Doc. 113, 118.) At some point, Mr. Cosmano made the determination to reinvoke his Fifth Amendment rights, but at no point during the six-month discovery period did Mr. Cosmano's counsel apprise the United States or the Court of this; it was mentioned for the first time at the July 2, 2026 hearing on this motion. While his determination to maintain (or reinvoke) his Fifth Amendment rights differentiates him from the witness in *Harris*, it shows why Mr. Cosmano should be barred from presenting any testimony that contradicts his previous invocation of the Fifth Amendment. *Harris* stands for the proposition that, having used the Fifth Amendment as a shield, a witness cannot then testify in support of his case. *Harris v. City of Chicago*, 266 F.3d 750, 754-55 (7th Cir. 2001). And Mr. Cosmano has done more than prevent the United States from learning his testimony, he has declined to answer discovery requests that would have given the United States information allowing it to explore further avenues of discovery, such as questions about expenditures for modifications made to his real properties, gifts he received, or the source of payments made for legal fees in his numerous cases, which would have given the United States the names of third-parties from whom discovery could have been sought. (Doc. 136-24 ¶¶ 24-25, 29, 32), (Doc. 136-25 ¶ 25). Thus, the Court should bar Mr. Cosmano from presenting any testimony that contradicts his Fifth Amendment invocation.

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

JOSHUA WU
Deputy Assistant Attorney General, Tax
Litigation Branch

/s/*Bradley A. Sarnell*

10

BRADLEY A. SARNELL
Trial Attorney
Tax Litigation Branch
Civil Division, Department of Justice
P.O. Box 55
Washington, DC 20044
Telephone: (202) 307-1038
Bradley.A.Sarnell@usdoj.gov

## CERTIFICATE OF SERVICE

I, Bradley A. Sarnell, hereby certify that the foregoing *Creditor United States' Reply In Support of its Motion to Establish Adverse Inferences and Bar Testimony* was filed and served on August 6, 2026, pursuant to the Bankruptcy Court's ECF system as to the ECF filers on the electronic mail notice list, or sent by U.S. mail on the same date, as follows:

James A. Cosmano                                    (via U.S. mail)
2202 Lawrence Lane
Mount Prospect, IL 60056
*Debtor*

Paul M. Bach                                        (via CM/ECF)
Bach Law Offices
*Attorney for Debtor*

Adam Brief                                          (via CM/ECF)
Office of the U.S. Trustee
*Acting U.S. Trustee*

Thomas H. Hooper                                    (via CM/ECF)
*Chapter 13 Trustee*

Nationstar Mortgage LLC                             (via U.S. mail)
c/o Rushmore Servicing
Attn: Bankruptcy Department
PO Box 619096
Dallas TX 75261-9741
*Creditor*

Mission Lane LLC                                    (via U.S. mail)
by AIS Infosource, LP as agent
4515 N Santa Fe Ave

11

Oklahoma City, OK 73118
*Creditor*

/s/ *Bradley A. Sarnell*
BRADLEY A. SARNELL
United States Department of Justice
Civil Division, Tax Litigation Branch