IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| In re: | ) | Case No. 24-09140 |
| | ) | Chapter 13 |
| JAMES A. COSMANO, | ) | Judge Timothy A. Barnes |
| | ) | |
| Debtor. | ) | |
| | ) | |

**UNITED STATES' REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT IN CONTESTED MATTER INVOLVING OBJECTION TO THE IRS'S CLAIM**

Respectfully submitted:

BRETT A. SHUMATE
Assistant Attorney General

JOSHUA WU
Deputy Assistant Attorney General, Tax Litigation Branch

/s/*Bradley A. Sarnell*
BRADLEY A. SARNELL
JEFFREY N. NUÑEZ
Trial Attorneys
Tax Litigation Branch
Civil Division, Department of Justice
P.O. Box 55
Washington, DC 20044
(202) 307-1038 (Sarnell)
(202) 616-5218 (Nuñez)
Bradley.A.Sarnell@usdoj.gov
Jeffrey.N.Nunez@usdoj.gov

Local Counsel:

ANDREW S. BOUTROS
United States Attorney

Creditor United States of America, on behalf of the Internal Revenue Service, hereby submits its reply in support of its motion for summary judgment (Doc. 133) to Debtor James A. Cosmano's opposition to that motion (Doc. 147) in the contested matter arising from Mr. Cosmano's objection to the IRS's proof of claim.

*I. The United States' evidence of Mr. Cosmano's willful attempts to evade or defeat his 2007-2010 tax liabilities is uncontroverted.*

In support of its motion for summary judgment, the United States has submitted (among other things): (1) IRS transcripts showing that Mr. Cosmano's 2007-2010 tax returns drastically understated his tax due and a judgment entered by the U.S. District Court for the Northern District of Illinois that makes the correctness of the IRS's assessments of over $3 million in additional tax against him *res judicata* (Doc. 136-1 & 136-8); (2) bank records showing extensive travel to Las Vegas, cash advances taken out at casinos, and substantial expenditures made towards real estate (both his primary residence and investment properties) (Doc. 136-3 & 136-5); (3) affidavits showing that Mr. Cosmano constructed (or had constructed) a false wall in his condo unit, actively lied to one appraiser about the square footage of the unit and its number of bedrooms and bathrooms, and declined to inform the other appraiser that the property was 1,000 square feet larger and had two additional bedrooms and two additional bathrooms than the number on which the appraisal was premised (Doc. 136-9; 136-13; 136-14; 136-18); (4) Mr. Cosmano's testimony at his Section 341 Meeting of Creditors lying about the value of his condo unit and admitting to having gambled in tax years 2007-2010 (Doc. 136-4); (5) affidavits describing Mr. Cosmano's vandalism of his condo unit and the ruling of the District Court holding him in contempt of multiple Orders for doing so (Doc. 136-20; 136-22; 136-23); and (6) the transcript of Mr. Cosmano's deposition, as well as requests for production, interrogatories, and requests for admission served on him in the prior adversary proceeding, in which he refused

to answer any questions or produce any documents based on his invocation of his Fifth Amendment right against self-incrimination, which gives rise to adverse inferences. (Doc. 136-10, 136-11, 136-24, and 136-25.)

And, in response to this plethora of evidence showing that he has willfully attempted to evade or defeat both assessment and collection of his 2007-2010 tax liabilities, Mr. Cosmano has provided nothing. The lack of any contradictory evidence means that Mr. Cosmano cannot show a genuine issue of material fact for trial and makes the entry of summary judgment in favor of the United States proper. A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (186). But a party opposing summary judgment must do more than "show there is some metaphysical doubt about the material facts." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient, there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson*, 477 U.S. at 252; *see also Modrowski v. Pigatto*, 712 F.3d 1166, 1167 (7th Cir. 2003) (The court must enter summary judgment against a party that "does not come forward with evidence that would reasonably permit the finder of fact to find in [its] favor on a material question.").

Mr. Cosmano claims that a "reasonable trier of fact could credit Cosmano's evidence and testimony over the U.S. on outcome-determining facts" but it is unclear to what Mr. Cosmano could be referring. (Doc. 147 at p.6.) Mr. Cosmano has submitted no financial records of any sort and no testimony of any person, himself included, in support of any of his arguments. This is unsurprising, given that Mr. Cosmano invoked his Fifth Amendment right against self-incrimination as to every question asked at his deposition regarding his gambling; travel to Las

Vegas; ownership of multiple real properties; construction of a false wall in his condo unit; misrepresentation of the value of his condo unit in both the Chapter 7 bankruptcy case and later district court lien enforcement and foreclosure cases through appraisals obtained under false pretenses; and vandalism of the condo unit. (Doc., 136-10.) He also invoked his Fifth Amendment rights to refuse to answer requests for production of documents, interrogatories, and requests for admission on those topics. (Doc. 136-11, 136-24, & 136-25.)

Instead, Mr. Cosmano tries to use his attorney to inject facts to which he has never testified into the record—(1) that he believed that his condo unit only had one bedroom (Doc. 147, p. 8); (2) that his trips to Las Vegas were to care for a sick uncle (Doc. 147 p. 11); and (3) that he only obtained one cash advance from Rivers Casino which was not used to gamble (*Id.*)—while maintaining his Fifth Amendment invocation. Given that Mr. Cosmano has not testified to any of these things, either at his deposition or in any affidavit in the record, they are the unverified, hearsay statements of his attorney, which is not evidence, but an attempt to circumvent the consequences of Mr. Cosmano using the Fifth Amendment as a shield.[1] *See, e.g., Schambeau Props., LP v. Waffle House, Inc.,* No. 11-0029, 2011 WL 6934817, at *6 n.16 (S.D. Ala. Dec. 30, 2011) ("Unsupported statements of counsel in a summary judgment brief are not evidence, and cannot properly be considered.")

The remainder of Mr. Cosmano's attempts to contradict the United States' evidence is by reference to his own responses to the United States' statements of material facts or by saying that he "disputes" the United States' evidence or "denies" the facts that evidence supports. But Mr.

[1] If the Court is inclined to do anything other than disregard these unverified statements, Mr. Cosmano must be deemed to have waived his Fifth Amendment rights, and he must be ordered to respond to the United States' written discovery and sit for a deposition in which he is required to fully answer the questions posed.

Cosmano has never proffered any testimony or provided any documentary evidence in support of his claim at any point in this litigation or the adversary proceeding, so his responses to the United States' statement of facts are the statements and legal positions of his attorney, not evidence. *Ellis v. England*, 432 F.3d 1321, 1327 (11th Cir. 2005) ("Mere conclusions and unsupported factual allegations [. . .] are insufficient to withstand a motion for summary judgment."). Mr. Cosmano's denials are similarly not evidence which can create a genuine dispute of material fact. *See, e.g., Eline v. Town of Ocean City, Md.,* 452 F. Supp. 3d 270, 277 (D. Md. 2020), *aff'd sub nom. Eline v. Town of Ocean City, Maryland*, 7 F.4th 214 (4th Cir. 2021) (party opposing summary judgment "cannot rest on denials. The opposing party must set forth specific facts, either by affidavit or other evidentiary showing, demonstrating a genuine dispute for trial."). Without any contradictory evidence, the United States' evidence merits summary judgment.

*II. There are no issues before the Court that cannot be determined at the summary judgment stage.*

Mr. Cosmano's claim that the Court would "have to decide witness credibility, weigh competing inferences, determine what adverse inference to draw from constitutional invocations, resolve foundation objections, and decide Cosmano's intent" does not, given the record before the Court, preclude the entry of summary judgment. (Doc. 147, p. 13.)

*a. Mr. Cosmano has not raised a genuine issue of material fact with regard to his intent.*

On the record before it, the Court can and, indeed, must rule for the United States as to Mr. Cosmano's intent. The Court raised this issue in its previous ruling on the cross-motions for summary judgment:

> I can't issue summary judgment on a matter that turns on intent. I can't because it will always be one party says I intended, the other party says -- unless you plead yourself out of it, I suppose. If you admit in your answer, then maybe we're done. But I don't see that.

> Mr. Bach has been very careful in what he's filed. And what he's filed challenges all the conclusions of intent that the United States has made with respect to this. Because those are material facts that are in dispute, summary judgment is inappropriate in this matter.

(Doc. 136-26 at 26:20-27:7.) A party's assertions and denials in its pleadings are not evidence that can overcome a properly supported motion for summary judgment. *Woods v. Campbell*, No. 3:23-CV-03287-JEH, 2025 WL 2794642, at *4 (C.D. Ill. Sept. 30, 2025) ("Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or denials of the pleadings, which demonstrates that there is a genuine issue for trial."). And courts regularly determine a debtor's intent in the context of the § 523(a)(1)(C) exception to discharge on summary judgment. *See, e.g., United States v. Gorokhovsky,* 575 F. Supp. 3d 1050, 1060-61 (E.D. Wis. 2021); *In re Berzon*, 145 B.R. 247, 252-53 (Bankr. N.D. Ill. 1992).

The inquiry into intent under § 523(a)(1)(C) is not whether the debtor took the actions with an evil motive. *In re Claxton*, 335 B.R. 680, 686 (Bankr. N.D. Ill. 2006). Instead, the intent factor separates debtors who inadvertently failed to satisfy their tax liabilities from those who "voluntarily and intentionally" violate a known duty to pay their taxes. *Matter of Birkenstock,* 87 F.3d 947, 952 (7th Cir. 1996). Mr. Cosmano knew he had an obligation to pay federal income taxes, given that he filed returns every year and, for at least two years, paid a portion of his liabilities. *See, e.g., Kerger v. United States*, 609 F. Supp. 3d 562, 573 (N.D. Ohio 2022). The liabilities are excepted from discharge unless Mr. Cosmano's failure to pay was inadvertent.

As a practical matter, a debtor is never going to admit that they intentionally violated their duty to pay their taxes, so courts look to their conduct to make that determination, in the form of "badges of fraud." *In re Sommers*, 209 B.R. 471, 479 (Bankr. N.D. Ill. 1997) (courts look to "'badges of fraud' to establish the intent to evade taxes because direct evidence is rarely

available."). And many of the badges of fraud are present here, including "recurrent understating income," "maintaining inadequate records," "concealing assets," and the payment of discretionary expenses in the face of known tax liabilities." *In re Geiger*, 408 B.R. 788, 791-92 (C.D. Ill. 2009).

Mr. Cosmano's 2007-2010 tax returns understated his tax liabilities in those years by tens of thousands to millions of dollars in each year, leading the IRS to assess him additional tax: $2,890,778 for 2007, $91,648 for 2008, $45,993 for 2009, and $14,547 in 2010. Mr. Cosmano cannot challenge the correctness of these assessments; the court in *United States v. Cosmano*, Case No. 1:17-cv-05721 (N.D. Ill.), entered judgment against Mr. Cosmano for those liabilities (plus the interest and penalties that accrued thereon) and the *res judicata* effect of that judgment bars any collateral attack on the assessments in this proceeding. *Cf.* 11 U.S.C. § 505(a)(2). And it does not matter whether the additional assessments of tax were due to Mr. Cosmano underreporting his income or claiming deductions or credits to which he was not entitled; both are evidence of a debtor's willful intent. *Geiger,* 408 B.R. at 791; *In re Terrell*, 594 B.R. 792, 813 (Bankr. W.D. Okla. 2018). That he disputes the judgment is of no import here.

Mr. Cosmano has kept inadequate records of his financial dealings. By his own admission, between at least 2007 and August 2021, Mr. Cosmano employed a standard practice of destroying documents in his possession after reviewing them and he thus had no documents responsive to the government's document requests to him seeking (1) his federal or state tax returns and associated schedules; (2) correspondence between him and the IRS concerning his 2007-2010 income tax liabilities; (3) financial statements, checks, and other bookkeeping documents concerning his deposit accounts and credit cards; (4) documents relating to purchases, sales, or refinancing of his real properties, including any loan applications, rents, and mortgages;

(5) documents relating to his income, and loans or gifts in excess of $1,000.00 he received; (6) documents concerning his stocks, bonds, or other securities; and (7) documents pertaining to his trips and vacations. United States' Statement of Material Facts (Doc. 136) ("Facts"), ¶ 6.

Mr. Cosmano's actions regarding his condo unit, which have been described in exhaustive detail, constitute the concealment of assets. Although he disclosed the existence of the condo unit on his bankruptcy schedules, he deliberately undervalued it on his bankruptcy schedules and created a paper trail in the form of appraisals based on the false premise that the unit was half the size and had two fewer bedrooms and two fewer bathrooms than it actually had, including by constructing a false wall.[2] The asset being concealed was not just the property, but the equity therein. His actions, particularly given that the only purposes to which the appraisals have ever been put were in service of arguments that the United States' liens must be stripped off the property due to a lack of equity to secure them, constitutes the concealment of assets.

Mr. Cosmano also dissipated his assets by spending them on discretionary pursuits rather than on his tax liabilities. He took out $12,000 in cash advances at Rivers Casino and made 17 trips to Las Vegas rather than pay his taxes. Facts, ¶ 5(a). Again, given that the only evidence in the record are the bank records showing the cash advances and trips, and Mr. Cosmano's admission at the Section 341 Meeting of Creditors that he has gambled in the past (and that he had continued to do so), the only reasonable inference supported by evidence was that he was spending his money on gambling rather than paying his taxes. Facts, ¶ 5(a); (Doc. 136-4 at

---

[2] Mr. Cosmano was the first owner of the condo unit and the only reasonable inference, given that neither Mr. Cosmano nor anyone else has ever testified as to how the false wall came to be erected in a unit only he had owned, is that he constructed the wall or had it constructed. *See Levin v. Altisource Sols., Inc.*, 755 F. Supp. 3d 1021, 1036 (N.D. Ill. 2024) ("An inference is not reasonable if it is directly contradicted by direct evidence provided at the summary judgment stage, nor is a 'conceivable' inference necessarily reasonable at summary judgment.").

13:12-15). He also owned two parcels of real property other than his Mt. Prospect residence, including the condo unit, for which he made a $200,000 down payment and mortgage payments that ranged from $4,700 to $5,600 per month. Facts, ¶ 5(b)-(e). Even if Mr. Cosmano's claim that friends and family gave him money to pay for his properties is true—and he has both not put in evidence of it and has refused to answer discovery on that topic (Doc. 136-24 ¶29); (Doc. 136-25 ¶ 25)—that bolsters the United States' argument, not his; he had access to substantial amounts of funds beyond his own income and chose to use them to build up equity in his assets rather than in an effort to resolve his tax liabilities. (Doc. 147 at p. 4.)

And the above evidence of Mr. Cosmano's intent is further bolstered by the adverse inferences to which the United States is entitled. The best source of information as to Mr. Cosmano's intent is Mr. Cosmano himself. The Court noted in its ruling on the parties' previous cross-motions for summary judgment that it was giving Mr. Cosmano the "opportunity to put on evidence to the contrary" including to "testify as to intent, if he so chooses." (Doc. 136-26 at 27:24-25). Having chosen to maintain his invocation of the Fifth Amendment rather than testify in response to questions that go directly to the issue of his intent, Mr. Cosmano is subject to adverse inferences. And this does not, as Mr. Cosmano argues, "relieve the U.S. of its burden to prove conduct and willfulness." (Doc. 147 at p. 12.) The adverse inferences merely confirm what the independent corroborative evidence submitted by the United States already shows: that Mr. Cosmano's intent in his actions regarding the condo unit were designed to frustrate the United States' collection efforts. This is the only inference that would be adverse to Mr. Cosmano's interests, and is the inference the Court should draw.

The United States is not, as Mr. Cosmano alleges, relying on his nonpayment of taxes alone, but instead on the presence of recognized badges of fraud, supported by the adverse

inferences the Court is entitled to make from Mr. Cosmano's decision to invoke the Fifth Amendment rather than testify.

*b. Mr. Cosmano's remaining arguments as to why summary judgment cannot be granted are not meritorious.*

Mr. Cosmano has made no challenge to the credibility of any of the United States' affiants or provided any evidence that contradicts their testimony. In any event, "the prospect of challenging a witness' credibility is not alone enough to avoid summary judgment." *Dugan v. Smerwick Sewerage Co.,* 142 F.3d 398, 406 (7th Cir.1998).

There are no competing inferences involved in this case. All of the evidence submitted has been by the United States; Mr. Cosmano has provided no evidence and thus no potential counter-inferences could arise to support his claims. *See Barnes v. Arden Mayfair, Inc.,* 759 F.2d 676, 680 (9th Cir.1985) ("A party opposing summary judgment is entitled to the benefit of only reasonable inferences that may be drawn from the evidence put forth."). A reasonable inference "cannot be supported by only threadbare conclusory statements instead of significant probative evidence." *Id.* at 680-81.

Mr. Cosmano's foundation objections can be disposed of on summary judgment. The only evidence to which Mr. Cosmano raises any foundation objection are the bank records: Mr. Cosmano's credit card and mortgage records, (Doc. 136-3) and (Doc. 136-5). Although the United States has provided a declaration from its then-Trial Attorney explaining that the government received the documents via subpoenas, that is not the basis for their admissibility. The documents are authenticated as business records of the businesses which responded to the subpoenas by declarations of records custodians. (Doc. 136-3 at p. 9); (Doc. 136-5 at pp. 4, 12-13). Many of the documents provided by Community Loan Servicing are also signed by Mr. Cosmano himself, rendering the statements therein admissions. (Doc. 136-5 at pp. 11, 16, 20-

21). Mr. Cosmano's argument that the United States' declarants were "late-disclosed" is absurd, as all such witnesses were disclosed over three years ago in a separate proceeding; Mr. Cosmano had the entirety of discovery in this case to depose any or all of them and chose not to. The Court can thus resolve Mr. Cosmano's meritless foundation objections. The Court should also reject the assertion that the United States did not produce these bank records. They were obtained via subpoena in the prior adversary proceeding, and were turned over to Mr. Cosmano years ago and he cannot dispute them now.

Finally, the Court can "determine what adverse inference to draw from constitutional invocations" on summary judgment. *See, e.g., Rivera v. Guevara*, 319 F. Supp. 3d 1004, 1038-40 (N.D. Ill. 2018). The inference to be drawn from the invocation of a witness' Fifth Amendment rights in a civil case is "that the witness' testimony would be adverse to his interests." *Cent. States, Se. & Sw. Areas Pension Fund v. Wintz Props., Inc.,* 155 F.3d 868, 872 (7th Cir. 1998). Mr. Cosmano was asked whether he constructed a false wall in his condo unit to conceal a portion of its size; the only answer which would be adverse to his interests is that he did. *See* (Doc. 136-10 at 31:6-32:1); (Doc. 136-11 ¶ 8). Mr. Cosmano was asked about his actions involving his condo unit: (1) whether his condo unit was 2,100 square feet and had three bedrooms and three bathrooms, (2) whether he informed Michael Kuehn and Mavreen Dunlavy, for purposes of Mr. Kuehn's appraisal, that the property was only 1,135 square feet and only had one bedroom and one bathroom, and (3) whether he failed to inform Matthew Vaught of the property's actual size and number of bedrooms and bathrooms, where Mr. Vaught's view of the true size of the unit was blocked by the false wall. (Doc. 136-10 at 26:17-34:15, 46:19-52:10); (Doc. 136-11 ¶¶ 6, 10-12). The only answers that would be adverse to Mr. Cosmano's interests are that he constructed the false wall, he told Mr. Kuehn and Ms. Dunlavy that the unit was

smaller than it actually was, and that he did not tell Mr. Vaught of the unit's actual size. Mr. Cosmano was asked about his intent in using the false appraisals in multiple court filings; the only answer adverse to his interests in this proceeding was that he did so to avoid collection of his tax liabilities. (Doc. 136-10 at 34:10-15, 35:17-21, 36:4-40:7, 52:6-70:17); (Doc. 136-11 ¶ 14). And Mr. Cosmano was asked about his intent in vandalizing the condo unit, in violation of multiple orders of the District Court; the only answer adverse to his interests in this proceeding was that he did to so avoid collection of his tax liabilities. (Doc. 136-10 at 72:21-74:15); (Doc. 136-23 at 10:10-16).

*III. Mr. Cosmano's attempt to limit the scope of relevant evidence is meritless.*

Having provided no evidence of his own on which the Court could find a genuine issue of material fact, Mr. Cosmano's attempt to avoid summary judgment by arguing that the United States' evidence is irrelevant is unavailing. As he did in his summary judgment motion, Mr. Cosmano argues that postpetition and postdischarge events, including his attempt to hide his equity in the condo unit, are not relevant. (Doc. 147, p. 7-8.) Mr. Cosmano provides no caselaw to support his position, and myriad courts have found that both postpetition and postdischarge actions are relevant to both the conduct and intent requirements of § 523(a)(1)(C). *See, e.g.*, *United States v. Merrill*, 336 B.R. 804, 808 (D. Or. 2005) (lying about assets on bankruptcy schedules); *United States v. Timon*, No. 20-1101, 2022 WL 17249463, at *7-8 (N.D.N.Y. Sept. 6, 2022) (postpetition financial dealings designed to avoid collection of tax); *Gorokhovsky*, 575 F.Supp.3d at 1059 (failure to comply with discovery in dischargability adversary proceeding); *U.S. v. Harold (In re Harold)*, 611 B.R. 835, 847-49 (Bankr. E.D. Mich. 2020) (post-discharge attempts to undermine the IRS's lien on valuable pre-petition real estate); *U.S. v. Tallis (In re Tallis)*, 634 B.R. 339, 351-52 (Bankr. N.D. Tex. 2021) (post-discharge violation of court order

by trespassing on property subject to sale order and theft of personal property in receivership).

Mr. Cosmano move the goalposts again by claiming that the United States is not entitled to summary judgment because it has not submitted Mr. Cosmano's financial records from 2007-2010. (Doc. 147 p. 1-2.) This is legally untenable, as federal courts have consistently held that willful evasion does not just include a debtor's efforts to thwart *assessment* of a tax, but also to subsequent attempts to frustrate *collection* of that tax once assessed. *See, e.g.*, *U.S. v. Coney*, 689 F.3d 365, 372 (5th Cir. 2012) ("the bulk of federal authority considering the issue has held that § 523(a)(1)(C)'s conduct requirement applies equally to attempts to evade or defeat the collection and payment of a tax"); *Stamper v. U.S. (In re Gardner)*, 360 F.3d 551, 557-58 (6th Cir. 2004) (§ 523(a)(1)(C) applies "where the debtor willfully attempted to evade or defeat *payment* of the taxes") (emphasis in original); *accord Griffith v. U.S. (In re Griffith)*, 206 F.3d 1389, 1395 (11th Cir. 2000); *Dalton v. IRS*, 77 F.3d 1297, 1301 (10th Cir. 1996).

This position also ignores that the reason that the United States does not have Mr. Cosmano's financial records from those years is due to Mr. Cosmano's practice of destroying his financial records immediately after reviewing them. Facts, ¶ 6. Indeed, courts have found that failure to keep adequate financial records, far from being a reason to find tax liabilities discharged (as Mr. Cosmano urges), is evidence that can be used to meet both the conduct and intent requirements of § 523(a)(1)(C). *See, e.g., Hassan v. U.S. (In re Hassan)*, 301 B.R. 614, 620 (S.D. Fla. 2003); *Gorokhovsky*, 575 F. Supp. 3d at 1061.

*IV. The United States' evidence is sufficient to support summary judgment.*

Rather than providing any evidence of his own, Mr. Cosmano dedicates the remainder of his brief to arguing that the United States' evidence does not support a finding that he meets the conduct and intent requirements under § 523(a)(1)(C). Such arguments are meritless.

*a. Mr. Cosmano's gambling.*

Mr. Cosmano's arguments that the evidence of his gambling is not relevant because "the United States has not established an undisputed connection between the alleged expenditures and a willful attempt to evade the taxes," or is excludable under FRE 403 because it "risks confusing the dischargeability issue" are frivolous. (Doc. 147, p. 9.) Courts have found that the "intentional and voluntary choice to use [one's] money for gambling rather than paying the taxes" shows that the failure to pay the taxes was willful. *In re Long*, 419 B.R. 884, 889 (Bankr. M.D. Fla. 2009). Courts have also looked to gambling activity to find that the conduct requirement of § 523(a)(1)(C) is met. *In re Harris*, 328 B.R. 837, 845 (Bankr. S.D. Ala. 2005). Mr. Cosmano's gambling, which he admitted to having done in tax years 2007-2010 and afterwards, is not tangential to the dischargeability issue; it is one of the methods by which he attempted to evade or defeat collection of his taxes.[3]

*b. Mr. Cosmano's real property records.*

Mr. Cosmano also does not cast any doubt on the government's evidence regarding his expenditure of money towards the ownership of real property rather than paying his taxes.

*i. Mr. Cosmano's loan application.*

Mr. Cosmano's argument that his statements on the loan application do not establish his assets, income, or intent is fundamentally flawed. (Doc. 147, p. 9-10.) Bizarrely, Mr. Cosmano argues that the loan application is unsigned, ignoring his signature on the document, attesting

---

[3] As noted above, Mr. Cosmano's attorney attempts to inject contradictory, unverified, hearsay allegations into the record: he simultaneously concedes "Las Vegas travel and certain casino cash advances" and claims that the Las Vegas travel was not made for gambling and that he only took out a single cash advance at Rivers Casino (which a cursory glance at his bank records shows is verifiably untrue) that was not used for gambling. (Doc. 147, p. 4, 11.) Again, "[u]nsupported statements of counsel in a summary judgment brief are not evidence, and cannot properly be considered." *Schambeau Props.,* 2011 WL 6934817, at *6 n.16.

that the information provided in the application "is true and correct" as of January 20, 2010. (Doc. 136-5, p. 14-16.) The statements as to his monthly income and the balance of his bank account are therefore Mr. Cosmano's admissions.[4]

Mr. Cosmano then attempts to move the goalposts again, contradicting his previous argument that the 2007-2010 financial records are the only thing that matter and instead arguing that the loan application does not show that he had the funds at the time the IRS assessed the tax. (Doc. 147, p. 10.) But this ignores the interrelated nature of the dischargeability evidence. Mr. Cosmano failed to accurately report his tax liabilities on his 2007-2010 returns, underreporting such liabilities by over $3 million, to say nothing of the penalties and interest that became due. (Doc. 136-1, p. 9-30.) The money that he had in his account in January of 2010 should have been used to pay his taxes, but was instead used on expensive real estate and gambling. It cannot be that Mr. Cosmano's liabilities are dischargeable because he managed to evade detection by the IRS for years after deliberately underreporting his liabilities.

*ii. The PAID program*

The records of Mr. Cosmano's enrollment in the PAID program, under which he elected to pay $3,000 per month towards his mortgage on the Mt. Prospect property, including additional principal of over $1,000 per month, are the business records of Community Loan Servicing, LLC, authenticated by a records custodian who stated that the records were created at or near the time of the events by a person with knowledge, and that such records are kept in the regular course of their business. (Doc. 136, p. 12-13.) If Mr. Cosmano was not enrolled in the program, he could have testified as such or provided bank records showing how much he was paying per

---

[4] Mr. Cosmano's complaint that the United States did not include the underlying bank records ignores that the records are unavailable because he destroyed documents immediately after reading them, further proof of his willful intent to evade or defeat his tax liabilities.

month towards his mortgage on the Mr. Prospect property. Having chosen not to do so, he cannot avoid summary judgment through his unsupported claim that he was not involved in such a program; a disputed issue of fact requires the submission of contradictory evidence. *Ellis*, 432 F.3d at 1327.

*iii. The Windsor Mall Property*

Mr. Cosmano makes the absurd claim that the United States has not established "the Nature or Existence" of his ownership interest in his Park Ridge, Illinois property where he signed a letter to Chase Bank stating that the property was his. (Doc. 147, p. 11.) There is thus no dispute that he owned it, and that he did not use any rental funds he may have been receiving or sell the property to pay his tax liabilities is further evidence of collection evasion.

*c. The District Court Money Judgment*

The District Court's money judgment against Mr. Cosmano, contrary to Mr. Cosmano's argument, is evidence that he intended to evade or defeat his 2007-2010 tax liabilities. (Doc. 147 p. 13-14.) Mr. Cosmano's 2007-2010 tax returns understated his tax liabilities in those years, leading the IRS to assess him over $3 million in additional tax. (Doc. 136-1, p. 9-30.) The District Court's judgment against Mr. Cosmano establishes the correctness of the assessments, meaning that Mr. Cosmano understated his liabilities, and protects those assessments from exactly the kind of collateral attack Mr. Cosmano is making here. Mr. Cosmano's understatement of his tax is thus further proof of his intent.

**Conclusion**

For the reasons set forth above, and the reasons set forth in the United States' opening brief, Mr. Cosmano's 2007-2010 tax liabilities were excepted from his Chapter 7 discharge under 11 U.S.C. § 523(a)(1)(C) and his objection to the IRS's Claims 3-1 and 3-2 should be overruled.

**CERTIFICATE OF SERVICE**

I, Bradley A. Sarnell, hereby certify that the foregoing *Creditor United States' Reply In Support of its Motion for Summary Judgment in Contested Matter Involving Objection to the IRS's Claim* was filed and served on September 14, 2026, pursuant to the Bankruptcy Court's ECF system as to the ECF filers on the electronic mail notice list, or sent by U.S. mail on the same date, as follows:

James A. Cosmano (via U.S. mail)
2202 Lawrence Lane
Mount Prospect, IL 60056
*Debtor*

Paul M. Bach (via CM/ECF)
Bach Law Offices
*Attorney for Debtor*

Adam Brief (via CM/ECF)
Office of the U.S. Trustee
*Acting U.S. Trustee*

Thomas H. Hooper (via CM/ECF)
*Chapter 13 Trustee*

Nationstar Mortgage LLC (via U.S. mail)
c/o Rushmore Servicing
Attn: Bankruptcy Department
PO Box 619096
Dallas TX 75261-9741
*Creditor*

Mission Lane LLC (via U.S. mail)
by AIS Infosource, LP as agent
4515 N Santa Fe Ave
Oklahoma City, OK 73118
*Creditor*

*/s/ Bradley A. Sarnell*
BRADLEY A. SARNELL
United States Department of Justice
Civil Division, Tax Litigation Branch