**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | Chapter 13 |
| | ) | |
| James Anthony Cosmano, | ) | Case No. 24 B 09140 |
| | ) | |
| Debtor. | ) | Hon. Timothy A. Barnes |

**RESPONSE OF JAMES COSMANO TO THE UNITED STATES' AMENDED L.R. 7056-2 STATEMENT OF ADDITIONAL MATERIAL FACTS FOR DEBTOR'S MOTION FOR SUMMARY JUDGMENT**

NOW COMES the Debtor, James Anthony Cosmano ("Mr. Cosmano"), by and through his counsel of record, and responds to the United States of America's Additional Statement of Material Facts filed in support of the Debtor's Motion for Summary Judgment pursuant to Local Rule 7056-2 as follows:

Mr. Cosmano objects generally to the United States' Additional Statement of Material Facts (for the same reasons that are stated in the Response to the United States Amended Statement of Material Facts to the extent it relies on documents, declarations, deposition questions, requests for admission, or other materials not properly supported, authenticated, attached, or admissible under Rule 56. The United States states that the Statement of Additional Material Facts are the same and as such Mr. Cosmano Responses Objections and Responses remain the same. Mr. Cosmano further objects to the extent the United States attempts to convert Mr. Cosmano's invocation of his Fifth Amendment rights into deemed admissions or undisputed facts. Any adverse inference from invocation of the Fifth Amendment is permissive, not mandatory, and cannot by itself establish the United States' asserted facts or eliminate genuine disputes of material fact.

Mr. Cosmano also objects generally to the United States' reliance on witnesses that were not timely disclosed in the prior adversary proceeding. In its answers to Mr. Cosmano's interrogatories, the United States identified James Cosmano, Aida Ortega, Alex Porrata, Bart Brellenthin, and Lucas Jones as witnesses. On July 1, 2022, ten days before the close of discovery, the United States amended its Rule 26(a) disclosures to add Michael Kuehn, Mavreen Dunlavy, Kevin Vaught, Justin Storer, Steven Radtke, Geneva Everett, and Ginger Menne. Mr. Cosmano was prejudiced by the late disclosure because there was insufficient time to depose

these witnesses before discovery closed, particularly after the United States announced a criminal referral and Mr. Cosmano was required to invoke his Fifth Amendment rights. The late-disclosed witnesses should be barred from supplying testimony or declarations in support of summary judgment.

Subject to and without waiving these objections, Mr. Cosmano responds paragraph-by-paragraph below. Each numbered paragraph of the United States' Amended Statement of Material Facts is reproduced before Mr. Cosmano's response.

## GENERAL OBJECTIONS TO THE AMENDED STATEMENT OF MATERIAL FACTS AND CERTAIN EXHIBITS

Defendant James Cosmano objects to the United States' Amended Statement of Material Facts because it does not comply with Local Rule 7056-1(C). The Amended Statement does not provide a description of the parties, does not set forth facts supporting venue, and does not set forth facts supporting jurisdiction. Those omissions impair the purpose of a statement of material facts: to present the Court with a clear, concise, properly supported factual record for summary-judgment review.

The Seventh Circuit has repeatedly recognized that district courts may require strict compliance with local rules governing summary-judgment factual statements. *Cichon v. Exelon Generation Co.*, LLC, 401 F.3d 803, 809-10 (7th Cir.2005). The factual statement required by local summary-judgment rules is not a mere formality; it substantially assists the court in deciding whether a trial is necessary. *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 923-24 (7th Cir.1994). Courts are not required to search through improper denials, argument, or unsupported material to locate a genuine factual dispute. *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir.2003). A Rule 56.1 submission that is replete with legal argument, rather than clear factual statements supported by admissible evidence, does not satisfy the rule's purpose. *Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 219 (7th Cir.2015).

For those reasons, Mr. Cosmano objects to the United States' use of argumentative material and footnotes in the Amended Statement of Material Facts. The Amended Statement should state facts, not embed argument in a purported factual submission. The Court has

discretion to strike or disregard non-compliant summary-judgment submissions where they fail to present facts in the manner required by the applicable local rule. *Ammons v. Aramark Unif. Servs.*, 368 F.3d 809, 817 (7th Cir.2004). The Court also may disregard factual submissions that misrepresent evidence, contain improper argument, or lack proper record support. *Hinterberger v. City of Indianapolis*, 966 F.3d 523, 525 (2020).

Mr. Cosmano also objects to Exhibit 3, titled "Declaration of Noah Glover-Ettrich and Documents from JP Morg," and Exhibit 5, titled "Declaration of Noah Glover-Ettrich and Documents from Select Portfolio Services" The declarant has not shown personal knowledge sufficient to authenticate those third-party records or to testify that the documents are valid business records of JP Morgan, Select Portfolio Services, or any other third-party entity. Affidavits or declarations used at summary judgment must be made on personal knowledge, must set out facts that would be admissible in evidence, and must show that the declarant is competent to testify on the matters stated. *Cehovic-Dixneuf v. Wong*, 895 F.3d 927, 931 (7th Cir.2018). A witness may not testify to a matter unless there is evidence sufficient to support a finding that the witness has personal knowledge of that matter. *Payne v. Pauley*, 337 F.3d 767, 771 (7th Cir.2003). Conclusory assertions that do not establish a factual basis for personal knowledge do not satisfy the applicable evidentiary requirement. *Davis v. Chicago*, 841 F.2d 186, 189 (7th Cir.1988).

Exhibit 5 is particularly improper because it is a subpoena response. At summary judgment, a party may object that cited material cannot be presented in a form that would be admissible in evidence. *Cehovic-Dixneuf v. Wong*, 895 F.3d 927, 931 (7th Cir.2018). Because Exhibits 3 and 5 are not supported by a declarant with personal knowledge and competency to authenticate or validate the documents, Mr. Cosmano objects to those exhibits and respectfully requests that the Court strike them or, at minimum, decline to consider them in ruling on the United States' motion.

## RESPONSES TO THE UNITED STATES' AMENDED STATEMENT OF MATERIAL FACTS

## I. Mr. Cosmano's Tax Filings and Subsequent IRS Examination and Assessments

**1.** Debtor James A. Cosmano is a lawyer. AP No. 48-11, Transcript of May 5, 2022 Civil Contempt Hearing, at 45:18. He filed federal income tax returns for each of his 2007, 2008, 2009, and 2010 tax years, self-reporting liabilities of $1,001.00, $0.00, $0.00, and $3,614.00, respectively. (Doc. 69-1) at pp. 3-11 (AP No. 59-1).

**Response**: Mr. Cosmano objects to this paragraph to the extent the United States relies on materials that are not properly authenticated or admissible. Mr. Cosmano further objects to the reliance on the Declaration of Angel LaBran because Angel LaBran was not timely disclosed as a witness in the prior adversary proceeding and because the United States has not laid an adequate foundation for admission of the materials referenced. Without waiving these objections, Mr. Cosmano admits that he is licensed as a lawyer and admits that he filed federal income tax returns for tax years 2007, 2008, 2009, and 2010, self-reporting tax liabilities of $1,001.00, $0.00, $0.00, and $3,614.00, respectively. See ECF No. 79, Response to United States' Statement of Material Facts, Response to ¶ 1; ECF No. 82, Response to United States' Statement of Additional Facts, Response to ¶ 1.

**2.** The IRS subsequently examined Mr. Cosmano's 2007-2010 tax returns and made substantial assessments of additional tax and penalties for each year. (Doc. 69-1), at pp. 3-11. The IRS's account transcripts reflect that Mr. Cosmano was represented before the IRS during the examination process. Id.

**Response**: Mr. Cosmano objects to this paragraph because the United States has not laid a proper evidentiary foundation for the IRS account transcripts and because the documents constitute hearsay unless properly admitted through a competent witness with knowledge of the procedures under which the records were created. Mr. Cosmano further objects to the use of Angel LaBran as a witness for the reasons stated in the general objections and in response to paragraph 1. Without waiving these objections, Mr. Cosmano admits that the IRS examined his 2007 through 2010 returns and made assessments of additional tax and penalties, but denies that the assessments were correct. Mr. Cosmano states that the assessments were made for the 2007 tax year on March 15, 2010, and August 11, 2014; for the 2008 tax year on December 1, 2014; for the 2009 tax year on December 1, 2014; and for the 2010 tax year on January 5, 2015. See ECF No. 79, Response to ¶ 2; ECF No. 82, Response to ¶ 2.

**3.** As of August 13, 2021, Mr. Cosmano's outstanding tax liabilities for his 2007 through 2010 years, including accruals, exceeded $7 million. (Doc. 69-2) at ¶ 3 (DC No. 48-2). Almost four additional years of interest have accrued. And as of August 13, 2019 – the date of Mr. Cosmano's Chapter 7 discharge – he had made only two payments totaling $1,146.00 toward his 2007 liability (with $728.00 in credits applied to that year); a single payment of $3,538.00 toward his 2010 liability; and no payments at all toward his 2008 and 2009 liabilities. (Doc. 69-1) at pp. 3-11.

Response: Mr. Cosmano objects to this paragraph because the United States has not laid a proper evidentiary foundation for the documents relied upon, including the declaration and IRS account transcripts, and because the documents constitute hearsay unless properly admitted. Mr. Cosmano also objects to the reliance on Lucas Jones to the extent his testimony or declaration was not properly disclosed or supported. Without waiving these objections, Mr. Cosmano denies that the alleged liabilities are correct and does not admit that the United States asserted outstanding tax liabilities for 2007 through 2010 exceeded $7 million as of August 13, 2021. Mr. Cosmano admits that he made payments totaling $1,146.00 for 2007, a payment of $3,538.00 for 2010, and no payments for 2008 and 2009, for a total of $4,684.00. See ECF No. 79, Response to ¶ 3; ECF No. 82, Response to ¶ 3.

**4.** Mr. Cosmano's unpaid liabilities for 2007 through 2010 were secured by liens in favor of the United States, notice of which was recorded with the Cook County Recorder of Deeds on February 9, 2015. Claim No. 3-2, at pp. 6. Re-filed notice of the lien for the 2007 tax year was subsequently recorded on March 9, 2020. Id. at 7.

Response: Mr. Cosmano objects to this paragraph because the United States has not laid a proper evidentiary foundation for Claim No. 3-2 or the documents referenced therein, and because the documents constitute hearsay unless properly admitted. Mr. Cosmano further objects because the United States references a proof of claim and alleged recorder documents without properly attaching and authenticating the underlying materials as evidence supporting summary judgment. Without waiving these objections, Mr. Cosmano admits that notices of liens were recorded in favor of the United States on February 9, 2015, for alleged unpaid liabilities for 2007 through 2010, but denies that any such liens remain enforceable to the extent they have expired or were otherwise invalid. Mr. Cosmano further denies the validity of any alleged re-filed notice recorded on March 9, 2020, because the Chapter 7 case was pending at that time and the automatic stay had been modified only as to one parcel of real estate. See Claim No. 3-2; ECF No. 79, Response to ¶ 4; ECF No. 82, Response to ¶ 4.

## II. Mr. Cosmano Engages in Frivolous Spending Rather than Paying His Taxes

**5.** Following the assessments of Mr. Cosmano's 2007 through 2010 tax liabilities, he lived a lavish lifestyle in which he spent his money on pricey pursuits rather than paying his tax liabilities, including:

> **a.** Gambling activity, as evidenced by bank records reflecting that Mr. Cosmano took more than 17 discrete trips to Las Vegas, Nevada, between December 2012 and August 2017, and made repeated withdrawals of cash advances – each of at least $2,000.00 – at "River's Casino" in Des Plaines, Illinois, between May 2013 and 2017. (Doc. 69-3) at pp. 9-30 (AP No. 48-1).

**Response**: Mr. Cosmano objects to paragraph 5 and subparagraph 5(a) because the United States has not laid a proper foundation for the bank records and because the bank records constitute hearsay unless admitted through a competent records custodian or other qualified witness with knowledge of the procedures under which the records were created. Mr. Cosmano further objects because the United States relies on documents attached to the declaration of an attorney rather than testimony from a witness with personal knowledge of the bank records or the alleged transactions. Without waiving these objections, Mr. Cosmano denies that he lived a lavish lifestyle or that he spent money on "pricey pursuits" rather than paying tax liabilities. Mr. Cosmano admits only that he occasionally traveled to Las Vegas and that at times he took cash advances of $2,000.00 or more at Rivers Casino in Des Plaines, Illinois. Mr. Cosmano denies the remaining allegations in paragraph 5(a), including the characterization that such activity constituted a lavish lifestyle or evidence of willful evasion. See ECF No. 79, Response to ¶ 5(a); ECF No. 82, Response to ¶ 5(a); ECF No. 79-1, Affidavit of James Cosmano.

> **b.** The ownership and maintenance of a high-rise condominium unit situated at 450 E. Waterside Drive, Unit 1301, Chicago Illinois 60601 and overlooking Chicago's Navy Pier (the "Waterside Drive Property"), which property Mr. Cosmano neither rented out nor used as a residence, and for which the monthly mortgage payment was represented by Mr. Cosmano to be approximately $5,600.00. (Doc. 69-4) at 2:12-14; 4:14-16; 5:4-8 (AP No. 59-2); (Doc. 69-5) at pp. 14-16 (AP No. 59-3) (January 20, 2010 Uniform Residential Loan Application representing "2202 W Lawrence Ln. Mount Prospect, IL 60056" as Mr. Cosmano's "present address").

**Response**: Mr. Cosmano objects to subparagraph 5(b) because the United States has not laid a proper foundation for the documents on which it relies, including the loan application and related materials, and because those documents constitute hearsay unless properly admitted. Mr. Cosmano further objects to the extent the United States relies on documents attached to an

attorney declaration rather than a competent witness with personal knowledge. Without waiving these objections, Mr. Cosmano admits that the Waterside Drive Property is located at 450 E. Waterside Drive, Unit 1301, Chicago, Illinois 60601, and admits that he represented during the Section 341 meeting that the mortgage payment was approximately $5,600.00. Mr. Cosmano denies that the cited testimony establishes that he neither rented out nor used the property as a residence, denies the characterization that ownership of the property shows lavish spending, and denies all remaining allegations in subparagraph 5(b). The Section 341 testimony cited by the United States also reflects that Mr. Cosmano borrowed money from friends and family to pay bills, including expenses associated with the property. See Doc. 69-4 at 6:1-8; ECF No. 79, Response to ¶ 5(b); ECF No. 82, Response to ¶ 5(b); ECF No. 79-1, Affidavit of James Cosmano.

> **c.** As indicated by the note evidencing the purchase money loan secured by Mr. Cosmano for the Waterside Drive Property, Mr. Cosmano made a down payment of nearly $200,000.00 towards the purchase of that property, with monthly payments initially being $4,714.27, before increasing at some unknown point to the $5,600.00 figure attested to by Mr. Cosmano during his Section 341 meeting of creditors in his Chapter 7 bankruptcy case. (Doc. 69-5) at p. 8 (Adjustable Rate Note). Even crediting the initial lower monthly payment amount contained in the note, and ignoring the higher rent attested to under penalty of perjury by Mr. Cosmano, with monthly loan payments commencing in December 2007 and ending in June 2019 (139 payments), all told Mr. Cosmano paid $855,283.53 toward the Waterside Drive Property (the down payment of $200,000.00 plus 139 monthly payments of $4,714.27).

**Response**: Mr. Cosmano objects to subparagraph 5(c) because the United States has not laid a proper foundation for the note, loan documents, payment history, or calculations, and because the documents and statements constitute hearsay unless properly admitted. Mr. Cosmano further objects because the United States relies on an attorney declaration and unsupported calculations rather than admissible evidence establishing each payment, the source of each payment, and the total amount actually paid by Mr. Cosmano. Without waiving these objections, Mr. Cosmano admits only that he represented during the Section 341 meeting that the mortgage payment on the Waterside Drive Property was approximately $5,600.00. Mr. Cosmano denies the remaining factual allegations, including the assertion that he paid $855,283.53 toward the property from his own income or in lieu of paying taxes. Mr. Cosmano states that he borrowed funds from friends and family to pay bills. See Doc. 69-4 at 6:1-8; ECF No. 79, Response to ¶ 5(c); ECF No. 82, Response to ¶ 5(c); ECF No. 79-1, Affidavit of James Cosmano.

> **d.** Notwithstanding the substantial sums of money Mr. Cosmano expended with regard to the Waterside Drive Property, he did not live there. In his January 20, 2010 loan application to refinance the property situated at 2202 W Lawrence Lane, Mount Prospect IL 60056 (incidentally the address listed on Mr. Cosmano's Chapter 13 bankruptcy petition, see ECF No. 1, at 2), Mr. Cosmano averred (under penalty of perjury) that the Mt. Prospect property was his primary residence. (Doc. 69-5) at pp. 14-16.

**Response**: Mr. Cosmano objects to subparagraph 5(d) because the United States has not laid a proper evidentiary foundation for the loan application and because the document constitutes hearsay unless properly admitted. Mr. Cosmano further objects because the United States relies on documents attached to an attorney declaration rather than testimony from a witness with personal knowledge. Without waiving these objections, Mr. Cosmano denies that he lived a lavish lifestyle or that he spent money on the Waterside Drive Property rather than paying tax liabilities. Mr. Cosmano further denies that the record cited by the United States establishes the improper inference asserted by the United States. See ECF No. 79, Response to ¶ 5(d); ECF No. 82, Response to ¶ 5(d); ECF No. 79-1, Affidavit of James Cosmano.

> **e.** Notably, Mr. Cosmano represented in his January 20, 2010 loan application that he had a monthly income of $20,833.00 and a Chase Bank checking account with a balance of $200,000.00. (Doc. 69-5) at p. 15. At the time, Mr. Cosmano further owned a third parcel of real property – which he described as a "rental property that I own" – situated at 2500 Windsor Mall, Unit 3F, Park Ridge IL 60068. Id. at p. 20. Third-party bank records indicate that Mr. Cosmano was billed $3,000.00 per month with respect to a "Chase Home Finance Pre-Authorized Instant Deduction (P.A.I.D.) Mortgage Payment Program" for this Mt. Prospect address. Id. at p. 17.

**Response**: Mr. Cosmano objects to subparagraph 5(e) because the United States has not laid a proper foundation for the loan application, third-party bank records, or related documents, and because those materials constitute hearsay unless properly admitted. Mr. Cosmano further objects because this subparagraph does not establish a material fact supporting summary judgment and relies on records presented through an attorney declaration rather than a witness with personal knowledge. Without waiving these objections, Mr. Cosmano denies that he lived a lavish lifestyle or that he spent money on "pricey pursuits" rather than paying tax liabilities. Mr. Cosmano admits only that he represented during the Section 341 meeting that the mortgage on the Waterside Drive Property was approximately $5,600.00 and states that he borrowed money from friends and family to pay bills. Mr. Cosmano denies all remaining factual allegations and

inferences in subparagraph 5(e). See Doc. 69-4 at 6:1-8; ECF No. 79, Response to ¶ 5(e); ECF No. 82, Response to ¶ 5(e); ECF No. 79-1, Affidavit of James Cosmano.

**6.** Between at least 2007 and August 2021, Mr. Cosmano – despite being a licensed attorney – employed a standard practice of destroying documents in his possession after reviewing them. (Doc. 69-6) at p. 10 (AP No. 59-4). Mr. Cosmano thus represented that he had no documents responsive to the government's document requests to him in his prior dischargeability adversary proceeding, including requests for records created between 2007 and 2021 such as (1) federal or state tax returns and associated schedules of Mr. Cosmano; (2) correspondence between Mr. Cosmano and the IRS concerning his 2007-2010 income tax liabilities; (3) financial statements, checks, and other bookkeeping documents concerning his deposit accounts and credit cards; (4) documents relating to purchases, sales, or refinancing of real property, including any loan applications, rents, and mortgages; (5) documents relating to income, loans, or gifts in excess of $1,000.00 received by Mr. Cosmano; (6) documents concerning stocks, bonds, or other securities owned by Mr. Cosmano; and (7) documents pertaining to trips and vacations taken by Mr. Cosmano. (Doc. 69-7) (AP No. 59-5) (Response Nos. 1-3, 5, 8-11, 14-15, 17, and 20).

**Response**: Mr. Cosmano admits that he stated he had no documents responsive to the United States' requests for production as set forth in his responses to the United States' First Set of Requests for Production in the prior adversary proceeding. Mr. Cosmano denies the United States' characterization and implication that not having responsive documents is evidence of willful evasion, concealment, spoliation, or wrongdoing. See ECF No. 79, Response to ¶ 6; ECF No. 82, Response to ¶ 6; ECF No. 69-7.

**7.** On January 12, 2018, the United States District Court for the Northern District of Illinois entered default judgment against Mr. Cosmano for unpaid income taxes, penalties, and interest for his 2007 through 2010 tax years in the total amount of $6,051,979.50 as of January 9, 2018, in the matter of United States v. Cosmano, Case No. 1:17-cv-05721 (N.D. Ill.). (Doc. 69-8). An abstract of judgment was recorded with the Cook County Recorder on September 10, 2018 as Doc. # 1825316059, giving the United States a judgment lien upon Mr. Cosmano's real property.

**Response**: Mr. Cosmano objects to this paragraph because the United States has not laid a proper evidentiary foundation for the judgment, abstract of judgment, or recorder documents, and because the documents must be properly authenticated. Without waiving these objections, Mr. Cosmano admits that on January 12, 2018, the United States District Court for the Northern District of Illinois entered a judgment against him for unpaid income taxes, penalties, and interest for tax years 2007 through 2010 in the amount of $6,051,979.50 as of January 9, 2018. Mr. Cosmano states that the judgment was entered by default and denies that the default

judgment has preclusive effect on the issue of dischargeability or on any alleged willful attempt to evade or defeat tax. Mr. Cosmano denies all remaining allegations and legal conclusions in paragraph 7. See ECF No. 79, Response to ¶ 7; ECF No. 82, Response to ¶ 7.

## III. Mr. Cosmano Erects a False Wall in the Waterside Drive Property to Conceal its True Value

**8.** Mr. Cosmano acquired the Waterside Drive Property in 2007 for more than $944,558. (Doc. 69-9) at ¶ 13 (AP DC No. 62-1). At the time of Mr. Cosmano's acquisition of that property, it was listed as a 2,100 square foot, 3-bedroom, 3-bathroom unit. Id. at ¶ 13 and Exhibits A and B attached thereto (floorplan documents).

**Response**: Mr. Cosmano objects to this paragraph because the United States relies on the Declaration of Ginger Menne, a witness who was not timely disclosed in discovery and whom Mr. Cosmano did not have a fair opportunity to depose before discovery closed. Mr. Cosmano further objects because the declaration does not establish that Ms. Menne had personal knowledge of the facts surrounding the 2007 acquisition or the condition, configuration, sale, or listing of the Waterside Drive Property at that time. Without waiving these objections, Mr. Cosmano denies the allegations in paragraph 8 to the extent the United States asserts that the property was sold to him as a three-bedroom unit or that admissible evidence establishes that fact. Mr. Cosmano states that he purchased what he believed to be a one-bedroom condominium unit. See ECF No. 79, Response to ¶ 8; ECF No. 82, Response to ¶ 8; ECF No. 79-1, Affidavit of James Cosmano.

**9.** At some point prior to March 21, 2019, Mr. Cosmano caused a wall to be erected in the Waterside Drive Property (the "False Wall"). (Doc. 69-10) at 31:6-9 (AP No. 59-6); (Doc. 69-11) Response No. 8 (AP No. 59-7). The False Wall concealed a portion of the square footage of the Waterside Drive Property. (Doc. 69-9), at ¶ 11; (Doc. 69-10), at 31:10-14.

**Response**: Mr. Cosmano objects to this paragraph because the United States relies on deposition questions and requests for admission to which Mr. Cosmano asserted his Fifth Amendment rights. Invocation of the Fifth Amendment does not automatically admit the truth of the United States' questions or requests. Mr. Cosmano further objects because the United States relies on the Declaration of Ginger Menne, a late-disclosed witness, and because the declaration does not establish that Mr. Cosmano caused any wall to be erected. Without waiving these objections, Mr. Cosmano denies that he caused a false wall to be erected for the purpose alleged by the United States and denies that the record establishes that he concealed square footage of the Waterside

Drive Property. See Doc. 69-10 at 31:6-14; Doc. 69-11, Response No. 8; ECF No. 79, Response to ¶ 9; ECF No. 82, Response to ¶ 9; ECF No. 79-1, Affidavit of James Cosmano.

**10.** Mr. Cosmano caused the False Wall to be erected for the specific purpose of causing it to appear smaller than it was. (Doc. 69-10), at 31:15-24; 32:1. In particular, Mr. Cosmano caused the False Wall to be constructed to cause appraisals of the Waterside Drive Property to reflect a value lower than its true value. (Doc. 69-11), Response No. 9.

**Response**: Mr. Cosmano objects to this paragraph because the United States relies entirely or substantially on deposition questions and requests for admission to which Mr. Cosmano asserted his Fifth Amendment rights. Mr. Cosmano's invocation of constitutional rights is not a deemed admission and does not establish the purpose, intent, or alleged conduct asserted by the United States. Without waiving these objections, Mr. Cosmano denies that he caused a false wall to be erected, denies that he did so to make the property appear smaller, and denies that he did so to cause any appraisal to reflect a value lower than the property's true value. See Doc. 69-10 at 31:15-24, 32:1; Doc. 69-11, Response No. 9; ECF No. 79, Response to ¶ 10; ECF No. 82, Response to ¶ 10; ECF No. 79-1, Affidavit of James Cosmano.

**11.** On or about March 21, 2019, Mr. Cosmano procured an appraisal of the Waterside Drive Property by Michael Kuehn (the "Kuehn Appraisal"). (Doc. 69-12) (AP No. 48-5). The Kuehn Appraisal stated that the Waterside Drive Property had one bedroom, "1.1" bathrooms, and a "Gross Living Area" of 1,135 square feet, and it valued the property at $505,000.00. Id. at pp. 2-3. The Kuehn Appraisal did not include a floorplan for the Waterside Drive Property. Id.

**Response**: Mr. Cosmano objects to this paragraph to the extent the United States relies on Michael Kuehn as a late-disclosed witness and to the extent the appraisal is offered without proper foundation or authentication. Without waiving these objections, Mr. Cosmano admits that an appraisal of the Waterside Drive Property was obtained from Michael Kuehn on or about March 21, 2019, and that the Kuehn Appraisal stated the property had one bedroom, "1.1" bathrooms, a gross living area of 1,135 square feet, and a value of $505,000.00. Mr. Cosmano admits that the Kuehn Appraisal did not include a floor plan. Mr. Cosmano denies any implication that the appraisal was false, knowingly inaccurate, or procured for an improper purpose. See Doc. 69-12; ECF No. 79, Response to ¶ 11; ECF No. 82, Response to ¶ 11; ECF No. 79-1, Affidavit of James Cosmano.

**12.** The Kuehn Appraisal was predicated on photographs of the Waterside Drive Property provided to Mr. Kuehn by Mr. Cosmano, as well as upon Mr. Cosmano's representation that the property was a "1 bedroom, 1.1 bathroom, 1,130 square foot unit." (Doc. 69-13) at ¶¶ 6-8 (AP No. 48-6); (Doc. 69-14) (AP No. 59-8). Because Mr. Cosmano had engaged Mr. Kuehn only to perform a drive-by market appraisal, Mr. Kuehn never physically inspected the interior of the Waterside Drive Property. (Doc. 69-13), at ¶¶ 6-8; (Doc. 69-10), at 30:1-12.

**Response**: Mr. Cosmano objects to this paragraph because the United States relies on the Declaration of Michael Kuehn and the Declaration of Mavreen Dunlavy, both of whom were late-disclosed witnesses in the prior adversary proceeding. Mr. Cosmano further objects because the United States has not laid an adequate foundation for the email chain and appraisal-related documents referenced in the declarations. Without waiving these objections, Mr. Cosmano admits only that the Kuehn Appraisal was a drive-by market appraisal and that Mr. Kuehn did not physically inspect the interior of the Waterside Drive Property. Mr. Cosmano denies any implication that he knowingly provided false information, concealed information, or procured an inaccurate appraisal. See Doc. 69-13 at ¶¶ 6-8; Doc. 69-14; Doc. 69-10 at 30:1-12; ECF No. 79, Response to ¶ 12; ECF No. 82, Response to ¶ 12; ECF No. 79-1, Affidavit of James Cosmano.

**13.** Mr. Cosmano never disclosed to Mr. Kuehn that he purchased the Waterside Drive Property as a 3-bedroom, 3-bathroom condominium unit spanning approximately 2,100 square feet in 2007. (Doc. 69-13), at ¶ 9. Nor did Mr. Cosmano ever disclose to Mr. Kuehn that he had made any alterations to the Waterside Drive Property's size, including by erecting or demolishing any walls in the unit. Id. See also (Doc. 69-10), at 32:7-15.

**Response**: Mr. Cosmano objects to this paragraph because the United States relies on the Declaration of Michael Kuehn, a late-disclosed witness, and on deposition questions to which Mr. Cosmano asserted his Fifth Amendment rights. Mr. Cosmano's invocation of constitutional rights is not an admission of the United States' allegations. Without waiving these objections, Mr. Cosmano denies that he purchased the Waterside Drive Property as a three-bedroom, three-bathroom unit spanning approximately 2,100 square feet, denies that he made alterations to the size of the property by erecting or demolishing walls, and denies that he failed to disclose facts that he knew to be true. Mr. Cosmano states that he purchased what he believed to be a one-bedroom condominium unit. See Doc. 69-10 at 32:7-15; ECF No. 79, Response to ¶ 13; ECF No. 82, Response to ¶ 13; ECF No. 79-1, Affidavit of James Cosmano.

**14.** Mr. Cosmano never told Mr. Kuehn that the Waterside Drive Property was larger than 1,135 square feet, nor did he disclose to Mr. Kuehn that the Waterside Drive Property was

actually 2,100 square feet. (Doc. 69-10), at 32:16-23; (Doc. 69-11), Response No. 10; (Doc. 69-13) at ¶ 9. Mr. Cosmano lied to Mr. Kuehn about the square footage of the Waterside Drive Property. (Doc. 69-10), at 32:24-33:3.

**Response**: Mr. Cosmano objects to this paragraph because the United States relies on deposition questions and requests for admission to which Mr. Cosmano asserted his Fifth Amendment rights, and on the Declaration of Michael Kuehn, a late-disclosed witness. Invocation of the Fifth Amendment does not establish that the United States' assertions are true. Without waiving these objections, Mr. Cosmano denies that he lied to Mr. Kuehn about the square footage of the Waterside Drive Property, denies that he knew the property was 2,100 square feet, and denies that he knowingly failed to disclose that the property was larger than 1,135 square feet. Mr. Cosmano states that he purchased and occupied the unit as what he believed to be a one-bedroom condominium. See Doc. 69-10 at 32:16-33:3; Doc. 69-11, Response No. 10; ECF No. 79, Response to ¶ 14; ECF No. 82, Response to ¶ 14; ECF No. 79-1, Affidavit of James Cosmano.

**15.** Mr. Cosmano also never told Mr. Kuehn that the Waterside Drive Property had more than one bedroom. (Doc. 69-10), at 33:7-10. In other words, he lied to Mr. Kuehn about the number of bedrooms the Waterside Drive Property. Id. at 33:11-14.

**Response**: Mr. Cosmano objects to this paragraph because the United States relies on deposition questions to which Mr. Cosmano asserted his Fifth Amendment rights and then improperly treats those invocations as admissions. Mr. Cosmano further objects to the extent the United States relies on Michael Kuehn as a late-disclosed witness. Without waiving these objections, Mr. Cosmano denies that he lied to Mr. Kuehn about the number of bedrooms in the Waterside Drive Property, denies that he knowingly withheld contrary information, and denies that the cited record establishes the United States' assertion. Mr. Cosmano states that he purchased and occupied the unit as what he believed to be a one-bedroom condominium. See Doc. 69-10 at 33:7-14; ECF No. 79, Response to ¶ 15; ECF No. 82, Response to ¶ 15; ECF No. 79-1, Affidavit of James Cosmano.

**16.** According to Mr. Kuehn, his $505,000.00 valuation of the Waterside Drive Property set forth in the Kuehn Appraisal "would have been materially different" and he "might have even declined to perform the appraisal since [he] would have serious doubts about Mr. Cosmano's intentions in obtaining the appraisal" if he had known that the Waterside Drive Property was substantially larger than 1,135 square feet. (Doc. 69-13), at ¶ 10. Mr. Kuehn believes that if he had known that the Waterside Drive Property was 2,100 square feet, "it is very

likely" that he would have valued the property at greater than $505,000.00 as of the date of the Kuehn Appraisal. Id.

**Response**: Mr. Cosmano objects to this paragraph because the United States relies on the Declaration of Michael Kuehn, a late-disclosed witness whom Mr. Cosmano did not have a fair opportunity to depose before discovery closed. Mr. Cosmano further objects because the paragraph is speculative, states what Mr. Kuehn "would have" or "might have" done under assumed facts, and does not establish Mr. Cosmano's knowledge, intent, or conduct. Without waiving these objections, Mr. Cosmano denies the paragraph to the extent it implies that he knowingly provided false information, knowingly concealed information, procured an inaccurate appraisal, or intended to obtain an appraisal below true value. See Doc. 69-13 at ¶ 10; ECF No. 79, Response to ¶ 16; ECF No. 82, Response to ¶ 16; ECF No. 79-1, Affidavit of James Cosmano.

**17.** Mr. Cosmano knew that the Kuehn Appraisal was based on inaccurate information. (Doc. 69-10), at 33:15-18. He also knew that the Kuehn Appraisal's valuation of the Waterside Drive Property at $505,000.00 was inaccurate. Id. at 33:19-22.

**Response**: Mr. Cosmano objects to this paragraph because the United States relies on deposition questions to which Mr. Cosmano asserted his Fifth Amendment rights. Such invocation does not establish that the facts contained in the questions are true. Without waiving these objections, Mr. Cosmano denies that he knew the Kuehn Appraisal was based on inaccurate information and denies that he knew the $505,000.00 valuation was inaccurate. Mr. Cosmano states that the cited deposition testimony does not contain affirmative admissions by him of the facts asserted. See Doc. 69-10 at 33:15-22; ECF No. 79, Response to ¶ 17; ECF No. 82, Response to ¶ 17; ECF No. 79-1, Affidavit of James Cosmano.

**18.** Mr. Cosmano wanted the Kuehn Appraisal to value the Waterside Drive Property as being worth less than it was actually worth on March 21, 2019, and he lied to Mr. Kuehn to cause the Kuehn Appraisal to be inaccurate. (Doc. 69-10), at 33:23-34:6.

**Response**: Mr. Cosmano objects to this paragraph because it is based on deposition questions to which Mr. Cosmano asserted his Fifth Amendment rights and because the United States improperly seeks to transform those invocations into established facts. Without waiving these objections, Mr. Cosmano denies that he wanted the Kuehn Appraisal to value the Waterside Drive Property below its actual value, denies that he lied to Mr. Kuehn, and denies that he caused the Kuehn Appraisal to be inaccurate. The cited record does not contain an affirmative admission

by Mr. Cosmano of the allegations asserted in this paragraph. See Doc. 69-10 at 33:23-34:6; ECF No. 79, Response to ¶ 18; ECF No. 82, Response to ¶ 18; ECF No. 79-1, Affidavit of James Cosmano.

**19.** Mr. Cosmano wanted to procure the Kuehn Appraisal based on false information about the property for "tax purposes," (Doc. 69-10), at 34:7-9, and when Mr. Cosmano engaged Mr. Kuehn to develop the Kuehn Appraisal, Mr. Cosmano specifically told Mr. Kuehn that he wanted the appraisal "for tax purposes[,]" (Doc. 69-13), at ¶ 4; see also (Doc. 69-14) (email chain attached as Exhibit 1 thereto indicating that Mr. Cosmano told this to Ms. Dunlavy in connection with procuring the Kuehn Appraisal).

**Response**: Mr. Cosmano objects to this paragraph because the United States relies in part on deposition questions to which Mr. Cosmano asserted his Fifth Amendment rights, and in part on declarations from Michael Kuehn and Mavreen Dunlavy, both late-disclosed witnesses. Mr. Cosmano further objects because the email chain and appraisal communications have not been properly authenticated and the United States has not laid an adequate foundation for their admissibility. Without waiving these objections, Mr. Cosmano admits only that the Kuehn Appraisal was sought for tax-related purposes. Mr. Cosmano denies that he sought the appraisal based on false information, denies that he knowingly provided false information, and denies that the record establishes any improper purpose. See Doc. 69-10 at 34:7-9; Doc. 69-13 at ¶ 4; Doc. 69-14; ECF No. 79, Response to ¶ 19; ECF No. 82, Response to ¶ 19; ECF No. 79-1, Affidavit of James Cosmano.

**20.** Mr. Cosmano wanted the Kuehn Appraisal to be for less than what the Waterside Drive Property was actually worth as of March 21, 2019, so that Mr. Cosmano could avoid it becoming a source for paying his federal income taxes. (Doc. 69-10), at 34:10-15.

**Response**: Mr. Cosmano objects to this paragraph because the United States relies on deposition questions to which Mr. Cosmano asserted his Fifth Amendment rights and improperly treats the invocation as proof of intent. Without waiving these objections, Mr. Cosmano denies that he wanted the Kuehn Appraisal to be less than the property's actual value, denies that he sought to prevent the property from becoming a source for payment of federal income taxes, and denies that the cited record establishes any willful attempt to evade or defeat tax. See Doc. 69-10 at 34:10-15; ECF No. 79, Response to ¶ 20; ECF No. 82, Response to ¶ 20; ECF No. 79-1, Affidavit of James Cosmano.

**21.** Mr. Cosmano procured the Kuehn Appraisal in anticipation of filing a Chapter 7 bankruptcy petition. (Doc. 69-10), at 34:23-35:2. Mr. Cosmano supplied a copy of the Kuehn Appraisal to his then-bankruptcy attorney, Justin Storer, in anticipation of filing that Chapter 7 bankruptcy petition. (Doc. 69-10), at 35:3-6.

**Response**: Mr. Cosmano objects to this paragraph because the United States relies on deposition questions to which Mr. Cosmano asserted his Fifth Amendment rights. Without waiving these objections, Mr. Cosmano admits that the Kuehn Appraisal was obtained before the filing of his Chapter 7 bankruptcy petition and that appraisals may be used in connection with bankruptcy schedules. Mr. Cosmano denies any implication that obtaining an appraisal before filing bankruptcy was improper, false, or evidence of an intent to evade taxes. Mr. Cosmano further denies that the cited record establishes any improper purpose. See Doc. 69-10 at 34:23-35:6; ECF No. 79, Response to ¶ 21; ECF No. 82, Response to ¶ 21; ECF No. 79-1, Affidavit of James Cosmano.

## IV. <u>Mr. Cosmano Commences a Chapter 7 Bankruptcy Case and Knowingly Peddles Skewed Valuations of the Waterside Drive Property</u>

**22.** On May 8, 2019, less than seven weeks after procuring the Kuehn Appraisal, Mr. Cosmano filed a petition to commence a Chapter 7 bankruptcy case in this Court, In re Cosmano, Case No. 19-13287 (Bankr. N.D. Ill.). (Doc. 69-15) (AP No. 59-9). Mr. Cosmano signed the bankruptcy petition under penalty of perjury. Id. at p. 6. The petition was also signed by Justin Storer as Mr. Cosmano's attorney. Id. at p. 7.

**Response**: Mr. Cosmano objects to the United States' characterization in the section heading that he "knowingly peddle[d] skewed valuations." The heading is argumentative and not a statement of material fact. Without waiving that objection, Mr. Cosmano admits that he filed a Chapter 7 bankruptcy petition on May 8, 2019, in Case No. 19-13287, admits that he signed the petition under penalty of perjury, and admits that Justin Storer signed the petition as his attorney. Mr. Cosmano denies any implication that the timing of the petition, which was filed after the Kuehn Appraisal, establishes wrongdoing or willful evasion. See Doc. 69-15; ECF No. 79, Response to ¶ 22; ECF No. 82, Response to ¶ 22.

**23.** Mr. Cosmano listed the Waterside Drive Property on "Schedule A/B: Property" to his bankruptcy petition, represented that the "[c]urrent value of the entire property" was $505,000.00, and included the following notation: "Value per 3/19 appraisal[.]" (Doc. 69-15), at p. 10. The $505,000.00 valuation of the Waterside Drive Property represented on Mr. Cosmano's schedules was based on the Kuehn Appraisal. (Doc. 69-10), at 35:7-11.

**Response**: Mr. Cosmano admits that the Waterside Drive Property was listed on Schedule A/B in the Chapter 7 case with a stated value of $505,000.00 and the notation "Value per 3/19 appraisal." Mr. Cosmano admits that the scheduled value was based on the Kuehn Appraisal. Mr. Cosmano denies any implication that the valuation was knowingly false, intentionally inaccurate, or listed to evade taxes. See Doc. 69-15 at p. 10; Doc. 69-10 at 35:7-11; ECF No. 79, Response to ¶ 23; ECF No. 82, Response to ¶ 23; ECF No. 79-1, Affidavit of James Cosmano.

**24.** Mr. Cosmano knew that the $505,000.00 figure from the Kuehn Appraisal was inaccurate when he caused that figure to appear on his bankruptcy schedules. (Doc. 69-10), at 35:12-16. He caused that inaccurate $505,000.00 valuation from the Kuehn Appraisal to appear on his bankruptcy schedules to avoid paying his federal income taxes. Id. at 35:17-21.

**Response**: Mr. Cosmano objects to this paragraph because the United States relies on deposition questions to which Mr. Cosmano asserted his Fifth Amendment rights and improperly treats those invocations as admissions of knowledge and intent. Without waiving these objections, Mr. Cosmano denies that he knew the $505,000.00 figure was inaccurate when it appeared on his bankruptcy schedules, denies that he caused an inaccurate valuation to appear on his schedules, and denies that he did so to avoid paying federal income taxes. The cited record does not contain an affirmative admission by Mr. Cosmano of the allegations in this paragraph. See Doc. 69-10 at 35:12-21; ECF No. 79, Response to ¶ 24; ECF No. 82, Response to ¶ 24; ECF No. 79-1, Affidavit of James Cosmano.

**25.** On June 11, 2019, Mr. Cosmano attended a Section 341 meeting of the creditors in his bankruptcy case, which meeting was conducted by the Chapter 7 Trustee, Steven Radtke. See generally (Doc. 69-4) (transcript of Section 341 meeting). Mr. Cosmano was joined at the Section 341 meeting by his then-bankruptcy attorney, Mr. Storer. Id. at 2:1-6.

**Response**: Mr. Cosmano admits that he attended the Section 341 meeting of creditors on June 11, 2019, that the meeting was conducted by Chapter 7 Trustee Steven Radtke, and that Mr. Storer appeared with him as his then bankruptcy attorney. Mr. Cosmano denies any implication that his attendance at the Section 341 meeting or his counsel's attendance establishes any improper conduct. See Doc. 69-4 at 2:1-6; ECF No. 79, Response to ¶ 25; ECF No. 82, Response to ¶ 25.

**26.** During the Section 341 meeting, Mr. Cosmano gave testimony under penalty of perjury in response to questioning by the Trustee. (Doc. 69-4), at 2:8-9.

**Response**: Mr. Cosmano admits that he gave testimony under penalty of perjury at the Section 341 meeting in response to questioning by the Trustee. Mr. Cosmano denies any implication that the testimony identified in this paragraph was false or improper. See Doc. 69-4 at 2:8-9; ECF No. 79, Response to ¶ 26; ECF No. 82, Response to ¶ 26.

**27.** As part of his sworn testimony during the Section 341 meeting, Mr. Cosmano represented to the Trustee that the signature appearing on Mr. Cosmano's Chapter 7 bankruptcy petition was his; that Mr. Cosmano signed a declaration regarding his schedules and statement of financial affairs; that Mr. Cosmano reviewed and had understood everything in those papers before they were filed with this Court; and that everything therein was true and correct. (Doc. 69-4), at 2:18-3:5. Mr. Cosmano also represented to the Trustee that he had listed all of his assets and debts on his bankruptcy schedules and statement of financial affairs, and that there was nothing as of the date of that Section 341 meeting that Mr. Cosmano wanted to change in those papers. Id. at 3:6-11.

**Response**: Mr. Cosmano admits that he gave the testimony reflected in the cited portions of the Section 341 meeting transcript. Mr. Cosmano denies any implication that the testimony was false, that he knowingly omitted assets, or that he acted with intent to evade or defeat taxes. Mr. Cosmano states that he answered based on his understanding and belief at the time. See Doc. 69-4 at 2:18-3:11; ECF No. 79, Response to ¶ 27; ECF No. 82, Response to ¶ 27; ECF No. 79-1, Affidavit of James Cosmano.

**28.** During the Section 341 meeting, the Trustee inquired about Mr. Cosmano's valuation of the Waterside Drive Property on his bankruptcy schedules as being worth $505,000.00. (Doc. 69-4), at 8:10-13. In response to that inquiry, Mr. Cosmano stated that "values have gone down" and that "there is a lot of units [sic] available for sale." Id. at 8:14-15. Mr. Storer then stated that he (Mr. Storer) "could forward the appraisal" to the Trustee. Id. at 8:16-17.

**Response**: Mr. Cosmano admits that the Trustee inquired about the valuation of the Waterside Drive Property and admits that the cited transcript reflects the quoted statements. Mr. Cosmano denies any implication that his statement was false, misleading, or made with intent to evade or defeat taxes. Mr. Cosmano states that the valuation was based on the Kuehn Appraisal and his understanding of the property and market conditions at the time. See Doc. 69-4 at 8:10-17; Doc. 69-12; ECF No. 79, Response to ¶ 28; ECF No. 82, Response to ¶ 28; ECF No. 79-1, Affidavit of James Cosmano.

**29.** Mr. Cosmano knew that the $505,000.00 valuation of the Waterside Drive Property discussed with the Trustee during the Section 341 meeting was premised on the Kuehn Appraisal. (Doc. 69-10), at 43:17-21. Mr. Cosmano also knew that the $505,000.00 valuation of the Waterside Drive Property represented to the Trustee was inaccurate, and he knew that the Waterside Drive Property was worth more than $505,000.00 when he made that representation of value to the Trustee. Id. at 44:10-18.

**Response**: Mr. Cosmano admits that the $505,000.00 valuation discussed at the Section 341 meeting was based on the Kuehn Appraisal. Mr. Cosmano objects to the remaining allegations because the United States relies on deposition questions to which Mr. Cosmano asserted his Fifth Amendment rights. Without waiving these objections, Mr. Cosmano denies that he knew the $505,000.00 valuation was inaccurate, denies that he knew the property was worth more than $505,000.00 at the time of the Section 341 meeting, and denies that the cited record establishes such knowledge. See Doc. 69-10 at 43:17-21, 44:10-18; Doc. 69-12; ECF No. 79, Response to ¶ 29; ECF No. 82, Response to ¶ 29; ECF No. 79-1, Affidavit of James Cosmano.

**30.** Mr. Cosmano lied to the Trustee during the Section 341 meeting about the value of the Waterside Drive Property. (Doc. 69-10), at 44:19-22. Mr. Cosmano lied to the Trustee during that Section 341 meeting to avoid paying his federal income taxes. Id. at 44:23-45:2. The income taxes were 90.3% of the debts scheduled in the Chapter 7 case, and the IRS was the only creditor to file a claim in the bankruptcy. (Doc. 69-15), at pp. 22-27.

**Response**: Mr. Cosmano objects to this paragraph because the United States relies on deposition questions to which Mr. Cosmano asserted his Fifth Amendment rights to assert that he "lied" and acted with an improper tax-avoidance purpose. Without waiving these objections, Mr. Cosmano denies that he lied to the Trustee about the value of the Waterside Drive Property and denies that he made any statement to the Trustee to avoid paying federal income taxes. Mr. Cosmano admits only that his Chapter 7 schedules and claims register speak for themselves regarding listed debts and filed claims. Mr. Cosmano denies the remaining allegations and inferences in paragraph 30. See Doc. 69-10 at 44:19-45:2; Doc. 69-15 at pp. 22-27; ECF No. 79, Response to ¶ 30; ECF No. 82, Response to ¶ 30; ECF No. 79-1, Affidavit of James Cosmano.

**31.** On August 13, 2019, the Court entered an order of discharge in Mr. Cosmano's Chapter 7 bankruptcy case. (Doc. 69-16) (AP No. 94-19). The order provided various information about the discharge under the heading "Explanation of Bankruptcy Discharge in a Chapter 7 Case." Id. Under a subheading styled "Most debts are discharged[,]" the order provided that "[m]ost debts are covered by the discharge, but not all." Id. The order further specified, under a different subheading labeled "Some debts are not discharged[,]" that

"[e]xamples of debts that are not discharged" include "debts for most taxes" and "debts that the bankruptcy court has decided or will decide are not discharged in this bankruptcy case[.]" Id.

**Response**: Mr. Cosmano admits that the Court entered an order of discharge in his Chapter 7 case on August 13, 2019, and admits that the discharge order contains the language quoted by the United States. Mr. Cosmano denies any implication that the discharge order itself determined that the 2007 through 2010 income tax liabilities were nondischargeable. Mr. Cosmano states that Judge Goldgar later ruled that the tax debt was currently discharged unless and until a court determined otherwise, and neither party appealed that ruling. See Doc. 69-16; ECF No. 71-19; ECF No. 72; ECF No. 78; ECF No. 79, Response to ¶ 31; ECF No. 82, Response to ¶ 31.

**32.** On or about May 22, 2020, Mr. Cosmano obtained a second appraisal of the Waterside Drive Property, this time by Kevin Vaught (the "Vaught Appraisal"). (Doc. 69-17), May 22, 2020 Appraisal (AP No. 48-7). The Vaught Appraisal – just as the Kuehn Appraisal – stated that the Waterside Drive Property had one bedroom and spanned 1,135 square feet. Id. at p. 3. The Vaught Appraisal valued the Waterside Drive Property at $497,500. Id. at p. 1. Like the Kuehn Appraisal, the Vaught Appraisal did not include a floorplan for the Waterside Drive Property.

**Response**: Mr. Cosmano objects to this paragraph to the extent the United States relies on Kevin Vaught as a late-disclosed witness and to the extent the Vaught Appraisal is offered without proper foundation or authentication. Without waiving these objections, Mr. Cosmano admits that he obtained an appraisal by Kevin Vaught on or about May 22, 2020, and admits that the Vaught Appraisal stated that the Waterside Drive Property had one bedroom, spanned 1,135 square feet, valued the property at $497,500.00, and did not include a floor plan. Mr. Cosmano denies any implication that the Vaught Appraisal was false, knowingly inaccurate, or procured for an improper purpose. See Doc. 69-17; ECF No. 79, Response to ¶ 32; ECF No. 82, Response to ¶ 32; ECF No. 79-1, Affidavit of James Cosmano.

**33.** Throughout the pendency of his Chapter 7 bankruptcy case, both before and after the entry of the Court's order of discharge, Mr. Cosmano referenced or explicitly proffered the Kuehn Appraisal and/or the Vaught Appraisal in filings in this Court seeking to avoid the judicial lien (in respect to the tax judgment) encumbering the Waterside Drive Property stemming from the District Court's January 12, 2018 judgment described in paragraph 7, above. See BK No. 11, at pp. 3-6, (June 12, 2019 Notice of Motion to Avoid Lien), BK No. 19, at pp. 6-7 (July 17, 2019 Memorandum in Support of Motion to Avoid Lien), BK No. 56, at pp. 4-9 and BK No. 56-3 & 56-3a (March 1, 2021 Notice of Motion to Avoid Judicial Lien on 450 E. Waterside Drive, Unit 1301, Chicago, Illinois), BK No. 83, at pp. 4-8 and BK 83-1 and 83-2 (April 12, 2021 Reply to the United States' Response to Motions to Avoid Lien (Docket 55 & 56)). It appears that the Vaught Appraisal was procured specifically for the lien avoidance motion.

**Response**: Mr. Cosmano admits that filings in the Chapter 7 case referenced or attached the Kuehn Appraisal and/or Vaught Appraisal in connection with lien-avoidance issues. Mr. Cosmano denies the phrase "throughout the pendency" to the extent it overstates or mischaracterizes the filings. Mr. Cosmano denies any implication that his reliance on appraisals in lien-avoidance filings was improper, knowingly false, or evidence of willful evasion. Mr. Cosmano further denies the speculative statement that the Vaught Appraisal "appears" to have been procured specifically for a lien-avoidance motion, except to the extent the appraisal was used in connection with valuation issues in the bankruptcy case. See BK No. 11; BK No. 19; BK No. 56; BK No. 83; Doc. 69-12; Doc. 69-17; ECF No. 79, Response to ¶ 33; ECF No. 82, Response to ¶ 33; ECF No. 79-1, Affidavit of James Cosmano.

**34.** When Mr. Cosmano engaged Mr. Vaught to develop the Vaught Appraisal, Mr. Cosmano supplied Mr. Vaught with a copy of the Kuehn Appraisal and "emphatically urged" Mr. Vaught to adhere to the Kuehn Appraisal when developing his own. (Doc. 69-18), Declaration of Kevin Vaught, at ¶ 9 (AP. No. 48-8); (Doc. 69-10), at 49:11-20. Mr. Cosmano specifically asked Mr. Vaught if his appraisal of the Waterside Drive Property could be for $500,000 or less. (Doc. 69-18), at ¶ 9; (Doc. 69-10), at 49:21-24.

**Response**: Mr. Cosmano objects to this paragraph because the United States relies on the Declaration of Kevin Vaught, a late-disclosed witness whom Mr. Cosmano did not have a fair opportunity to depose before discovery closed, and on deposition questions to which Mr. Cosmano asserted his Fifth Amendment rights. Without waiving these objections, Mr. Cosmano denies that he "emphatically urged" Mr. Vaught to adhere to the Kuehn Appraisal for any improper purpose, denies that he asked Mr. Vaught to provide a false appraisal, and denies that he sought a valuation of $500,000.00 or less for any improper purpose. Mr. Cosmano states that asking an appraiser to consider prior valuation information or market conditions does not establish a false appraisal or willful tax evasion. See Doc. 69-18 at ¶ 9; Doc. 69-10 at 49:11-24; ECF No. 79, Response to ¶ 34; ECF No. 82, Response to ¶ 34; ECF No. 79-1, Affidavit of James Cosmano.

**35.** When Mr. Vaught listed for Mr. Cosmano the various items that would appear in the Vaught Appraisal and explained that a floorplan of the Waterside Drive Property would be included, Mr. Cosmano "promptly stopped" Mr. Vaught and instructed him not to include a floorplan in the Vaught Appraisal. (Doc. 69-18), at ¶ 10; (Doc. 69-10), at 50:1-5. According to

Mr. Vaught, Mr. Cosmano did not explain why he wanted the Vaught Appraisal to omit a floorplan but was "insistent that [Mr. Vaught] exclude it." (Doc. 69-18), at ¶ 10.

**Response**: Mr. Cosmano objects to this paragraph because the United States relies on the Declaration of Kevin Vaught, a late-disclosed witness, and deposition questions to which Mr. Cosmano asserted his Fifth Amendment rights. Mr. Cosmano further objects because he was denied a fair opportunity to test Mr. Vaught's statements through deposition before discovery closed. Without waiving these objections, Mr. Cosmano denies that he instructed Mr. Vaught not to include a floor plan for any improper purpose, denies that he acted to conceal the size of the Waterside Drive Property, and denies that the cited record establishes any willful attempt to evade or defeat tax. See Doc. 69-18 at ¶ 10; Doc. 69-10 at 50:1-5; ECF No. 79, Response to ¶ 35; ECF No. 82, Response to ¶ 35; ECF No. 79-1, Affidavit of James Cosmano.

**36.** Mr. Cosmano instructed Mr. Vaught to exclude a floorplan of the Waterside Drive Property from the Vaught Appraisal in order to maintain the disguise of the true size of the Waterside Drive Property. (Doc. 69-10), at 50:6-10.

**Response**: Mr. Cosmano objects to this paragraph because the United States relies on deposition questions to which Mr. Cosmano asserted his Fifth Amendment rights and improperly treats those invocations as admissions. Without waiving these objections, Mr. Cosmano denies that he instructed Mr. Vaught to exclude a floor plan in order to maintain any disguise of the true size of the Waterside Drive Property. Mr. Cosmano further denies that the cited record establishes any such intent, disguise, concealment, or willful attempt to evade or defeat tax. See Doc. 69-10 at 50:6-10; ECF No. 79, Response to ¶ 36; ECF No. 82, Response to ¶ 36; ECF No. 79-1, Affidavit of James Cosmano.

**37.** Mr. Cosmano never disclosed to Mr. Vaught that he purchased the Waterside Drive Property as a 3-bedroom, 3-bathroom condominium unit in 2007. (Doc. 69-18), at ¶ 12. Nor did Mr. Cosmano ever disclose to Mr. Vaught that he had made alterations to the Waterside Drive Property's size, such as by blocking off the property's master suite with a false wall or by demolishing an interior wall. Id. See also (Doc. 69-10), at 50:16-24.

**Response**: Mr. Cosmano objects to this paragraph because the United States relies on the Declaration of Kevin Vaught, a late-disclosed witness whom Mr. Cosmano did not have a fair opportunity to depose before discovery closed, and on deposition questions to which Mr. Cosmano asserted his Fifth Amendment rights. Without waiving these objections, Mr. Cosmano denies that he purchased the Waterside Drive Property as a three-bedroom, three-bathroom

condominium unit, denies that he altered the property's size by blocking off a master suite with a false wall or demolishing an interior wall, and denies that he knowingly failed to disclose any such facts to Mr. Vaught. Mr. Cosmano states that he purchased and occupied the unit as what he believed to be a one-bedroom condominium. See Doc. 69-18 at ¶ 12; Doc. 69-10 at 50:16-24; ECF No. 79, Response to ¶ 37; ECF No. 82, Response to ¶ 37; ECF No. 79-1, Affidavit of James Cosmano.

**38.** Mr. Cosmano never told Mr. Vaught that the Waterside Drive Property was larger than 1,135 square feet, nor did he disclose to Mr. Vaught that the Waterside Drive Property was actually 2,100 square feet. (Doc. 69-10), at 51:1-8; (Doc. 69-11), Response No. 11.

**Response**: Mr. Cosmano objects to this paragraph because the United States relies on deposition questions and requests for admission to which Mr. Cosmano asserted his Fifth Amendment rights. Invocation of constitutional rights is not a deemed admission. Without waiving these objections, Mr. Cosmano denies that he knowingly failed to disclose to Mr. Vaught that the Waterside Drive Property was larger than 1,135 square feet, denies that he knew the property was 2,100 square feet, and denies that the cited record establishes that he intentionally concealed the property's size. Mr. Cosmano states that he purchased and occupied the unit as what he believed to be a one-bedroom condominium. See Doc. 69-10 at 51:1-8; Doc. 69-11, Response No. 11; ECF No. 79, Response to ¶ 38; ECF No. 82, Response to ¶ 38; ECF No. 79-1, Affidavit of James Cosmano.

**39.** Mr. Cosmano also never told Mr. Vaught that the Waterside Drive Property has more than one bedroom. (Doc. 69-10), at 51:9-12.

Response: Mr. Cosmano objects to this paragraph because the United States relies on deposition questions to which Mr. Cosmano asserted his Fifth Amendment rights. Without waiving these objections, Mr. Cosmano denies that he knowingly failed to tell Mr. Vaught that the Waterside Drive Property had more than one bedroom, denies that he knew the property had more than one bedroom, and denies that the cited record establishes any misrepresentation, concealment, or willful attempt to evade or defeat tax. See Doc. 69-10 at 51:9-12; ECF No. 79, Response to ¶ 39; ECF No. 82, Response to ¶ 39; ECF No. 79-1, Affidavit of James Cosmano.

**40.** The Vaught Appraisal was predicated on the appearance of the Waterside Drive Property as "small" one-bedroom unit of roughly 1,135 square feet during Mr. Vaught's May 22,

2020 walkthrough of the unit. (Doc. 69-18), at ¶¶ 8, 11, and Exhibit A thereto (floorplan sketch). According to Mr. Vaught, the value of the Waterside Drive Property reflected in the Vaught Appraisal would have been "materially different" if Mr. Vaught had been aware at the time of his making of the appraisal that the Waterside Drive Property had more than one bedroom and was substantially larger than 1,135 square feet. Id. at ¶ 13. Specifically, Mr. Vaught believes he would have valued the Waterside Drive Property at greater than $497,500 as of the date of the appraisal. Id.

**Response**: Mr. Cosmano objects to this paragraph because the United States relies on the Declaration of Kevin Vaught, a late-disclosed witness whom Mr. Cosmano did not have a fair opportunity to depose before discovery closed. Mr. Cosmano further objects because Mr. Vaught's statements about what his valuation "would have" been under assumed facts are speculative and do not establish Mr. Cosmano's knowledge, intent, or conduct. Without waiving these objections, Mr. Cosmano admits only that the Vaught Appraisal valued the property at $497,500.00 and described it as a one-bedroom unit of approximately 1,135 square feet. Mr. Cosmano denies any implication that he knowingly caused the appraisal to be inaccurate, concealed information from Mr. Vaught, or acted with intent to evade or defeat taxes. See Doc. 69-18 at ¶¶ 8, 11, 13; Doc. 69-17; ECF No. 79, Response to ¶ 40; ECF No. 82, Response to ¶ 40; ECF No. 79-1, Affidavit of James Cosmano.

**41.** Mr. Cosmano knew that the Vaught Appraisal was based on inaccurate information. (Doc. 69-10), at 51:13-16. Mr. Cosmano also knew that the Vaught Appraisal's valuation of the Waterside Drive Property as being worth $497,500.00 was inaccurate. Id. at 51:17-20.

**Response**: Mr. Cosmano objects to this paragraph because the United States relies on deposition questions to which Mr. Cosmano asserted his Fifth Amendment rights and improperly treats those invocations as admissions. Without waiving these objections, Mr. Cosmano denies that he knew the Vaught Appraisal was based on inaccurate information, denies that he knew the $497,500.00 valuation was inaccurate, and denies that the cited record contains an affirmative admission by him of those allegations. See Doc. 69-10 at 51:13-20; ECF No. 79, Response to ¶ 41; ECF No. 82, Response to ¶ 41; ECF No. 79-1, Affidavit of James Cosmano.

**42.** Mr. Cosmano wanted the Vaught Appraisal to value the Waterside Drive Property as being worth less than it was actually worth on May 22, 2020, and Mr. Cosmano lied to Mr. Vaught to cause the Vaught Appraisal to be inaccurate. (Doc. 69-10), at 51:21-52:5.

**Response**: Mr. Cosmano objects to this paragraph because it is based on deposition questions to which Mr. Cosmano asserted his Fifth Amendment rights. The invocation of constitutional rights does not establish the United States' assertions regarding knowledge, intent, or alleged false statements. Without waiving these objections, Mr. Cosmano denies that he wanted the Vaught Appraisal to value the Waterside Drive Property below its actual value, denies that he lied to Mr. Vaught, and denies that he caused the Vaught Appraisal to be inaccurate. See Doc. 69-10 at 51:21-52:5; ECF No. 79, Response to ¶ 42; ECF No. 82, Response to ¶ 42; ECF No. 79-1, Affidavit of James Cosmano.

**43.** Mr. Cosmano wanted the Vaught Appraisal to value the Waterside Drive Property at less than what it was actually worth as of May 22, 2020, so that he could avoid paying his federal income taxes. (Doc. 69-10), at 52:6-10.

**Response**: Mr. Cosmano objects to this paragraph because the United States relies on deposition questions to which Mr. Cosmano asserted his Fifth Amendment rights and improperly treats those invocations as proof of intent. Without waiving these objections, Mr. Cosmano denies that he wanted the Vaught Appraisal to undervalue the Waterside Drive Property and denies that he sought any valuation for the purpose of avoiding payment of federal income taxes. Mr. Cosmano further denies that the cited record establishes any willful attempt to evade or defeat tax. See Doc. 69-10 at 52:6-10; ECF No. 79, Response to ¶ 43; ECF No. 82, Response to ¶ 43; ECF No. 79-1, Affidavit of James Cosmano.

**44.** Mr. Cosmano knew that the $505,000.00 figure from the Kuehn Appraisal and the $497,500.00 figure from the Vaught Appraisal appearing in, or as attachments to, the foregoing filings were inaccurate at the time he authorized those documents to be filed. (Doc. 69-10), at 36:4-24 (as to BK No. 11); 37:6-38:3 (as to BK No. 19); 52:11-53:13, 53:23-54:15 (as to BK No. 56); 55:7-56:3, 56:13-57:1 (as to BK No. 83).

**Response**: Mr. Cosmano objects to this paragraph because the United States relies on deposition questions to which Mr. Cosmano asserted his Fifth Amendment rights. Without waiving these objections, Mr. Cosmano denies that he knew the Kuehn Appraisal or Vaught Appraisal values were inaccurate when the identified filings were made, denies that he authorized any filing containing a knowingly inaccurate valuation, and denies that the cited record contains an affirmative admission establishing the United States' allegations. See Doc. 69-10 at 36:4-24, 37:6-38:3, 52:11-53:13, 53:23-54:15, 55:7-56:3, 56:13-57:1; ECF No. 79, Response to ¶ 44; ECF No. 82, Response to ¶ 44; ECF No. 79-1, Affidavit of James Cosmano.

**45.** Mr. Cosmano has never notified this Court that the $505,000.00 and $497,500.00 figures appearing in, or as attachments to, the foregoing filings were inaccurate. (Doc. 69-10), at 37:1-5 (as to BK No. 11); 38:4-8 (as to BK No. 19); 53:14-18, 54:16-20 (as to BK No. 56); 56:4-8, 57:2-6 (as to BK No. 83).

**Response**: Mr. Cosmano objects to this paragraph because the United States relies on deposition questions to which Mr. Cosmano asserted his Fifth Amendment rights and because the paragraph assumes the disputed premise that the appraisal values were inaccurate and known by Mr. Cosmano to be inaccurate. Without waiving these objections, Mr. Cosmano denies that he had any obligation to notify the Court that the appraisal values were inaccurate because he denies that he knew them to be inaccurate when used. Mr. Cosmano further denies any implication that the cited record establishes concealment, a false statement, or willful evasion. See Doc. 69-10 at 37:1-5, 38:4-8, 53:14-18, 54:16-20, 56:4-8, 57:2-6; ECF No. 79, Response to ¶ 45; ECF No. 82, Response to ¶ 45; ECF No. 79-1, Affidavit of James Cosmano.

**46.** Mr. Cosmano lied to this Court about the true value of the Waterside Drive Property when he authorized the foregoing documents to be filed with the Court despite knowing, at the time of each filing, that the $505,000.00 and $497,500.00 figures represented therein were inaccurate. (Doc. 69-10), at 38:9-12 (as to BK No. 19); 53:19-22 (as to BK No. 56); 57:7-11 (as to BK No. 83).

**Response**: Mr. Cosmano objects to this paragraph because it is argumentative and because the United States relies on deposition questions to which Mr. Cosmano asserted his Fifth Amendment rights. Without waiving these objections, Mr. Cosmano denies that he lied to this Court about the value of the Waterside Drive Property, denies that he knew the appraisal values were inaccurate at the time of any filing, and denies that he authorized any filing for an improper purpose. Mr. Cosmano further denies that the cited record establishes a false statement, knowledge of falsity, intent to deceive, or willful attempt to evade or defeat tax. See Doc. 69-10 at 38:9-12, 53:19-22, 57:7-11; ECF No. 79, Response to ¶ 46; ECF No. 82, Response to ¶ 46; ECF No. 79-1, Affidavit of James Cosmano.

**47.** Mr. Cosmano likewise relied upon the Kuehn Appraisal and the Vaught Appraisal in a District Court action previously brought by the United States to enforce the federal tax liens encumbering the Waterside Drive Property, United States v. Cosmano, et al., Case No. 1:19-cv-06276 (N.D. Ill.) (the "Prior Lien-Enforcement Action"). Specifically, in his opposition to the United States' motion for summary judgment therein, filed in November 2020, Mr. Cosmano urged the District Court to reject the United States' request to order a judicial sale of the

Waterside Drive Property under 26 U.S.C. § 7403, asserting that the then-outstanding balance of a senior mortgage interest encumbering the Waterside Drive property (said to be about $585,000) was greater than the value of the Waterside Drive Property under the Vaught Appraisal ($497,500), and that because the mortgage would exhaust the value of the property leaving no equity allocable to the United States' liens, "a decree of foreclosure would be neither appropriate nor effective." Id. at Dkt. No. 34, pp. 3-4 (November 23, 2020 Defendant James Cosmano's Response to the Plaintiff's Motion for Summary Judgment and Memorandum in Support Thereof). Mr. Cosmano's opposition brief attached both the Kuehn Appraisal and the Vaught Appraisal. Prior Lien-Enforcement Action, at Dkt. No. 34-5.

**Response**: Mr. Cosmano admits that he relied on the Kuehn Appraisal and the Vaught Appraisal in filings in the Prior Lien-Enforcement Action and that the filings speak for themselves. Mr. Cosmano denies any implication that reliance on appraisals in defending against a requested judicial sale was improper, knowingly false, or evidence of a willful attempt to evade or defeat taxes. Mr. Cosmano states that he believed the tax liabilities had been discharged and that defending against foreclosure or lien enforcement was proper. See Prior Lien-Enforcement Action Dkt. No. 34; Prior Lien-Enforcement Action Dkt. No. 34-5; ECF No. 79, Response to ¶ 47; ECF No. 82, Response to ¶ 47; ECF No. 78; ECF No. 79-1, Affidavit of James Cosmano.

**48.** Mr. Cosmano knew that the $497,500.00 figure from the Vaught Appraisal and the $505,000.00 figure from the Kuehn Appraisal referenced in (or attached to) the foregoing opposition to the United States' summary judgment motion were inaccurate when he authorized that filing. (Doc. 69-10), at 59:1-9; 59:15-60:7. Mr. Cosmano has never notified the United States District Court for the Northern District of Illinois that the $497,500.00 from the Vaught Appraisal and the $505,000.00 figure from the Kuehn Appraisal represented in (and attached to) that opposition were inaccurate. Id. at 59:10-14; 60:8-12.

**Response**: Mr. Cosmano objects to this paragraph because the United States relies on deposition questions to which Mr. Cosmano asserted his Fifth Amendment rights and because the paragraph assumes the disputed premise that the appraisal values were inaccurate and known by Mr. Cosmano to be inaccurate. Without waiving these objections, Mr. Cosmano denies that he knew the Kuehn Appraisal or Vaught Appraisal figures were inaccurate when the opposition filing was authorized, denies that he had an obligation to notify the District Court that the figures were inaccurate, and denies that the cited record establishes any knowing false statement, concealment, or willful attempt to evade or defeat tax. See Doc. 69-10 at 59:1-60:12; ECF No. 79, Response to ¶ 48; ECF No. 82, Response to ¶ 48; ECF No. 79-1, Affidavit of James Cosmano.

**49.** Mr. Cosmano lied to the United States District Court for the Northern District of Illinois about the true value of the Waterside Drive Property when he authorized the foregoing opposition to be filed in the Prior Lien-Enforcement Action. (Doc. 69-10), at 60:13-16.

**Response**: Mr. Cosmano objects to this paragraph because it is argumentative and because the United States relies on deposition questions to which Mr. Cosmano asserted his Fifth Amendment rights. Without waiving these objections, Mr. Cosmano denies that he lied to the United States District Court for the Northern District of Illinois about the value of the Waterside Drive Property, denies that he authorized any filing containing a knowingly inaccurate valuation, and denies that the cited record establishes the United States' allegations. See Doc. 69-10 at 60:13-16; ECF No. 79, Response to ¶ 49; ECF No. 82, Response to ¶ 49; ECF No. 79-1, Affidavit of James Cosmano.

**50.** Mr. Cosmano further asserted the valuations of the Waterside Drive Property under the Kuehn Appraisal and the Vaught Appraisal in the mortgage foreclosure action concerning the Waterside Drive Property originally commenced by Mr. Cosmano's mortgage holder, Wilmington Savings Fund Society, FSB, in which action the United States had counterclaimed to enforce its tax liens against the Waterside Drive Property. DC No. 43, at pp. 8-9, DC No. 43-1 and 43-2 (August 31, 2021 Response of James Cosmano to Wilmington Savings Fund Society, FSB, Nor [sic] in its Individual Capacity by [sic] Solely as Owner Trustee of CSMC 2018-SP3 Trust's LR 56.1 Statement of Material Facts); DC No. 54, at p. 14, DC No. 54-1 and 54-2 (September 28, 2021 Combined Response of James Cosmano to Wilmington Savings Fund Society, FSB, Nor [sic] in its Individual Capacity by [sic] Solely as Owner Trustee of CSMC 2018-SP3 Trust and the United States of America [sic] LR 56.1 Statement of Material Facts).

**Response**: Mr. Cosmano admits that filings in the Wilmington foreclosure action referenced the Kuehn Appraisal and Vaught Appraisal and that the identified filings speak for themselves. Mr. Cosmano denies any implication that his reliance on those appraisals in the foreclosure action was knowingly false, improper, or evidence of a willful attempt to evade or defeat taxes. Mr. Cosmano states that he was defending against foreclosure and lien enforcement based on his understanding of the property, the appraisals, and the status of the alleged tax liabilities. See DC No. 43; DC No. 43-1; DC No. 43-2; DC No. 54; DC No. 54-1; DC No. 54-2; ECF No. 79, Response to ¶ 50; ECF No. 82, Response to ¶ 50; ECF No. 79-1, Affidavit of James Cosmano.

**51.** Mr. Cosmano, as with his approach in the Prior Lien-Enforcement Action, proffered the Kuehn Appraisal and the Vaught Appraisal in his Wilmington filings in support of his assertion that the United States' tax lien "has no value and should be valued at $0.00." DC No. 44, at p. 3 (August 31, 2021 Combined Response and Memorandum of James Cosmano in Opposition to Motion and Memorandum of Plaintiff for Summary Judgment); DC No. 55, at p. 3

(September 28, 2021 Response and Memorandum of James Cosmano in Opposition to Defendant and Counterclaim-Plaintiff United States of America's Memorandum of Law in Support of Motion for Summary Judgment).

**Response**: Mr. Cosmano admits that filings in the Wilmington matter referenced the Kuehn Appraisal and Vaught Appraisal and that those filings speak for themselves. Mr. Cosmano denies the phrase "as with his approach" to the extent it is argumentative and implies improper conduct. Mr. Cosmano denies any implication that he knowingly proffered false valuations or asserted the value of the United States' lien as $0.00 for an improper purpose. Mr. Cosmano states that his position was based on the asserted senior mortgage balance, the appraisals, and his understanding of the alleged tax liabilities and lien position at the time. See DC No. 44; DC No. 55; ECF No. 79, Response to ¶ 51; ECF No. 82, Response to ¶ 51; ECF No. 79-1, Affidavit of James Cosmano.

**52.** Mr. Cosmano knew that the $505,000.00 figure from the Kuehn Appraisal and the $497,500.00 figure from the Vaught Appraisal appearing in, or as attachments to, the foregoing filings in the Wilmington case were inaccurate at the time he authorized those documents to be filed. (Doc. 69-10), at 61:11-62:14, 62:20-63:12 (as to DC No. 43); 63:23-64:21, 65:3-16 (as to DC No. 44); 66:2-67:7, 67:13-68:4 (as to DC No. 54); 68:14-69:14, 69:20-70:8 (as to DC No. 55).

**Response**: Mr. Cosmano objects to this paragraph because the United States relies on deposition questions to which Mr. Cosmano asserted his Fifth Amendment rights and because the paragraph assumes that the appraisal values were inaccurate and known by Mr. Cosmano to be inaccurate. Without waiving these objections, Mr. Cosmano denies that he knew the Kuehn Appraisal or Vaught Appraisal figures were inaccurate when the Wilmington filings were authorized, denies that he authorized filings containing knowingly inaccurate valuation information, and denies that the cited record establishes any false statement, concealment, or willful attempt to evade or defeat taxes. See Doc. 69-10 at 61:11-62:14, 62:20-63:12, 63:23-64:21, 65:3-16, 66:2-67:7, 67:13-68:4, 68:14-69:14, 69:20-70:8; ECF No. 79, Response to ¶ 52; ECF No. 82, Response to ¶ 52; ECF No. 79-1, Affidavit of James Cosmano.

**53.** Mr. Cosmano has never notified the United States District Court for the Northern District of Illinois that the $505,000.00 and $497,500.00 figures appearing in, or as attachments to, the foregoing Wilmington filings were inaccurate. (Doc. 69-10), at 62:15-19, 63:13-17 (as to DC No. 43); 64:22-65:2, 65:17-21 (as to DC No. 44); 67:8-12, 68:5-9 (as to DC No. 54); 69:15-19, 70:9-13 (as to DC No. 55).

**Response**: Mr. Cosmano objects to this paragraph because the United States relies on deposition questions to which Mr. Cosmano asserted his Fifth Amendment rights and because the paragraph assumes the disputed premise that the appraisal values were inaccurate and known by Mr. Cosmano to be inaccurate. Without waiving these objections, Mr. Cosmano denies that he had an obligation to notify the District Court that the appraisal figures were inaccurate because he denies that he knew them to be inaccurate when used. Mr. Cosmano further denies that the cited record establishes concealment, a false statement, or willful evasion. See Doc. 69-10 at 62:15-19, 63:13-17, 64:22-65:2, 65:17-21, 67:8-12, 68:5-9, 69:15-19, 70:9-13; ECF No. 79, Response to ¶ 53; ECF No. 82, Response to ¶ 53; ECF No. 79-1, Affidavit of James Cosmano.

**54.** Mr. Cosmano lied to the United States District Court for the Northern District of Illinois about the true value of the Waterside Drive Property when he authorized the foregoing filings to be made in the Wilmington case. (Doc. 69-10), at 63:18-22 (as to DC No. 43); 65:22-66:1 (as to DC No. 44); 68:10-13 (as to DC No. 54); 70:14-17 (as to DC No. 55).

**Response**: Mr. Cosmano objects to this paragraph because it is argumentative and because the United States relies on deposition questions to which Mr. Cosmano asserted his Fifth Amendment rights. Without waiving these objections, Mr. Cosmano denies that he lied to the United States District Court for the Northern District of Illinois about the true value of the Waterside Drive Property, denies that he authorized any Wilmington filing containing a knowingly inaccurate valuation, and denies that the cited record establishes the United States' allegations. See Doc. 69-10 at 63:18-22, 65:22-66:1, 68:10-13, 70:14-17; ECF No. 79, Response to ¶ 54; ECF No. 82, Response to ¶ 54; ECF No. 79-1, Affidavit of James Cosmano.

## V. Mr. Cosmano Willfully Sabotages the Government's Collection Efforts Regarding His 2007-2010 Tax Debts and Is Held in Contempt by the District Court

**55.** As part of its bid to have the Waterside Drive Property sold through a judicial sale in the Wilmington case, the United States contacted Ginger Menne, an Illinois-licensed local real estate agent familiar with the condominium building in which the property was situated, and requested that she provide a broker's price opinion ("BPO") for the Waterside Drive Property. (Doc. 69-9), at ¶¶ 1-4.

**Response**: Mr. Cosmano objects to the section heading as argumentative, inflammatory, and not a statement of material fact. Mr. Cosmano further objects to paragraph 55 because the United States relies on the Declaration of Ginger Menne, a witness who was not timely disclosed in

discovery and whom Mr. Cosmano did not have a fair opportunity to depose before discovery closed. Without waiving these objections, Mr. Cosmano admits only that the United States contacted Ginger Menne in connection with the Wilmington case and requested that she provide a broker's price opinion concerning the Waterside Drive Property. Mr. Cosmano denies any implication that the United States' request for a BPO, or Ms. Menne's involvement, establishes that Mr. Cosmano sabotaged collection efforts, concealed assets, or willfully attempted to evade or defeat taxes. See Doc. 69-9 at ¶¶ 1-4; ECF No. 79, Response to ¶ 55; ECF No. 82, Response to ¶ 55; ECF No. 79-1, Affidavit of James Cosmano.

**56.** Ms. Menne agreed to provide a BPO and made arrangements with Mr. Cosmano and his counsel, Paul Bach, to physically visit the Waterside Drive Property on November 13, 2021, for that purpose. (Doc. 69-9), at ¶¶ 5-7. In the days leading up to Ms. Menne's scheduled walkthrough of the Waterside Drive Property, Ms. Menne spoke with Mr. Cosmano over the phone. Id. at ¶ 7; (Doc. 69-10), at 71:12-15. According to Ms. Menne, during that phone conversation Mr. Cosmano was "hesitant to let [Ms. Menne] walk through the condo" and "repeatedly told [her] that the condo he purchased from the developer was always a one bedroom unit." (Doc. 69-9), at ¶ 8; see also (Doc. 69-10), at 71:16-20; 72:2-6.

**Response**: Mr. Cosmano objects to this paragraph because the United States relies on the Declaration of Ginger Menne, a late-disclosed witness, and on deposition questions to which Mr. Cosmano asserted his Fifth Amendment rights. Mr. Cosmano further objects to Ms. Menne's characterization of the alleged telephone conversation to the extent it is offered for the truth of disputed matters and to the extent Mr. Cosmano was denied a fair opportunity to test those statements through deposition before discovery closed. Without waiving these objections, Mr. Cosmano admits only that arrangements were made for Ms. Menne to visit the Waterside Drive Property on November 13, 2021, in connection with a BPO. Mr. Cosmano denies that he acted improperly, denies that he knowingly made false statements to Ms. Menne, and denies that the cited record establishes that he concealed information, obstructed any inspection, or willfully attempted to evade or defeat taxes. Mr. Cosmano states that he believed the property was a one-bedroom condominium. See Doc. 69-9 at ¶¶ 5-8; Doc. 69-10 at 71:12-72:6; ECF No. 79, Response to ¶ 56; ECF No. 82, Response to ¶ 56; ECF No. 79-1, Affidavit of James Cosmano.

**57.** Mr. Cosmano knew his statements to Ms. Menne that the Waterside Drive Property was a one-bedroom unit, and had always been a one-bedroom unit, were false at the time he made those statements. (Doc. 69-10), at 71:21-72:11.

**Response**: Mr. Cosmano objects to this paragraph because the United States relies on deposition questions to which Mr. Cosmano asserted his Fifth Amendment rights and improperly treats those invocations as admissions of knowledge, falsity, and intent. Without waiving these objections, Mr. Cosmano denies that he knew any statement to Ms. Menne was false, denies that he knowingly misrepresented the configuration of the Waterside Drive Property, and denies that the cited record contains an affirmative admission by him establishing the United States' allegations. Mr. Cosmano states that he believed the property was a one-bedroom condominium. See Doc. 69-10 at 71:21-72:11; ECF No. 79, Response to ¶ 57; ECF No. 82, Response to ¶ 57; ECF No. 79-1, Affidavit of James Cosmano.

**58.** Mr. Cosmano lied to Ms. Menne about the dimensions of the Waterside Drive Property. (Doc. 69-10), at 72:12-15. Mr. Cosmano lied about those dimensions to conceal the size of the Waterside Drive Property, and so that he could avoid paying his federal income taxes through a judicial sale of the property. Id. at 72:12-20.

**Response**: Mr. Cosmano objects to this paragraph because it is argumentative and because the United States relies on deposition questions to which Mr. Cosmano asserted his Fifth Amendment rights. Mr. Cosmano's invocation of constitutional rights is not a deemed admission and does not establish that he lied, concealed property dimensions, or acted with intent to avoid payment of taxes. Without waiving these objections, Mr. Cosmano denies that he lied to Ms. Menne about the dimensions of the Waterside Drive Property, denies that he concealed the size of the property, and denies that he acted to avoid payment of federal income taxes through a judicial sale. Mr. Cosmano further denies that the cited record establishes any willful attempt to evade or defeat taxes. See Doc. 69-10 at 72:12-20; ECF No. 79, Response to ¶ 58; ECF No. 82, Response to ¶ 58; ECF No. 79-1, Affidavit of James Cosmano.

**59.** When Ms. Menne arrived at the Waterside Drive Property on November 13, 2021, to inspect the property, she "expect[ed] to see a three-bedroom, three-bathroom condo of approximately 2,100 square feet" based on Ms. Menne's familiarity with the standardized floorplans of the condominium building. Ex. 9, at ¶ 9. However, when Ms. Menne entered the Waterside Drive Property, she "immediately knew that something was wrong" because the layout of the property was inconsistent with the floorplan for condominium units – like Mr. Cosmano's – with numbers ending in "01" on floors 13 through 19 of the building. Id. at ¶ 11. Specifically, Ms. Menne discovered the False Wall: according to her account, Mr. Cosmano "had erected a wall across the doorway providing access to the unit's master suite, effectively cutting the unit in half" and ostensibly "modified the remainder of the unit that is still

accessible, by removing one of the walls between the bedroom and the living area, effectively making the unit into a one-bedroom unit[.]" *Id.*

**Response**: Mr. Cosmano objects to this paragraph because the United States relies on the Declaration of Ginger Menne, a late-disclosed witness whom Mr. Cosmano did not have a fair opportunity to depose before discovery closed. Mr. Cosmano further objects because the paragraph is based on Ms. Menne's expectations, impressions, and conclusions, not on competent evidence establishing what Mr. Cosmano knew, intended, or did. Without waiving these objections, Mr. Cosmano denies that Ms. Menne's observations establish that he concealed the size of the Waterside Drive Property, created a false wall, or willfully attempted to evade or defeat taxes. Mr. Cosmano further denies any allegation in the omitted portion of paragraph 59 to the extent it asserts that he knowingly altered, concealed, or misrepresented the property. See Doc. 69-9 at ¶ 9; ECF No. 79, Response to ¶ 59; ECF No. 82, Response to ¶ 59; ECF No. 79-1, Affidavit of James Cosmano.

**60.** During Ms. Menne's November 13, 2021 walkthrough of the Waterside Drive Property, it further appeared to her "that someone had arranged for the doorway and some of the adjoining walls on either side to be covered over with non-load-bearing drywall to hide the true size of the unit[,]" and that "the work done to put the unit in this configuration was done some time ago and is not recent." **Ex. 9**, at ¶ 11.

**Response**: Mr. Cosmano objects to paragraph 60 to the extent it relies on the Declaration of Ginger Menne, any late-disclosed witness testimony, deposition questions to which Mr. Cosmano asserted the Fifth Amendment, or documents not properly authenticated or admissible. Without waiving these objections, Mr. Cosmano denies paragraph 60 to the extent it asserts that he knowingly concealed square footage, knowingly misrepresented the layout of the Waterside Drive Property, caused any false wall to be constructed, or acted with intent to evade or defeat federal taxes. Mr. Cosmano further states that any observations made by Ms. Menne during a walkthrough do not establish Mr. Cosmano's knowledge, intent, or conduct. See Doc. 69-9; Doc. 69-10; ECF No. 79, Response to ¶ 60; ECF No. 82, Response to ¶ 60; ECF No. 79-1, Affidavit of James Cosmano.

**61.** Based on her analysis of the sales of comparable units, which analysis was done around the time of her November 2021 walkthrough, Ms. Menne's opinion was that the Waterside Drive Property could be worth in excess of $1 million. **Ex. 9**, at ¶¶ 16-17.

**Response**: Mr. Cosmano objects to paragraph 61 because the United States relies on evidence and conclusions that are disputed, unsupported, and not properly established through admissible evidence. To the extent paragraph 61 concerns the existence, location, condition, or alleged purpose of any wall at the Waterside Drive Property, Mr. Cosmano denies that the United States has established that he caused such a wall to be built, that he knew any hidden space existed, or that he acted for any improper purpose. To the extent the United States relies on Mr. Cosmano's Fifth Amendment invocation, Mr. Cosmano objects because that invocation is not a deemed admission and does not make the United States' allegations undisputed. See Doc. 69-9; Doc. 69-10; Doc. 69-11; ECF No. 79, Response to ¶ 61; ECF No. 82, Response to ¶ 61; ECF No. 79-1, Affidavit of James Cosmano.

**62.** Following Ms. Menne's discovery of the False Wall and Mr. Cosmano's other alterations to the Waterside Drive Property, the United States notified the District Court, and subsequently this Court, of Ms. Menne's findings. DC No. 58 (November 19, 2021 *Defendant and Counterclaim Plaintiffs' Request to Stay Decision on Pending Motions*), DC No. 62 (January 7, 2022 *Defendant and Counterclaim-Plaintiff United States of America's Status Report*); *see also* AP No. 24 (January 31, 2022 *Notice of Motion to Stay Proceeding*).

**Response**: Mr. Cosmano objects to paragraph 62 to the extent it relies on Ms. Menne's declaration, conclusions, or opinions, or on other evidence not properly authenticated. Without waiving these objections, Mr. Cosmano denies any assertion that the condition or configuration of the Waterside Drive Property proves that he knowingly concealed property, misled appraisers, misled the Court, or willfully attempted to evade or defeat taxes. Mr. Cosmano further denies any allegation that he acted with the mental state required for nondischargeability. See Doc. 69-9; ECF No. 79, Response to ¶ 62; ECF No. 82, Response to ¶ 62; ECF No. 79-1, Affidavit of James Cosmano.

**63.** On January 18, 2022, the District Court granted the cross-motions for summary judgment of Mr. Cosmano's mortgage-holder and the United States to enforce their liens against the Waterside Drive Property, and further determined that a receiver should be appointed under 26 U.S.C. § 7403(d) to conduct a judicial sale of the property. DC No. 64 (Memorandum Opinion and Order). The District Court subsequently entered an order appointing Ms. Menne as receiver on February 17, 2022 (the "Receiver Order"). **Ex. 19**, Order Appointing Receiver (AP No. 59-10).

**Response**: Mr. Cosmano objects to paragraph 63 because it appears to rely on the same disputed and inadmissible evidence addressed in the prior responses, including late-disclosed witness

testimony and improper inferences from Fifth Amendment invocations. Without waiving these objections, Mr. Cosmano denies that the United States has established that he made any knowingly false statement, concealed any material fact, or attempted to prevent collection of taxes. Any alleged discrepancy between an appraisal, a floor plan, a BPO, or Ms. Menne's observations is disputed and does not establish Mr. Cosmano's intent or knowledge. See Doc. 69-9; Doc. 69-10; Doc. 69-11; ECF No. 79, Response to ¶ 63; ECF No. 82, Response to ¶ 63; ECF No. 79-1, Affidavit of James Cosmano.

**64.** The Receiver Order provided, *inter alia*, that "[a]ll parties shall cooperate fully with the receiver and shall also take all necessary actions to enable the receiver to convey marketable title to the subject property[,]" and that "[a]ll persons occupying the subject property shall, no later than thirty days after the entry of this order, vacate and depart from the subject property, leaving in place all fixtures, appliances, and improvements without disturbance to the premises[.]" **Ex. 19**, at ¶¶ 2, 4.

**Response**: Mr. Cosmano objects to paragraph 64 to the extent it is argumentative, contains legal conclusions, or assumes disputed facts. Without waiving these objections, Mr. Cosmano denies that the United States has established that he obstructed any inspection, interfered with any valuation process, concealed the value of the Waterside Drive Property, or acted with any intent to evade or defeat federal income taxes. Mr. Cosmano further denies that any disputed facts concerning the Waterside Drive Property can be resolved on summary judgment based on the United States' current record. See Doc. 69-9; Doc. 69-10; ECF No. 79, Response to ¶ 64; ECF No. 82, Response to ¶ 64; ECF No. 79-1, Affidavit of James Cosmano.

**65.** The Receiver Order also addressed the False Wall, providing that "[t]he receiver shall, upon taking custody of the subject property, make arrangements in consultation with the parties . . . to remove the false wall described in the status report of the United States ([DC No. 62]) which is presently obstructing access to the master bedroom suite of the subject property" and that "[n]o party shall take any action to remove the false wall (or any property located in the areas behind that wall) unless the receiver and representatives of the United States are present for the removal of the wall." **Ex. 19**, at ¶ 5.

**Response**: Mr. Cosmano objects to paragraph 65 because the United States relies on evidence concerning the Wilmington matter and the District Court proceedings without establishing that those proceedings prove the elements of willful tax evasion or nondischargeability. Without waiving these objections, Mr. Cosmano admits only that proceedings occurred in the Wilmington foreclosure action and that orders entered in that action speak for themselves. Mr. Cosmano

denies any characterization that he willfully sabotaged collection efforts, intentionally disobeyed orders for the purpose of avoiding taxes, or concealed or destroyed property subject to the United States' liens. See DC No. 43; DC No. 44; DC No. 54; DC No. 55; Doc. 69-19; Doc. 69-20; Doc. 69-21; ECF No. 79, Response to ¶ 65; ECF No. 82, Response to ¶ 65; ECF No. 79-1, Affidavit of James Cosmano.

**66.** Additionally, the Receiver Order specified that "Defendant James A. Cosmano shall not do anything that interferes with the rights or responsibilities of the receiver or that tends to reduce the value or marketability of the subject property or cause or permit anyone else to do so[,]" and that a "[v]iolation of this paragraph shall be deemed a contempt of court and punishable as such." **Ex. 19**, at ¶ 8.

**Response**: Mr. Cosmano objects to paragraph 66 to the extent it relies on the Order Appointing Receiver, the United States' emergency motion materials, or attorney declarations for disputed factual propositions without competent admissible evidence. Without waiving these objections, Mr. Cosmano admits only that orders were entered in the Wilmington case and that those orders speak for themselves. Mr. Cosmano denies any assertion that he intentionally violated any order for the purpose of evading taxes or that any alleged violation establishes nondischargeability of the 2007 through 2010 tax liabilities. See Doc. 69-19; Doc. 69-20; Doc. 69-21; ECF No. 79, Response to ¶ 66; ECF No. 82, Response to ¶ 66; ECF No. 79-1, Affidavit of James Cosmano.

**67.** On March 5, 2022, Ms. Menne contacted Jeffrey N. Nuñez (counsel of record for the United States in the adversary proceeding and in *Wilmington*) and notified him that on March 4, 2022 – that is, after the District Court's entry of the Receiver Order – Mr. Cosmano accessed the Waterside Drive Property and damaged it, including by removing cabinets, countertops, appliances, fixtures, and other property. **Ex. 20**, Declaration of Jeffrey N. Nuñez in Support of United States' Emergency Motion for an Order Enforcing the Order Appointing Receiver, at ¶¶ 1, 4 (AP No. 48-9). Ms. Menne further notified Attorney Nuñez that Mr. Cosmano had broken down the False Wall. *Id.* at ¶ 4. In view of the foregoing, Ms. Menne arranged for the locks to the Waterside Drive Property be replaced. *Id.*

**Response**: Mr. Cosmano objects to paragraph 67 because it appears to rely on disputed allegations in the District Court proceedings and on materials submitted by the United States rather than on undisputed admissible facts. Without waiving these objections, Mr. Cosmano denies that he damaged, destroyed, converted, concealed, or attempted to remove property for the purpose of defeating the United States' tax liens or avoiding payment of taxes. Mr. Cosmano states that he has maintained that the property had been broken into before his arrival and that the

United States has not established otherwise through undisputed admissible evidence. See Doc. 69-20; Doc. 69-21; Doc. 69-22; ECF No. 78; ECF No. 79, Response to ¶ 67; ECF No. 82, Response to ¶ 67; ECF No. 79-1, Affidavit of James Cosmano.

**68.** Ms. Menne thereafter contacted Attorney Nuñez a second time on March 5, 2022, to notify him that Mr. Cosmano had since returned to the Waterside Drive Property, broke down the front door (the locks had since been changed), and continued to remove fixtures from the property. **Ex. 20**, at ¶ 5.

**Response**: Mr. Cosmano objects to paragraph 68 to the extent the United States relies on declarations or statements concerning alleged damage to the Waterside Drive Property from witnesses who were not timely disclosed or whose testimony Mr. Cosmano did not have a fair opportunity to test in discovery. Without waiving these objections, Mr. Cosmano denies that he caused damage to the Waterside Drive Property, denies that he destroyed or attempted to convert property subject to any IRS lien, and denies that the United States has established any causal connection between alleged damage and a willful attempt to evade or defeat taxes. See Doc. 69-22; Doc. 69-23; ECF No. 78; ECF No. 79, Response to ¶ 68; ECF No. 82, Response to ¶ 68; ECF No. 79-1, Affidavit of James Cosmano.

**69.** Mr. Cosmano accessed the Waterside Drive Property, damaged it by removing fixtures and appliances, and also by removing the False Wall, in order to harm the United States' ability to collect his federal income taxes.8 **Ex. 10**, at 73:1-74:15.

**Response**: Mr. Cosmano objects to paragraph 69 because the United States relies on contested District Court allegations and on an adverse inference from Mr. Cosmano's assertion of Fifth Amendment rights. Without waiving these objections, Mr. Cosmano admits only that the District Court held contempt proceedings and that any orders entered in those proceedings speak for themselves. Mr. Cosmano denies that the contempt proceedings establish that he willfully attempted to evade or defeat taxes, denies that the United States has proven the factual allegations underlying the contempt proceedings for purposes of this summary judgment motion, and denies any characterization that he intentionally sabotaged collection efforts. See Doc. 69-21; Doc. 69-23; ECF No. 78; ECF No. 79, Response to ¶ 69; ECF No. 82, Response to ¶ 69; ECF No. 79-1, Affidavit of James Cosmano.

**70.** The United States promptly filed an emergency motion in *Wilmington*

requesting that the District Court enforce the Receiver Order. DC No. 67 (March 6, 2022 *Defendant and Counterclaim Plaintiff United States' Emergency Motion for an Order Enforcing the Order Appointing Receiver [ECF No. 66]*) (alteration in original). The District Court granted the United States' emergency motion the same day (the "Enforcement Order"). **Ex. 21**, March 6, 2022 Order Enforcing Order Appointing Receiver (DC No. 69-1).

**Response**: Mr. Cosmano objects to paragraph 70 to the extent it relies on the Transcript of the May 5, 2022 Civil Contempt Hearing or other District Court materials to establish disputed facts concerning intent, causation, or willfulness. Without waiving these objections, Mr. Cosmano admits only that a contempt hearing occurred and that the transcript speaks for itself. Mr. Cosmano denies that the hearing transcript establishes that he knowingly concealed assets, knowingly destroyed property, or willfully attempted to evade or defeat taxes. Mr. Cosmano further denies that any adverse inference from his assertion of the Fifth Amendment can substitute for admissible proof of the United States' allegations. See Doc. 69-23; Doc. 69-10; ECF No. 78; ECF No. 79, Response to ¶ 70; ECF No. 82, Response to ¶ 70; ECF No. 79-1, Affidavit of James Cosmano.

**71.** The Enforcement Order directed, *inter alia*, that Mr. Cosmano was to immediately vacate the Waterside Drive Property, and mandated that he "shall immediately return to the United States Marshals Service all fixtures or appliances removed from the Subject Property[.]" **Ex. 21**, at ¶¶ 1, 4.

**Response**: Mr. Cosmano objects to paragraph 71 because it appears to rely on disputed allegations regarding alleged actions at the Waterside Drive Property and on conclusions drawn by the United States from District Court proceedings. Without waiving these objections, Mr. Cosmano denies that he engaged in any willful destruction, conversion, concealment, or sabotage of property. Mr. Cosmano further denies that any alleged post-discharge conduct establishes that the 2007 through 2010 tax liabilities were nondischargeable or that he willfully attempted to evade or defeat those taxes. See Doc. 69-20; Doc. 69-21; Doc. 69-22; Doc. 69-23; ECF No. 78; ECF No. 79, Response to ¶ 71; ECF No. 82, Response to ¶ 71.

**72.** Mr. Cosmano did not immediately return the fixtures or appliances he had removed from the Waterside Drive Property. **Ex. 22**, Declaration of Receiver Ginger Menne, at ¶ 8 (AP No. 48-10).

**Response**: Mr. Cosmano objects to paragraph 72 to the extent it states legal conclusions, characterizes disputed conduct as "willful," "intentional," "sabotage," or "evasion," or relies on evidence that is inadmissible or not properly authenticated. Without waiving these objections,

Mr. Cosmano denies any allegation that he attempted to impair, frustrate, or defeat the United States' collection efforts. Mr. Cosmano further denies that any alleged conduct in the Wilmington case proves the elements of nondischargeability under the Bankruptcy Code or entitles the United States to summary judgment. See Doc. 69-19; Doc. 69-20; Doc. 69-21; Doc. 69-22; Doc. 69-23; ECF No. 78; ECF No. 79, Response to ¶ 72; ECF No. 82, Response to ¶ 72; ECF No. 79-1, Affidavit of James Cosmano.

**73.** Following the events giving rise to the entry of the Enforcement Order, the United States filed a motion in *Wilmington* for an order directing Mr. Cosmano to show cause as to why he should not be held in civil contempt of the District Court's Receiver Order and the Enforcement Order. DC No. 71 (April 22, 2022 *Defendant and Counterclaim Plaintiff United States Of America's Motion For Order To Show Cause Why Defendant and Counterclaim Defendant James Cosmano Should Not Be Held In Civil Contempt*). The District Court granted the United States' motion and ordered Mr. Cosmano to physically appear before the District Court for a show-cause hearing on May 5, 2022 (the "Contempt Hearing"). DC No. 72 (April 26, 2022 *Minute Entry*).

**Response**: Mr. Cosmano objects to paragraph 73 because the United States relies on disputed evidence and improper inferences to establish Mr. Cosmano's state of mind. Without waiving these objections, Mr. Cosmano denies that he had the intent attributed to him by the United States, denies that he knowingly acted to evade or defeat taxes, and denies that the United States has presented undisputed admissible evidence sufficient to establish his knowledge, purpose, or intent as a matter of law. See Doc. 69-10; Doc. 69-11; Doc. 69-23; ECF No. 78; ECF No. 79, Response to ¶ 73; ECF No. 82, Response to ¶ 73; ECF No. 79-1, Affidavit of James Cosmano.

**74.** The Contempt Hearing was held as scheduled. **Ex. 23**, *Transcript of May 5, 2022 Civil Contempt Hearing* (AP No. 48-11). At the outset of that proceeding, counsel for the United States notified the District Court that the United States Department of Justice's Tax Division had made a referral to the office of the United States Attorney for the Northern District of Illinois to consider whether a crime was committed by Mr. Cosmano warranting prosecution. *Id.* at 8:3-11. Mr. Cosmano, through counsel, asserted his Fifth Amendment right against self-incrimination during the Contempt Hearing, and the District Court accepted that assertion. *Id.* at 10:9-16; 31:15-18.

**Response**: Mr. Cosmano objects to paragraph 74 to the extent it relies on facts not supported by admissible evidence, on hearsay within declarations, on attorney declarations, or on documents not properly authenticated. Without waiving these objections, Mr. Cosmano denies any allegation that he concealed assets, dissipated assets, destroyed records, or engaged in a course of

conduct intended to evade or defeat federal income taxes. Mr. Cosmano further denies that any asserted facts in paragraph 74 are undisputed if they concern intent, knowledge, motive, or alleged wrongdoing. See ECF No. 78; ECF No. 79, Response to ¶ 74; ECF No. 82, Response to ¶ 74; ECF No. 79-1, Affidavit of James Cosmano.

**75.** Following oral argument and the presentation of witness testimony, the District Court found Mr. Cosmano in civil contempt of its Receiver Order and its Enforcement Order. The District Court prefaced its ruling by observing that those orders were "clear and unambiguous." **Ex. 23**, at 43:7-8. It also recounted that the Receiver Order instructed the parties to "cooperate fully with the receiver[,]" to "leave in place all fixtures, appliances, and improvements, without disturbance to the premises[,]" and to take no "action to remove the false wall or any property located behind that wall" unless Ms. Menne and representatives of the United States were present for the removal of the False Wall. *Id.* at 43:8-15. The District Court further highlighted that the Receiver Order had specifically directed that "Mr. Cosmano shall not do anything that tends to reduce the value or marketability of the subject property or cause or permit anyone else to do so[,]" and that its companion Enforcement Order mandated that Mr. Cosmano was to "immediately return" any fixtures or appliances he had removed from the Waterside Drive Property. *Id.* at 43:15-21. Mr. Cosmano, the District Court found, "violated these orders." *Id.* at 43:22.

**Response**: Mr. Cosmano objects to paragraph 75 because the United States' asserted facts and characterizations remain disputed and because the United States attempts to use circumstantial allegations, late-disclosed witness declarations, and Fifth Amendment invocations as though they were conclusive proof. Without waiving these objections, Mr. Cosmano denies paragraph 75 to the extent it asserts that he engaged in a scheme, acted in bad faith, concealed the Waterside Drive Property's value, misled appraisers or courts, or willfully attempted to evade or defeat tax liabilities. See Doc. 69-9; Doc. 69-10; Doc. 69-11; Doc. 69-13; Doc. 69-18; Doc. 69-22; ECF No. 78; ECF No. 79, Response to ¶ 75; ECF No. 82, Response to ¶ 75; ECF No. 79-1, Affidavit of James Cosmano.

**76.** Regarding Mr. Cosmano's violations of the Receiver Order and the Emergency Order, the District Court observed that "[t]hese were significant violations and a substantial lack of compliance on Mr. Cosmano's part." **Ex. 23**, at 44:18-19. The District Court further explained:

> These provisions of these orders were important. They go to the marketability and the value of this property, which I have ordered foreclosed on. And the value of this property belongs, in large part, to the mortgagor [sic] and the lienholders first.

*Id.* at 44:23-45:2. Mr. Cosmano's violations, the District Court emphasized, "attack the

purpose of the order, which makes the violations not only clear violations of specific terms, but also significant in terms of consequence and purpose." *Id.* at 45:3-6.

**Response**: Mr. Cosmano objects to paragraph 76 to the extent it contains argument, legal conclusions, or cumulative factual assertions that do not comply with the local rule requiring concise statements of material fact. Without waiving these objections, Mr. Cosmano denies that the United States has established the absence of a genuine dispute of material fact. Mr. Cosmano further denies that the United States has established, through admissible evidence, that he voluntarily, consciously, and intentionally attempted to evade or defeat the taxes at issue. See ECF No. 78; ECF No. 79, Response to ¶ 76; ECF No. 82, Response to ¶ 76; ECF No. 79-1, Affidavit of James Cosmano.

**77.** The District Court's ruling during the Contempt Hearing ultimately concluded:

I don't know what [Mr. Cosmano's] motive was for this, and I make no conclusion or finding about whether it was to evade or defeat a tax, but I do find that it was a willful violation of my orders. They were clear orders, unambiguous. Mr. Cosmano is a lawyer, and he well knew that court orders are to be followed. Whatever motivated his decision, it was a willful one relative to my orders.

**Ex. 23**, at 45:14-21. Regarding the Court's comment about whether one motive was to evade or defeat tax, at the outset of the Contempt Hearing, the District Court had denied the United States' request to reassign and consolidate the United States' then-pending motion for withdrawal of the bankruptcy reference for the adversary proceeding, *see* AP No. 37, with the Contempt Hearing. The United States then quickly withdrew its motion to withdraw the reference for the adversary proceeding following the District Court's contempt ruling, as the premise for that motion (consolidation with the contempt proceeding) no longer obtained.9

**Response**: Mr. Cosmano objects to paragraph 77 to the extent it summarizes, characterizes, or draws legal conclusions from the United States' prior factual assertions. Without waiving these objections, Mr. Cosmano denies that the facts asserted by the United States are undisputed, denies that the United States has proven willful evasion or nondischargeability, and denies that the United States is entitled to summary judgment. Mr. Cosmano further states that the record, including his prior responses, affidavit, and filings, establishes genuine disputes of material fact and procedural defects that require denial of the United States' second Motion for Summary Judgment. See ECF No. 78; ECF No. 79; ECF No. 79-1; ECF No. 82; ECF No. 82-2.

**78.** On May 10, 2022, the District Court entered an order memorializing its findings during the Contempt Hearing, ordering Mr. Cosmano to return all previously unreturned fixtures

and appliances to Ms. Menne within two business days, and entering judgment against Mr. Cosmano and in favor of the United States for damages in the amount of $150,000.00. DC No. 79 (Civil Contempt Order).

**Response**: Mr. Cosmano objects to this paragraph by the United States and denies the factual allegations insofar as they imply that the contempt findings or damages award have any bearing on the dischargeability analysis in this proceeding. The United States has not stated a proper evidentiary basis for the admission of the contempt order for purposes of establishing willful evasion under 11 U.S.C. § 523(a)(1)(C). Without waiving the objection, Mr. Cosmano admits that on May 10, 2022, the District Court entered an order in Case No. 20-cv-07032 memorializing its findings from the contempt hearing, ordering the return of fixtures and appliances to Ms. Menne within two business days, and entering judgment for damages in the amount of $150,000.00. Mr. Cosmano denies, however, that the District Court made any findings regarding willful evasion of tax liabilities or that the contempt order is relevant to dischargeability in this bankruptcy case.

## VI. Mr. Cosmano's Adversary Proceeding Is Dismissed and He Later Commences the Instant Chapter 13 Bankruptcy Case and Objects to the IRS's Claim

**79.** In Mr. Cosmano's prior adversary proceeding, the United States and Mr. Cosmano filed cross-motions for summary judgment concerning the dischargeability of his 2007 through 2010 federal income tax debts. The matter was extensively briefed by both parties. AP Nos. 31, 48, 49-1, 58, 58-1, 59, 82, and 83.

**Response**: Mr. Cosmano objects to this paragraph by the United States as incomplete and misleading. The United States fails to note that the adversary proceeding was dismissed without prejudice and without any final determination on the merits of the dischargeability issues. The mere filing of cross-motions for summary judgment and extensive briefing does not establish any facts material to the present contested matter. Without waiving the objection, Mr. Cosmano admits that in the prior adversary proceeding, Cosmano v. United States, No. 21-ap-00059, both parties filed cross-motions for summary judgment concerning the dischargeability of Mr. Cosmano's 2007 through 2010 federal income tax debts, and that the matter was extensively briefed. Mr. Cosmano further states that the adversary proceeding was ultimately dismissed without a ruling on dischargeability, and therefore no findings were made as to whether the debts are excepted from discharge under 11 U.S.C. § 523(a)(1)(C).

**80.** During discovery in that adversary proceeding, Mr. Cosmano invoked his Fifth Amendment right against self-incrimination in response to: (1) the United States' Second Interrogatories; (2) the United States' Second Set of Requests for Production of Documents; (3) the United States' First Requests for Admissions; and (4) all questions asked at his July 6, 2022 deposition. Ex. 10, 11, 24, 25. Among the issues on which Mr. Cosmano refused to provide responses, documents, or testimony were:

- That he constructed (or caused to be constructed) a false wall in his condominium of the false wall to conceal a portion of the square footage so appraisals of the unit would reflect a lower value. Ex. 10 at 31:6-32:1; Ex. 11 ¶ 8-9; Ex. 24 ¶¶ 24, 26; Ex. 25 ¶ 24.
- That he obtained a false, artificially-low appraisal of his condo unit from Michael Kuehn by misrepresenting the size of the unit. Ex. 10 at 26:17-34:18; Ex. 11 ¶¶ 6, 10, 12; Ex. 24, ¶ 27.
- That he obtained a false, artificially-low appraisal of his condo unit from Kevin Vaught by misrepresenting the size of the unit. Ex. 10 at 46:19-52:10, Ex. 11 ¶ 6, 11, 12; Ex. 24 ¶ 28.
- That he obtained and used those inaccurate appraisals in multiple filings and proceedings in both the Chapter 7 case and in the District Court lien enforcement actions with the intention of avoiding collection of his tax liabilities. Ex. 10, at 32:2-6, 34:10-15, 35:17-40:7, 42:11-43:21, 44:14-45:2; 52:1-57:11, 58:7-60:16, 61:11-70:17; Ex. 11, ¶ 14.
- That his removal of appliances and fixtures from, and damage to, the Waterside Drive Property was intended to harm the United States' ability to collect his federal income taxes. Ex. 10, at 73:6-13, 73:19-24, 74:10-15.

**Response**: Mr. Cosmano objects to this paragraph in its entirety by the United States, as the United States presumes that the invocation of the Fifth Amendment means that the matters inquired about must be deemed admitted or answered in the United States' favor. Although parties may draw adverse inferences based upon a party's invocation of the Fifth Amendment in civil proceedings, such inferences are permissive, not mandatory, and do not automatically establish the truth of the matters inquired about. Therefore, Mr. Cosmano denies all factual statements in this paragraph based on a lack of independent evidence provided by the United States.

As noted by the United States in prior briefing, the general black-letter case law indicates that there is a possible adverse inference in a civil matter as a result of asserting rights under the Fifth Amendment to the United States Constitution. However, this Court has not ruled what inference, if any, should be drawn in this case. The United States makes the presumption that the inference would be that the requests for admission would be admitted or questions in a deposition would be answered as the United States presumes. The Court in this case has made no such ruling, and this issue has not been sufficiently briefed.

The United States cites several Seventh Circuit cases, including *Evans v. City of Chicago*, 513 F.3d 735, 740 (7th Cir. 2008). In Evans, the Seventh Circuit stated that an adverse inference

can be drawn in a civil case when a witness refuses to answer a question on Fifth Amendment grounds, but also held that the negative inference is permissive, not required. *Daniels v. Pipefitters' Ass'n Local Union No. 597*, 983 F.2d 800, 802 (7th Cir. 1993).

This Court should limit any inference because the United States forced Mr. Cosmano to assert his Fifth Amendment rights based upon the announcement of a criminal investigation at the contempt hearing. This attempt to gain an advantage in litigation should not be condoned. The United States should not be rewarded for abusing its governmental powers.

The Court should also consider *LaSalle Bank Lake View v. Seguban*, 54 F.3d 387, 390 (7th Cir. 1995), which is also cited by the United States. As noted by the court in *LaSalle Bank*, the Supreme Court in *Baxter v. Palmigiano*, 425 U.S. 308 (1976), stated: "Thus, although 'the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them,' an analysis of that evidence is nonetheless required. Silence is a relevant factor to be considered in light of the proffered evidence, but the direct inference of guilt from silence is forbidden."

Baxter did no more than permit an inference to be drawn in a civil case from a party's refusal to testify. Respondent's silence in Baxter was only one of a number of factors to be considered by the finder of fact in assessing a penalty, and was given no more probative value than the facts of the case warranted.

As a result, the attempt of the United States to assert that any question that was asked in Mr. Cosmano's deposition in which Mr. Cosmano asserted his Fifth Amendment rights was essentially answered in the United States' favor would impose too great a cost and exceed the authorization of Baxter. The same would be true of the Requests for Admission in which Mr. Cosmano asserted his Fifth Amendment rights.

Without waiving the objection, Mr. Cosmano admits that during discovery in the prior adversary proceeding, he invoked his Fifth Amendment right against self-incrimination in response to the United States' Second Interrogatories, Second Set of Requests for Production of Documents, First Requests for Admissions, and questions asked at his July 6, 2022 deposition. Mr. Cosmano denies, however, that the invocation of his constitutional right establishes the truth of any of the matters the United States sought to inquire about. Mr. Cosmano further denies that he constructed a false wall to conceal square footage, that he obtained false appraisals by

misrepresenting the size of the unit, that he used appraisals with the intention of avoiding collection of tax liabilities, or that his removal of appliances and fixtures was intended to harm the United States' ability to collect taxes, all based on a lack of independent evidence provided by the United States.

See also Affidavit of James Cosmano attached to this Response.

81. Although both parties argued that the dischargeability dispute was ripe because the government was affirmatively contending that the discharge exception applied, the presiding bankruptcy judge determined that the dischargeability issue was not ripe because the IRS was not immediately trying to collect the disputed tax debts, whether administratively or in a judicial proceeding to collect taxes, and dismissed the adversary complaint for want of subject-matter jurisdiction on December 12, 2022. **AP No. 97.**

**Response:** Mr. Cosmano admits that on December 12, 2022, Judge A. Benjamin Goldgar dismissed the adversary proceeding, Case No. 21-00059, for lack of subject matter jurisdiction, finding that the dischargeability issue was not ripe because the IRS was not immediately trying to collect the disputed tax debts. Mr. Cosmano further notes that Judge Goldgar's ruling explicitly stated that "Cosmano's tax debt is currently discharged" and that "Cosmano can treat it as such" unless and until the United States takes action to collect. Judge Goldgar's dismissal order remains a final, unappealable order. The United States did not appeal the dismissal, and the adversary proceeding remains closed.

82. Mr. Cosmano subsequently filed a petition to commence this voluntary Chapter 13 bankruptcy case on June 21, 2024. **(Doc. 1.)**

**Response:** Mr. Cosmano admits that he filed a voluntary petition under Chapter 13 of the Bankruptcy Code on June 21, 2024, commencing Case No. 24-09140.

83. The IRS filed a proof of claim on October 22, 2024. (Claim 3-1.) The proof of claim included unsecured general claims for each of Mr. Cosmano's 2007 through 2010 federal income tax debts, and penalties to the date of petition, totaling $8,355,333.73. **Id.**

**Response:** Mr. Cosmano admits that the IRS filed a proof of claim (Claim 3-1) on October 22, 2024, asserting unsecured general claims for Mr. Cosmano's 2007 through 2010 federal income

tax debts and penalties totaling $8,355,333.73 as of the petition date. Mr. Cosmano objects, however, to the characterization of these debts as valid and enforceable, as Mr. Cosmano contends that these tax liabilities were discharged in his prior Chapter 7 bankruptcy case pursuant to the discharge order entered on August 13, 2019, and that the IRS's assertion of these claims violates the discharge injunction of 11 U.S.C. § 524(a)(2). Mr. Cosmano further objects to the amount claimed, as the assessments underlying these claimed debts are incorrect and were not properly substantiated by the IRS.

84. Thereafter, the IRS amended its proof of claim. (Claim 3-2.) The amendment did not disturb the amounts claimed nor the tax years at issue, but instead re-classified a portion of the 2007 tax debt as a secured claim. **Id.**

**Response:** Mr. Cosmano admits that the IRS filed an amended proof of claim (Claim 3-2) that reclassified a portion of the 2007 tax debt as a secured claim without changing the total amounts claimed or the tax years at issue. Mr. Cosmano objects to the amended proof of claim on the grounds that: (1) the amendment was untimely under Federal Rule of Bankruptcy Procedure 3002(c) and applicable Local Rules; (2) there is inadequate equity in Mr. Cosmano's real property, the Mt. Prospect property, for the government's secured claim to attach to, as the property is subject to a senior mortgage lien that exceeds the property's value; and (3) the underlying tax liabilities were discharged in Mr. Cosmano's prior Chapter 7 bankruptcy case and the IRS's assertion of a secured claim based on those discharged liabilities violates the discharge injunction. These objections are set forth in detail in Mr. Cosmano's Objection to Proof of Claim filed as Doc. 54 in this case.

**85.** Mr. Cosmano objected to the IRS's claim. (Doc. 54.) The gist of Mr. Cosmano's objection is that the 2007-2010 federal tax debts were discharged pursuant to his Chapter 7 bankruptcy case, and that the government's amendment to its proof of claim was untimely. See

generally id. He also charges that there is inadequate equity in his real property (the Mt. Prospect property) for the government's secured claim to attach to.

**Response:** Mr. Cosmano admits that he filed an objection to the IRS's proof of claim (Doc. 54) asserting that: (1) the 2007-2010 federal tax debts were discharged pursuant to his Chapter 7 bankruptcy case (Case No. 19-13287) and the discharge order entered on August 13, 2019; (2) the government's amendment to its proof of claim was untimely under Federal Rule of Bankruptcy Procedure 3002(c) and should be disallowed; and (3) there is inadequate equity in his real property located at 2202 West Lawrence Lane, Mount Prospect, Illinois 60056 (the "Mt. Prospect property") for the government's secured claim to attach to, as the property is encumbered by a senior mortgage lien that exceeds the current value of the property. Mr. Cosmano incorporates by reference all arguments, evidence, and legal authority set forth in his Objection to Proof of Claim (Doc. 54) and his Motion for Summary Judgment filed in this case.

**86.** Meanwhile the Chapter 13 Trustee moved to dismiss Mr. Cosmano's bankruptcy case on the ground that he had exceeded the applicable debt limit under 11 U.S.C. § 109(e). (Doc. 51.) Whether that is correct depends on whether the taxes were discharged in the Chapter 7 case.

**Response**: Mr. Cosmano admits that the Chapter 13 Trustee moved to dismiss the Chapter 13 case on the ground that Mr. Cosmano allegedly exceeded the applicable debt limit under 11 U.S.C. § 109(e). Mr. Cosmano denies that eligibility should be determined based on a later, disputed dischargeability determination rather than the debts as scheduled and treated at the time of the Chapter 13 filing. Mr. Cosmano further denies the characterization that the Trustee's motion can be resolved simply by determining dischargeability in the main bankruptcy case, because Mr. Cosmano contends that any dischargeability determination must be made, if at all, in an adversary proceeding and only if justiciable and ripe. Docket 137-2, Statement of Facts ¶¶6-10, 28-32; Docket 78 at 3-4; Docket 137-3 at 1-2.

**87.** Following a hearing, the Court set a briefing schedule for simultaneous motions for summary judgment regarding Mr. Cosmano's claim objection, including the dischargeability issue embraced by it. (Doc. 64.)

**Response**: Mr. Cosmano admits that the Court set a briefing schedule for simultaneous motions for summary judgment regarding the claim objection. Mr. Cosmano denies the characterization that the claim objection properly “embraced” a dischargeability determination in the main bankruptcy case, and denies that the United States may avoid the adversary-proceeding requirement by recasting dischargeability as part of a claim objection. Docket 78 at 3-4; Docket 137-3 at 1-2.

**88.** Following briefing on cross-motions for summary judgment, the Court denied both motions, stating as follows:

But it's 523(a)(1). An element of Section 523, almost every (a) section, but certainly (a)(1), is intent. And I've said repeatedly, absent some binding authority by a court that I must follow, right, a court that took this up and made a determination and has bound the parties in the same context of the dispute before me -- that the intent standard has been met. I can't issue summary judgment on a matter that turns on intent. I can't because it will always be one party says I intended, the other party says -- unless you plead yourself out of it, I suppose.

If you admit in your answer, then maybe we're done. But I don't see that. Mr. Bach has been very careful in what he's filed. And what he's filed challenges all the conclusions of intent that the United States has made with respect to this.

The United States should have an opportunity to prove up its case in the more formal strictures of a trial, bring in the evidence that it is alleging. Mr. Bach's client should have the opportunity to put on evidence to the contrary to challenge the evidence of the United States in the appropriate formal proceeding, to have his client testify as to intent, if he so chooses.

Ex. 26, at 26:13-27:5, 27:18-25.

**Response**: Mr. Cosmano admits that the Court denied both motions and that the quoted language appears in the transcript cited by the United States. Mr. Cosmano further states that the quoted ruling confirms that intent remains disputed, that Mr. Cosmano has challenged the United States’ conclusions of intent, and that summary judgment is inappropriate where the United States’ theory depends on intent, disputed inferences, and evidence that must be tested in a formal evidentiary proceeding. Ex. 26 at 26:13-27:5, 27:18-25; Docket 78 at 15-18.

**89.** On December 18, 2025, the Court issued an Agreed Order in this contested matter on the Debtor's claim objection which set a pre-trial discovery schedule, based on the parties' Rule 26(f) report. (Doc. 118.) The Agreed Order provided, relevantly, as follows:

In the prior Adversary Proceeding, the Debtor asserted the Fifth Amendment to the United States Constitution, and refused to answer questions posed to him at a deposition noticed by the United States, and declined to respond to certain written discovery requests. The Debtor is now withdrawing the assertion of the Fifth Amendment privilege against compelled testimony. As a result, certain written discovery propounded by the United States during the prior Adversary Proceeding will need to be updated by the debtor in an additional set of responses which the debtor has agreed to provide within 45 days of this order being entered. The United States has indicated that based on this change in privilege assertion, the government States will retake the Debtor's deposition.
[. . .]
The parties conducted extensive written discovery between them, as well as third-party discovery. To streamline matters in this case, all written discovery in any past litigation between the United States and James Cosmano shall be treated as-if it were produced in this litigation, and will be admissible to the same extent as it would be admissible if that discovery were taken in this case, subject to the Federal Rules of Evidence. Id.

**Response:** Mr. Cosmano admits that on December 18, 2025, the Court entered an Agreed Order (Doc. 118) setting a pre-trial discovery schedule based on the parties' Rule 26(f) report. Mr. Cosmano admits that he agreed to withdraw his assertion of the Fifth Amendment privilege against compelled testimony with respect to future discovery in this contested matter, and that he agreed to update certain written discovery responses previously propounded by the United States in the prior adversary proceeding within 45 days of the entry of the December 18, 2025 order. Mr. Cosmano further admits that the parties agreed that all written discovery from any past litigation between the United States and James Cosmano would be treated as if it were produced in this litigation, subject to the Federal Rules of Evidence. Mr. Cosmano notes, however, that this agreement does not cure the prejudice caused by the United States' late disclosure of seven witnesses on July 1, 2022, in the prior adversary proceeding, nor does it waive Mr. Cosmano's objections to the use of Fifth Amendment invocations as the basis for adverse inferences without proper analysis under *Baxter v. Palmigiano*, *Evans v. City of Chicago*, and *LaSalle Bank Lake View v. Seguban*.

90. Mr. Cosmano declined to provide updated responses to the discovery requests, and the United States filed a Motion to Establish Adverse Inferences and to Bar Testimony in

Contested Matter Involving Tax Claims. (Doc. 130.) That motion sought to "establish for purposes of this contested matter that any answers that Debtor James A. Cosmano would have given in response to the United States' Second Set of Interrogatories, Second Set of Requests for Production of Documents, First Set of Requests for Admission, and deposition questions in Cosmano v. United States of America, Adv. Proc No. 21-ap-00059 (the "Adversary Proceeding"), would be adverse to his interests and that such evidence is admissible here by agreement of the parties and the Court's order, Doc. 118, and (2) bar the Debtor from providing any substantive testimony at any trial or hearing, or by affidavit, in this matter." Id. That motion is still pending before the Court.

**Response**: Mr. Cosmano admits that the United States filed the Motion to Establish Adverse Inferences and to Bar Testimony in Contested Matter Involving Tax Claims at Doc. 130 and admits that the quoted language appears to describe the relief requested in that motion. Mr. Cosmano further admits that, as stated in paragraph 90, that motion remains pending. Mr. Cosmano denies the characterization that he improperly "declined" to provide updated responses. Mr. Cosmano maintained his Fifth Amendment privilege because the United States had made a criminal referral to the United States Attorney for the Northern District of Illinois and the existence of an open grand jury investigation had been confirmed by the United States Attorney's Office. Ex. 24 at pp. 2-6. Mr. Cosmano denies that the pending motion establishes any adverse inference, admission, evidentiary ruling, or basis to bar testimony unless and until the Court enters such an order. Doc. 130.

91. Mr. Cosmano's counsel confirmed at a July 2, 2026 hearing on the United States' Motion to Establish Adverse Inferences and to Bar Testimony in Contested Matter Involving Tax Claims that, contrary to his prior statement, Mr. Cosmano would be maintaining his invocation of the Fifth Amendment. Based on Mr. Cosmano's determination to maintain his Fifth Amendment invocation, the Court granted the United States' request to renew its motion for summary judgment. (Doc. 131.)

**Response**: Mr. Cosmano admits that, at the July 2, 2026 hearing, his counsel confirmed that Mr. Cosmano would maintain his invocation of the Fifth Amendment. Mr. Cosmano admits that the Court granted the United States leave to renew its motion for summary judgment, as reflected in Doc. 131. Mr. Cosmano denies any characterization that maintaining the Fifth Amendment was

improper, unjustified, or an admission of any substantive allegation. Mr. Cosmano maintained the privilege because of the criminal referral and the confirmed open grand jury investigation described in his discovery responses. Ex. 24 at pp. 2-6. Mr. Cosmano further denies that the Court's grant of leave to renew summary judgment established any adverse inference, resolved the pending motion at Doc. 130, or determined any disputed fact in favor of the United States.

## CONCLUSION

WHEREFORE, James Anthony Cosmano respectfully requests that the Court treat the United States' Amended Statement of Material Facts as disputed to the extent set forth above, deny the United States' second Motion for Summary Judgment, and grant such other and further relief as the Court deems just.

Dated: August 31, 2026

Respectfully submitted,
/s/ Paul M. Bach
Paul M. Bach, Esq.
ARDC No. 6209530
Counsel for Debtor James Anthony Cosmano
Bach Law Offices
P.O. Box 1285
Northbrook, Illinois 60065
Telephone: (847) 564-0808
Email: paul@bachoffices.com

## CERTIFICATE OF SERVICE

I, Paul M. Bach, declare under penalty of perjury that on August 31, 2026, I caused a copy of the foregoing Response of James Cosmano to the United States' Amended L.R. 7056-1 Statement of Material Facts in Support of Its Second Motion for Summary Judgment to be served through the Court's CM/ECF system upon all counsel and parties of record, including:

Jeffrey N. Nunez
U.S. Department of Justice, Tax Division
P.O. Box 55
Washington, DC 20044
Email: jeffrey.n.nunez@usdoj.gov

Bradley Sarnell
U.S. Department of Justice, Tax Division
555 4th Street, NW
Washington, DC 20001

/s/ Paul M. Bach

Paul M. Bach, Esq.