**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | |
| James Anthony Cosmano, | ) | NO. 24-09140 |
| Debtor | ) | |
| | ) | Chapter 13 |
| | ) | Honorable Judge Timothy A. Barnes |

# JAMES ANTHONY COSMANO'S REPLY IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT

James Anthony Cosmano ("Mr. Cosmano"), by and through his counsel, submits this Reply in support of his Motion for Summary Judgment concerning his objection to Claims 3-1 and 3-2 filed by the Department of the Treasury–Internal Revenue Service. Mr. Cosmano incorporates his Motion for Summary Judgment, supporting memorandum, statements of material facts, responses to the United States' statements of material facts, statement of additional material facts, and Motion to Bar.

## **I.** INTRODUCTION

The United States' response does not overcome the dispositive facts. Mr. Cosmano received a Chapter 7 discharge on August 13, 2019. In the prior adversary proceeding, Judge A. Benjamin Goldgar expressly determined that Mr. Cosmano's tax debt was discharged and could be treated as discharged unless and until a court determined otherwise. Neither party appealed that ruling. The United States nevertheless filed Claims 3-1 and 3-2 in this Chapter 13 case for the same 2007-2010 tax liabilities. The United States bears the burden of proving by a preponderance of the evidence that § 523(a)(1)(C) excepts the tax liability from discharge. *Krumhorn v. United States (In re Krumhorn)*, 249 B.R. 295, 298 (Bankr.N.D.Ill.2000). That exception requires proof of both conduct intended to evade or defeat the tax and a willful mental state. *In re Birkenstock*, 87 F.3d 947, 952 (7th Cir.1996). Nonpayment alone is insufficient; the

United States must prove additional conduct directed toward evasion or concealment. *United States v. Gorokhovsky*, 575 F. Supp. 3d 1050, 1058 (E.D.Wis.2021). It has not done so.

The United States' response instead depends heavily on three categories of material that cannot defeat Mr. Cosmano's motion: alleged conduct occurring after the Chapter 7 petition was filed; declarations from witnesses disclosed only ten days before discovery closed; and proposed adverse inferences from Mr. Cosmano's invocation of the Fifth Amendment. The postpetition evidence does not establish that the tax liabilities were excepted from the Chapter 7 discharge when that case was filed. The late-disclosed declarations remain subject to Mr. Cosmano's Motion to Bar. Fifth Amendment silence permits, but does not require, an adverse inference; it cannot substitute for affirmative evidence establishing the elements of the United States' case. *Daniels v. Pipefitters' Ass'n Local Union No. 597*, 983 F.2d 800, 801 (7th Cir.1993) and *Evans v. City of Chicago*, 513 F.3d 735, 740 (7th Cir.2008).

The summary-judgment record must be judged by admissible evidence of what Mr. Cosmano did and intended before May 8, 2019, when he filed his Chapter 7 petition. The United States has not identified evidence from that period establishing both a deliberate act to evade the taxes and the required willful state of mind. The Chapter 7 discharge therefore controls and Claims 3-1 and 3-2 should be disallowed.

**II.** STATEMENT OF FACTS

Mr. Cosmano reported federal income-tax liabilities of $1,001.00, $0.00, $0.00, and $3,614.00 for 2007 through 2010, respectively. The IRS later made additional assessments, which he disputes, and obtained a default judgment on January 12, 2018. The judgment did not find fraudulent returns, willful tax evasion, or any other element of § 523(a)(1)(C). Mr. Cosmano filed Chapter 7 on May 8, 2019, listing the Waterside Drive Property at $505,000.00 based on a

March 2019 appraisal describing one bedroom, 1.1 bathrooms, and 1,135 square feet, without a floorplan. He denies knowingly obtaining a false appraisal or acting for an improper purpose.

At the creditors' meeting, Mr. Cosmano testified under oath about his petition, schedules, assets, debts, and the Waterside Drive Property, including that he borrowed from friends and family to pay property expenses. He disputes the United States' portrayal of his finances as lavish spending or deliberate dissipation of funds available to the IRS. The Court entered his Chapter 7 discharge on August 13, 2019. On December 12, 2022, Judge Goldgar dismissed the prior adversary proceeding as unripe because the United States had not threatened collection, and stated that the tax debt was discharged and could be treated as such. Neither party appealed.

The United States did not seek collection after the December 2022 ruling until filing proofs of claim in this Chapter 13 case. Claim 3-1, filed October 22, 2024, asserted $8,355,333.73 as unsecured nonpriority debt. Claim 3-2, filed November 19, 2024, asserted the same amount, allocating $397,440.00 as secured and $7,957,893.73 as unsecured nonpriority debt. Mr. Cosmano objected to both. Although the nondischargeability theory concerns only 2007–2010 taxes, much of the cited conduct postdates the May 8, 2019 petition, including a second appraisal, lien-avoidance and foreclosure litigation, contempt proceedings, and the property's later condition.

The United States also relies on declarations from Michael Kuehn, Mavreen Dunlavy, Kevin Vaught, Justin Storer, Steven Radtke, Geneva Everett, and Ginger Menne, who were disclosed on July 1, 2022—ten days before discovery closed—leaving Mr. Cosmano no fair opportunity to depose them. His Motion to Bar addresses their testimony, which should not supply missing summary-judgment proof. The United States further relies on deposition questions and requests for admission to which Mr. Cosmano invoked the Fifth Amendment after

a criminal referral was announced. He denies erecting a false wall, knowingly submitting an inaccurate appraisal, concealing the property's size, or preventing its use to pay federal taxes.

**III.** LEGAL STANDARD

Summary judgment must be based on evidence demonstrating that no genuine dispute of material fact exists. In considering summary judgment, the Court must view the evidence and reasonable inferences in favor of the nonmoving party. *United States v. Donnelly (In re Donnelly)*, 2000 Bankr. LEXIS 1714 (Bankr.N.D.Ill.2000). When the party bearing the burden of proof relies on § 523(a)(1)(C), it must establish nondischargeability by a preponderance of the evidence. *Krumhorn v. United States (In re Krumhorn)*, 249 B.R. 295, 298 (Bankr.N.D.Ill.2000). The statutory exception contains two requirements: conduct by which the debtor sought to evade or defeat the tax and a willful mental state. *In re Birkenstock*, 87 F.3d 947, 952 (7th Cir.1996). The mental-state requirement demands proof that the debtor knew of the tax duty and voluntarily and intentionally attempted to violate it. K*rumhorn v. United States (In re Krumhorn)*, 249 B.R. 295, 298 (Bankr.N.D.Ill.2000). The requirement protects debtors who made mistakes and limits nondischargeability to knowing and deliberate efforts to evade tax liability. *Id*. Nonpayment alone does not establish the required conduct. *Sommers v. IRS (In re Sommers)*, 209 B.R. 471, 478 (Bankr.N.D.Ill.1997). The government must connect nonpayment to additional acts of concealment or evasion. *United States v. Gorokhovsky*, 575 F. Supp. 3d 1050, 1058 (Bankr.N.D.Wis2021).

**IV.** ARGUMENT

**A. The Chapter 7 Discharge Remains Controlling.**

The starting point is the Chapter 7 discharge order, not the United States' current characterization of events that occurred years later. Mr. Cosmano filed his Chapter 7 petition on May 8, 2019, and the Bankruptcy Court entered his discharge on August 13, 2019. That

discharge order discharged Mr. Cosmano's debts. In the prior adversary proceeding, Judge A. Benjamin Goldgar subsequently expressly stated that the tax debt was discharged and that Mr. Cosmano could treat it as discharged unless and until a court determined otherwise. That ruling was favorable to Mr. Cosmano, and he therefore had no reason to appeal it. The United States likewise did not appeal. The ruling consequently remained undisturbed. The United States' subsequent proofs of claim do not themselves establish nondischargeability. Claim 3-1 initially classified the entire alleged liability as unsecured and nonpriority. Claim 3-2 later asserted the same total amount while reclassifying part of it as secured. Neither proof of claim establishes that the 2007 through 2010 tax liabilities were excepted from Mr. Cosmano's Chapter 7 discharge under § 523(a)(1)(C). Nor can the filing of a proof of claim, standing alone, overcome the discharge previously entered by the Bankruptcy Court.

The United States therefore must prove more than the existence or amount of the tax assessments. It must establish that § 523(a)(1)(C) applies and that the tax liabilities were excepted from the Chapter 7 discharge. The United States bears the burden. *Krumhorn v. United States (In re Krumhorn)*, 249 B.R. 295, 298 (Bankr. N.D. Ill. 2000). The January 2018 default judgment concerning the amount of the assessed liabilities does not decide that separate issue. It contains no finding that Mr. Cosmano willfully attempted to evade or defeat the taxes and does not establish the elements required for nondischargeability under § 523(a)(1)(C). The United States' position effectively asks the Court to infer willful evasion from the size of the assessment and Mr. Cosmano's failure to pay it. Seventh Circuit authority rejects that shortcut. Nonpayment alone is insufficient, even when a debtor knew taxes were due. *Sommers v. IRS (In re Sommers)*, 209 B.R. 471, 478 (Bankr. N.D. Ill. 1997). The government must establish additional conduct directed toward evading or defeating the tax, together with the required willful mental state. Without proof satisfying both requirements, the Chapter 7 discharge remains controlling.

**B. The Relevant Inquiry Is Mr. Cosmano's Conduct Before the Chapter 7 Petition Date.**

The relevant inquiry under § 523(a)(1)(C) is whether, before May 8, 2019, Mr. Cosmano knowingly and deliberately engaged in conduct intended to evade or defeat the specific 2007 through 2010 tax liabilities. Mr. Cosmano filed his Chapter 7 petition on May 8, 2019, and received his discharge on August 13, 2019. Events occurring after the petition date cannot, without more, establish the knowledge or intent that existed when the petition was filed or supply the willful mental state required to except a prepetition debt from discharge. See In re Birkenstock, 87 F.3d 947, 952 (7th Cir. 1996). Much of the United States' theory depends upon events occurring after May 8, 2019. The second appraisal was obtained in May 2020, approximately one year after the petition and approximately nine months after the discharge. The lien-avoidance filings, foreclosure proceedings, receiver proceedings, contempt allegations, and other allegations concerning the later condition or configuration of the Waterside Drive Property likewise concern postpetition events. Those events cannot substitute for evidence establishing what Mr. Cosmano knew or intended before the Chapter 7 petition was filed.

The foreclosure proceedings are particularly significant because they occurred after the Chapter 7 discharge. The foreclosure action was commenced on October 22, 2020 in the Circuit Court of Cook County (and later removed to the District Court by the United States), well after the August 13, 2019 discharge. By the time that litigation arose, Mr. Cosmano had already received a bankruptcy discharge stating that his debts were discharged. His participation in the foreclosure litigation therefore must be considered in the context of an existing discharge. He contested the foreclosure and asserted his rights concerning the Waterside Drive Property; without additional evidence, his participation in that litigation was not a prepetition attempt to evade or defeat the 2007 through 2010 tax liabilities. The United States nevertheless attempts to use the foreclosure proceedings as evidence that Mr. Cosmano sought to prevent the Waterside

Drive Property from being reached to satisfy the tax liabilities. But post-discharge litigation concerning the property does not establish that, before May 8, 2019, Mr. Cosmano knowingly and deliberately acted with the purpose of evading those taxes. The government must prove the required prepetition conduct and intent; it cannot establish those elements principally through events that occurred after the petition or discharge.

Judge Goldgar's December 12, 2022 ruling further demonstrates the significance of this timing. Judge Goldgar expressly stated that the tax debt was discharged and that Mr. Cosmano could treat it as discharged unless and until a court determined otherwise. Neither party appealed that ruling. Thus, when Mr. Cosmano subsequently defended his interests concerning the Waterside Drive Property, he was acting against the backdrop of an existing Chapter 7 discharge confirming that he could treat the tax debt as discharged.

That context matters. The government cannot take conduct occurring after the discharge and characterize it as evidence that Mr. Cosmano possessed an intent, before May 8, 2019, to evade the same liabilities that he could treat as discharged. Mr. Cosmano's subsequent defense of the foreclosure was a contest to the foreclosure and an assertion of his rights concerning the property. It was not, without additional evidence, proof of an earlier intent to evade taxes. This temporal distinction is critical because § 523(a)(1)(C) requires a specific willful state of mind. The United States must establish that Mr. Cosmano knew of the tax duty and voluntarily and intentionally attempted to evade or defeat it. *Krumhorn v. United States (In re Krumhorn),* 249 B.R. 295, 298 (Bankr. N.D. Ill. 2000). Evidence that Mr. Cosmano later disputed collection, defended the property, participated in foreclosure proceedings, or relied upon the effect of his discharge does not establish that he possessed the required intent before May 8, 2019.

Nor can later discovery conduct or a later invocation of the Fifth Amendment establish the missing prepetition intent. Mr. Cosmano invoked the privilege after the United States

announced a criminal referral. Even if an adverse inference were permissible, it would not establish that a particular act occurred before May 8, 2019, or that Mr. Cosmano possessed the required willful state of mind at that time. The government cannot use postpetition events, post-discharge litigation, or later silence to supply the prepetition conduct and intent that its § 523(a)(1)(C) claim requires. The inquiry is therefore narrow: whether, before May 8, 2019, Mr. Cosmano knowingly and deliberately engaged in conduct intended to evade or defeat the 2007 through 2010 tax liabilities. The government's reliance on events occurring after the petition, and in substantial part after the discharge, does not establish that required prepetition conduct or intent.

**C. The Prepetition Evidence Does Not Establish Willful Evasion.**

The United States' prepetition evidence does not establish the conduct or willful state of mind required to except the 2007 through 2010 tax liabilities from discharge under § 523(a)(1)(C). The government principally relies on four categories of evidence: nonpayment of the assessments, Mr. Cosmano's spending and financial circumstances, the absence of certain records, and the March 2019 appraisal of the Waterside Drive Property. Considered individually or cumulatively, those matters do not establish that, before May 8, 2019, Mr. Cosmano knowingly and deliberately attempted to evade or defeat the specific tax liabilities at issue. First, the United States relies on Mr. Cosmano's limited payments toward the assessed liabilities. But nonpayment, without more, is insufficient to establish an attempt to evade or defeat a tax. *Sommers v. IRS (In re Sommers)*, 209 B.R. 471, 478 (Bankr. N.D. Ill. 1997). The United States must connect nonpayment to additional acts demonstrating concealment or deliberate evasion. *United States v. Gorokhovsky*, 575 F. Supp. 3d 1050, 1058 (E.D. Wis. 2021). The government has not identified prepetition conduct establishing that connection. Mr. Cosmano's failure to pay

the assessments in full does not, standing alone, establish that he intentionally acted to evade or defeat them.

Second, the United States characterizes Mr. Cosmano's travel, casino transaction, and real-estate expenses as evidence of a lavish lifestyle. The actual circumstances dispute that characterization. Mr. Cosmano acknowledges occasional travel to Las Vegas, but he traveled there to care for his uncle, who was experiencing medical issues, and not for gambling purposes. He also acknowledges one $2,000 cash advance at Rivers Casino in Rosemont, Illinois, but that cash advance was not used for gambling purposes. Those facts do not establish an extravagant lifestyle, much less a deliberate effort to evade or defeat the tax liabilities. Mr. Cosmano also testified that he borrowed money from friends and family to pay bills associated with the Waterside Drive Property. The United States' aggregate mortgage calculation does not identify the source of each payment or establish that the claimed amounts came from funds otherwise available to pay the IRS. Nor does the government's characterization of Mr. Cosmano's expenditures establish that he was deliberately dissipating assets for the purpose of preventing the United States from collecting the taxes.

The distinction matters. Section 523(a)(1)(C) does not make every expenditure by a debtor who owes taxes evidence of willful tax evasion. The government must establish additional conduct directed toward concealing assets, frustrating collection, or otherwise evading or defeating the tax. *United States v. Gorokhovsky*, 575 F. Supp. 3d 1050, 1058 (E.D. Wis. 2021). The disputed spending evidence does not establish concealment of income, a transfer intended to frustrate collection, or a deliberate attempt to make assets unavailable to the United States.

Third, the United States relies on Mr. Cosmano's statement that he had no documents responsive to certain discovery requests. But the absence of responsive documents does not, without more, establish concealment, spoliation, or willful tax evasion. The United States has not

identified a specific prepetition act in which Mr. Cosmano destroyed or concealed a particular record for the purpose of preventing the IRS from collecting the 2007 through 2010 tax liabilities. Its characterization of a purported "standard practice" remains disputed and does not establish the required intent.

Fourth, the March 2019 appraisal does not establish deliberate tax evasion. The appraisal valued the Waterside Drive Property at $505,000.00 and described it as having one bedroom, 1.1 bathrooms, and 1,135 square feet. Mr. Cosmano disclosed that value on his bankruptcy schedules and expressly identified the March 2019 appraisal as the source of the valuation. He denies that the appraisal was knowingly false, that he knowingly supplied inaccurate information to the appraiser, or that he obtained the appraisal to prevent the United States from reaching the property. The government's appraisal theory depends on several disputed propositions that it has not established as undisputed facts. The government contends that the property originally contained approximately 2,100 square feet, that a wall was constructed, that the property's configuration was altered, and that Mr. Cosmano intended to conceal a portion of the property. Mr. Cosmano disputes those assertions.

More importantly, the government has not established that, before May 8, 2019, Mr. Cosmano knew that the property was substantially larger than the appraisal represented; knew that a wall had been constructed; knew that the configuration had been altered; knew of any discrepancy between the property and the appraisal; knowingly supplied inaccurate information to the appraiser; or understood that the lower appraisal value would impair the United States' ability to reach the property to satisfy the tax liabilities. Those missing links are critical. The mere fact that an appraisal may have inaccurately described the property does not establish who supplied the underlying information, what Mr. Cosmano knew about that information, whether he understood the appraisal to be inaccurate, or whether he intended to affect the United States'

collection efforts. The government must establish more than an inaccurate appraisal or a difference in property value. It must establish that Mr. Cosmano knowingly participated in conduct designed to evade or defeat the specific tax liabilities.

The declarations offered to support the government's account are also subject to Mr. Cosmano's Motion to Bar. The witnesses were disclosed only ten days before discovery closed, leaving Mr. Cosmano no fair opportunity to depose them. Even if the appraisal-related evidence is considered, however, it does not resolve the issue of intent. The appraiser did not physically inspect the property's interior. Mr. Cosmano maintains that he purchased and occupied what he believed was a one-bedroom unit and denies knowingly providing false information or obtaining an inaccurate appraisal to avoid paying taxes. These competing accounts prevent the government from treating its version of events as undisputed.

Finally, the government must establish a nexus between the alleged conduct and the particular tax liabilities it seeks to render nondischargeable. It is not enough to show that Mr. Cosmano failed to pay taxes, incurred expenses, possessed property, or was associated with an appraisal that the government now disputes. The relevant question is whether, before May 8, 2019, he voluntarily, consciously, and intentionally engaged in conduct designed to evade or defeat the 2007 through 2010 tax liabilities. Even when the government's evidence is considered cumulatively, it fails to establish that required nexus. The evidence does not bridge the gap between the circumstances identified by the United States and the necessary finding that Mr. Cosmano knew of those circumstances and deliberately acted to evade or defeat the specific tax liabilities. Without competent evidence establishing that connection, the government has not met its burden under § 523(a)(1)(C).

**D. Fifth Amendment Invocations Cannot Supply the Missing Proof.**

The United States' inability to establish the required nexus through affirmative evidence cannot be cured by Mr. Cosmano's invocation of the Fifth Amendment. The government repeatedly treats questions to which Mr. Cosmano invoked the Fifth Amendment as though the questions themselves supplied affirmative evidence. They do not. An adverse inference in a civil proceeding is permissive, not mandatory. *Daniels v. Pipefitters' Ass'n Local Union No. 597*, 983 F.2d 800, 801 (7th Cir. 1993). A court may decline to draw such an inference. *Evans v. City of Chicago*, 513 F.3d 735, 740 (7th Cir. 2008). Although silence may be considered in light of probative evidence, an adverse finding cannot rest on silence without other evidence. *National Acceptance Co. v. Bathalter*, 705 F.2d 924, 929 (7th Cir. 1983).

That limitation is decisive here. The United States uses Mr. Cosmano's invocations to assert that he erected a wall, concealed square footage, knowingly obtained false appraisals, and intended to prevent the property from being used to satisfy the tax liabilities. But a deposition question is not evidence that its factual premise is true. Likewise, invoking the Fifth Amendment does not convert a disputed allegation or request for admission into affirmative proof of each element of § 523(a)(1)(C). The government must still establish, through competent evidence, both the conduct and the willful state of mind required for nondischargeability. The government has not done so through its affirmative evidence. It therefore cannot use the Fifth Amendment to manufacture the missing proof. Even when the government's evidence is considered cumulatively, it fails to establish the required nexus between the alleged conduct and an intent to evade or defeat the specific tax liabilities at issue. The United States relies on nonpayment, spending, the condition and configuration of the Waterside Drive Property, the March 2019 appraisal, the absence of certain records, and later events concerning the property. But those matters do not establish that, before May 8, 2019, Mr. Cosmano knowingly and deliberately engaged in conduct intended to evade or defeat the 2007 through 2010 tax liabilities.

In particular, the government has not established that Mr. Cosmano knew that the property was substantially larger than the appraisal represented, knew that a wall had been constructed, knew that the property's configuration had been altered, knew of any discrepancy between the property and the appraisal, knowingly supplied inaccurate information to the appraiser, or understood that the lower appraisal value would impair the government's ability to reach the property. Those missing links remain missing regardless of the Fifth Amendment invocations. The circumstances surrounding the invocation further counsel against treating the silence as a substitute for affirmative proof. Mr. Cosmano invoked the privilege after the United States announced a criminal referral. His invocation therefore occurred in circumstances in which answering the government's questions could have exposed him to potential criminal consequences. The government cannot establish its affirmative evidentiary burden by creating a choice between self-incrimination and the loss of a bankruptcy discharge.

Nor can the government use the Fifth Amendment to convert disputed allegations into established facts. Asking a question does not establish the truth of the factual premise embedded in it. Likewise, Mr. Cosmano's refusal to answer does not establish that he erected a wall, concealed square footage, knowingly participated in an inaccurate appraisal, or intended to prevent the property from being used to satisfy the tax liabilities. At most, the invocation may permit an inference under appropriate circumstances. It does not eliminate the government's obligation to present evidence supporting the essential elements of its claim. Even where a civil adverse inference is permissible, it does not relieve the party bearing the burden of introducing actual evidence supporting those elements. *Clancy v. Coyne*, 244 F. Supp. 2d 894, 899 (2002); see also *LaSalle Bank Lake View v. Seguban*, 54 F.3d 387 (7th Cir. 1995).

Here, the United States lacks admissible, independent evidence establishing that, before May 8, 2019, Mr. Cosmano voluntarily, consciously, and intentionally attempted to evade or

defeat the 2007 through 2010 taxes. The proposed adverse inferences cannot supply the missing proof, cannot establish facts merely because those facts were embedded in questions, and cannot establish the required nexus between the alleged conduct and the specific tax liabilities at issue.

For these reasons, the United States has not established the prepetition conduct and willful intent required under § 523(a)(1)(C), and the Chapter 7 discharge should remain controlling.

**E. The Late-Disclosed Declarations Should Not Defeat Summary Judgment for Cosmano.**

The United States initially identified five witnesses. On July 1, 2022—ten days before discovery closed—it added seven witnesses, including the principal declarants supporting its appraisal and property-configuration theories. Mr. Cosmano lacked a fair opportunity to depose those witnesses before discovery closed, particularly after the announced criminal referral affected the remaining discovery. The resulting prejudice is concrete. The United States now asks the Court to accept declarations about what the property looked like, what information was provided to appraisers, what hypothetical appraisal might have resulted under different assumptions, and what Mr. Cosmano supposedly intended. Mr. Cosmano had no meaningful opportunity to test those assertions through deposition testimony. Mr. Cosmano's Motion to Bar addresses those defects. The Court should not permit the United States to use the challenged declarations to establish facts or intent on summary judgment. Without them, the remaining record consists largely of disputed documents, Fifth Amendment invocations, and postpetition events. That record does not satisfy the United States' burden under § 523(a)(1)(C).

V. CONCLUSION AND PRAYER FOR RELIEF

The Chapter 7 discharge was entered on August 13, 2019, and Judge Goldgar later confirmed that Mr. Cosmano's tax debt was discharged and could be treated as discharged. The United States has not established that, before the May 8, 2019 Chapter 7 petition, Mr. Cosmano

knowingly and deliberately engaged in conduct intended to evade or defeat the 2007 through 2010 taxes. Nonpayment alone is insufficient, postpetition conduct cannot supply the missing prepetition intent, Fifth Amendment invocations are not affirmative proof, and the late-disclosed declarations remain subject to exclusion.

WHEREFORE, James Anthony Cosmano respectfully requests that the Court grant his Motion for Summary Judgment, sustain his objection to Claims 3-1 and 3-2, disallow those claims to the extent they seek recovery of discharged personal liability, and grant such other relief as the Court deems just.

Dated: September 14, 2026

Respectfully submitted,

/s/ Paul M. Bach
Paul M. Bach, Esq.
ARDC No. 6209530
Bach Law Offices, Inc.
P.O. Box 1285
Northbrook, Illinois 60062
Telephone: (847) 564-0808
Email: paul@bachoffices.com

Attorney for James Anthony Cosmano